████████████████████████

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLEARCORRECT OPERATING, LLC, CLEARCORRECT HOLDINGS, INC., and INSTITUT STRAUMANN AG, <br><br> Defendants. | **Civil Action No.: 6:24-cv-00187** <br><br> **JURY TRIAL DEMANDED** <br><br> **PATENT CASE** <br><br> ████████████ <br><br> **PUBLIC VERSION** |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

**TABLE OF CONTENTS**

I.      Introduction...........................................................................................................1

II.     Procedural Background.........................................................................................2

III.    Legal Standard ......................................................................................................2

IV.     This Case Should be Dismissed Because ███████████████████████
        ███████████████████.........................................................................2

V.      Align Fails to State a Claim for False Advertising (Count I). ............................6

        A.      Align Fails To Adequately Plead That Statements Were False or Misleading........7

        B.      Align Fails To Adequately Plead Consumer Deception. .........................9

        C.      Align Fails To Adequately Plead Materiality. .......................................10

VI.     Align Fails to State Claims for Unfair Competition (Count II) Or Civil Conspiracy
        (Count III) ............................................................................................................10

VII.    Align Fails to State a Claim for Direct Infringement of the "Treatment Planning" Patents.
        ..............................................................................................................................11

VIII.   Various Asserted Patent Claims Are § 101 Ineligible. .....................................14

        A.      The "Treatment Planning" Patent Claims Are Ineligible Under § 101. ................14

        B.      The "Composite Image" Patent Claim Is Ineligible Under § 101. .......................18

IX.     Conclusion ...........................................................................................................20

**Federal Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)................................................................................................14

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016)..............................................................................15

*Artrip v. Ball Corp.*,
    735 F. App'x 708 (Fed. Cir. 2018) .........................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................2, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................2, 7

*Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*,
    389 F. Supp. 3d 507 (S.D. Tex. 2019) ...................................................................11

*Brosnan v. Dry Cleaning Station, Inc.*,
    2008 WL 2388392 (N.D. Cal. June 6, 2008) ...........................................................6

*Centaur Corp. v. ON Semiconductor Components Indus., LLC*,
    2010 WL 444715 (S.D. Cal. Feb. 2, 2010) ...........................................................2, 4

*Chamberlain Grp., Inc. v. Techtronic Indus. Co*,
    935 F.3d 1341 (Fed. Cir. 2019)........................................................................17, 20

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ...................................................................................3

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014).........................................................................14, 15

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)...............................................................................15

*Dominion Transmission, Inc. v. Precision Pipeline, Inc.*,
    2013 WL 5962393 (E.D. Va. Nov. 6, 2013).............................................................6

*Duzich v. Advantage Fin. Corp.*,
    395 F.3d 527 (5th Cir. 2004) ..................................................................................11

*FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*,
    97 F.4th 444 (6th Cir. 2024) .............................................................8

*Fluor Enters. Inc. v. Solutia Inc.*,
    147 F. Supp. 2d 648 (S.D. Tex. May 18, 2001) ...............................4

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
    2015 WL 1034254 (S.D. Tex. Mar. 10, 2015) ........................2, 6, 8, 9

*In re Great Lakes Dredge & Dock Co. LLC*,
    624 F.3d 201 (5th Cir. 2010) .............................................................7

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .............................................................8

*Int'l IP Holdings, LLC v. Vitamin Energy, Inc.*,
    2023 WL 6466560 (E.D. Mich. Oct. 4, 2023) ..............................9, 10

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ........................................................19

*Mission Pharmacal Co. v. Virtus Pharm., LLC*,
    23 F. Supp. 3d 748 (W.D. Tex. 2014) ..............................................11

*PerformancePartners, LLC v. FlashParking, Inc.*,
    2023 WL 6617395 (W.D. Tex. Oct. 11, 2023) ...................................2

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
    227 F.3d 489 (5th Cir. 2000) .............................................6, 7, 8, 9, 10

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ........................................................19

*Spectrum Gulf Coast LLC v. City Public Service of San Antonio*,
    2022 WL 22328992 (W.D. Tex. July 18, 2022) .................................3

*Taylor Pub. Co. v. Jostens, Inc.*,
    216 F.3d 465 (5th Cir. 2000) ...........................................................11

*White Farm Equip. Co. v. Kupcho*,
    792 F.2d 526 (5th Cir. 1986) .............................................................6

*Wysong Corp. v. APN, Inc.*,
    889 F.3d 267 (6th Cir. 2018) ....................................................8, 9, 10

*Yu v. Apple Inc.*,
    1 F.4th 1040, (Fed. Cir. 2021) ....................................................19, 20

**State Cases**

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC,*
    580 S.W.3d 136 (Tex. 2019) ..................................................11

*Belmont Constructors v. Lyondell Petrochemical,*
    896 S.W.2d 352 (Tex. Ct. App. 1995) ......................................5

*Hohenberg Bros. Co. v. George E. Gibbons & Co.,*
    537 S.W.2d 1 (Tex. 1976) .......................................................4

*Hudson v. Wakefield,*
    645 S.W.2d 427 (Tex. 1983) ...................................................4

**Federal Statutes**

15 U.S.C. § 1125(a) ...................................................................6

35 U.S.C. § 101 ...................................................2, 14, 17, 20

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) .............................................................1

Fed. R. Civ. P. 12(b)(6) ..........................................................1, 2

████████████████████████████████

## I. INTRODUCTION

This is not the first time that Align has sued ClearCorrect. Five years ago, Align and ClearCorrect ████████████████████████████████████████████████████████████ ████████████████████████████████████████[1]███████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████ and the case should be dismissed on that basis alone. Align's apparent purpose is to try to use litigation to intimidate a competitor.

In any event, Align's allegations as to many of its claims are so deficient as not to plausibly state a claim on their face. For example, Align's false advertising-related claims are fatally flawed because not only do they fail to allege that ClearCorrect's statements were false, but they also fail to plead a single fact demonstrating that any consumer was misled and, instead, offer only speculative and conclusory assertions parroting back the relevant legal standards. With respect to Align's infringement allegations for its "treatment planning" patents—which are directed to software that plans tooth movements to straighten teeth—Align admits that ClearCorrect's ***human technicians***, not software, perform the relevant claim limitations. Dkt. 1 ("Compl.") ¶ 172. And Align's infringement claims for two sets of asserted patents should be dismissed because their claims are generically directed to either planning a sequence of tooth movements or creating

---

[1] Defendant Institut Straumann AG's counsel has made a limited and special appearance to file a motion to dismiss Align's complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Institut Straumann AG conditionally joins the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) to the extent that its motion under Rule 12(b)(2) is denied.

████████████████████████

composite images of oral scans, both of which are nothing more than abstract ideas that are patent ineligible under § 101. Accordingly, to the extent that the Court does not dismiss the case in its entirety, it should at least dismiss the claims that are—on their face—deficient as a matter of law.

## II.  PROCEDURAL BACKGROUND

Align sued ClearCorrect alleging (1) false advertising; (2) unfair competition; (3) civil conspiracy; and (4) infringement of nine patents. The false advertising, unfair competition, and civil conspiracy claims all rely on the same alleged conduct. The asserted patents are generally directed to aspects of providing orthodontic aligners for straightening teeth, which the Complaint treats in three groups: "materials" patents (U.S. Patents 10,973,613; 11,154,384; 11,648,090; and 11,648,091); "treatment planning" patents (U.S. Patents 8,038,444; 10,456,217; 10,524,879; and 11,369,456); and a "composite image" patent (U.S. Patent 10,791,936).

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive a motion to dismiss, its factual allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also PerformancePartners, LLC v. FlashParking, Inc.*, 2023 WL 6617395 (W.D. Tex. Oct. 11, 2023); *Greater Houston Transp. Co. v. Uber Techs., Inc.*, 2015 WL 1034254, at \*11-14, 16 (S.D. Tex. Mar. 10, 2015); *Centaur Corp. v. ON Semiconductor Components Indus., LLC*, 2010 WL 444715, at \*3 (S.D. Cal. Feb. 2, 2010).

## IV.  **THIS CASE SHOULD BE DISMISSED BECAUSE** ██████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████



█████████████

█████████████████████████████████ :

Ex. 1[2] ████████████████████████████

████████████████████████████

██████████████████████ The Complaint should be dismissed.[4]

*First*, the ████████████████████████

████████████████████████

██████████████ Specifically, █████████████

████████████████████████

---

[2] Unless otherwise noted, "Ex." refers to exhibits to the Declaration of Omar Khan, filed concurrently with this motion.

[3] The Court may consider the ████████████████
████████████████████████
████████████

[4] Align has suggested that ████████
████████████████████████

██████████████ In any event, Align's Complaint is still plainly deficient because it does not include *any* allegation that ████
████████████████████████
██████████

███████████████████████████████████

████████████████████ The ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Thereafter, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

***Second***, █████████████████████████████████████████████

████████████████████████████████████████████████████████

In Texas, "whether a condition precedent exists" depends on "the intention of the parties." *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983). "[S]uch terms as 'if,' 'provided that,' and 'on condition that,' or some other phrase that conditions performance, ***usually connote an intent for a condition***." *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976); *see also* ██████████████████████████████████████████████

████████████████████████████████████████ Here, █████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



Thus,

Indeed,

For example, Align breached
And while



## V. ALIGN FAILS TO STATE A CLAIM FOR FALSE ADVERTISING (COUNT I).

The Complaint fails to plead a cognizable claim for false advertising. *Greater Houston*, 2015 WL 1034254, at *11-14, 16 (S.D. Tex. Mar. 10, 2015) (dismissing false advertising claims).[6] Align's false advertising claim is based on images on websites showing the results of experiments in which ClearCorrect aligners and aligners from the "leading" competitor were each immersed in various substances for 24 hours. Compl. ¶¶ 34-35.[7] Based on these experiments, the websites

---

[6] To state a claim for false advertising, a plaintiff must adequately plead: (1) a false or misleading statement of fact about goods, services, or commercial activities; (2) the advertisements deceived, or have the tendency to deceive, a substantial segment of its audience; (3) the deception had a material effect on purchasing decisions; (4) the product affects interstate commerce; and (5) plaintiff has been, or is likely to be, injured as a result of the statement. 15 U.S.C. § 1125(a); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

[7] Align cites a straumann.com website which states: "ClearCorrect aligners have been proven to be more stain-resistant than the leading aligner brand." Compl. ¶ 34. Align cites a clearcorrect.com website which states: "The stain-resistant properties of ClearCorrect were tested against the leading aligner brand. In a simulated test where aligners were immersed in 4 different staining agents, ClearCorrect demonstrated to be more stain resistant, as shown in the results below**. **Data on file. Aligners immersed in the respective substances for 24 hours at 37°C."

state that ClearCorrect aligners have been proven to be "more stain-resistant" than the leading aligner brand. *Id.* They also show side-by-side pictures of the aligners at the end of the experiment. *Id.* Align alleges that "[b]y advertising **misleading images** of Align aligners after immersion in mustard and coffee for 24 hours, ClearCorrect and Straumann falsely imply that Invisalign aligners will appear unattractive and stained during normal use." *Id.* ¶ 36. Given the websites' clear and unmistakable explanations regarding the details of the experiment, Align has not adequately pleaded (1) a false or misleading statement; (2) the statements' tendency to deceive a substantial segment of customers; or (3) the statements' materiality. *Pizza Hut*, 227 F.3d at 495. Align's claim relies largely on conclusory statements and allegations on information and belief, which the Court need not "accept as true." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). In fact, where, as here, a complaint contains nothing more than a formulaic recitation of the elements, it fails to state a cause of action and the claim should be dismissed. *Twombly*, 550 U.S. at 555.

### A. Align Fails To Adequately Plead That Statements Were False or Misleading.

To violate the Lanham Act, a statement must be either (1) literally false or (2) literally true or ambiguous but have the tendency to deceive consumers. *Pizza Hut*, 227 F.3d at 495. Align does not allege that the relevant statements—that ClearCorrect aligners have been proven "to be more stain-resistant"—are untrue. Nor does it allege that Invisalign aligners do not have the appearance shown in the images after having been submerged in mustard and coffee for 24 hours. Thus, Align does not claim that the advertisements are literally false, nor could it do so. Compl.

---

*Id.* ¶ 35; Ex. 3 (as appearing in original).

¶ 61.[8]  As such, Align must sufficiently plead that the statements are misleading.  *Pizza Hut*, 227 F.3d at 495.  It has not done so.[9]

Even accepting as true Align's allegation that "no reasonable consumer would submerse an aligner in coffee or mustard for 24 hours (or keep mustard or coffee in their mouth for the 22 hours a day that Invisalign® patients wear their aligners)," Compl. ¶ 36, when read in context of the full web pages, there is nothing misleading about the pictures or statements.  As the web pages demonstrate and the Complaint itself acknowledges, Defendants clearly and accurately describe the conditions that produced the images shown, stating immediately beneath the images that aligners were "immersed in the respective substances for 24 hours at 37°C."  Exs. 3, 4; Compl. ¶ 63.  Notably, as is evident from the web pages, the images and statements appear on portions of the websites directed to doctors.  Ex. 2 ("[O]ur premier aligner provides the ultimate orthodontic tool *for your practice*."); Ex. 3 ("ClearCorrect aligners are the ultimate orthodontic tool *for your practice*.").  Viewed in context, there is no plausible basis to infer that a doctor, seeing the images and statements in context and understanding how their patients use clear aligners, would be misled.

---

[8] *See also* Compl. ¶ 3 ("[T]he advertisement falsely **suggests** that wearing Align's aligners will make one's teeth appear hideously discolored."); *id.* ¶ 36 ("By advertising **misleading** images of Align aligners after immersion in mustard and coffee for 24 hours, ClearCorrect and Straumann falsely **imply** that Invisalign aligners will appear unattractive and stained during normal use.... ClearCorrect's and Straumann's advertisements therefore **mislead** consumers into believing than Align's aligners are aesthetically inferior…."); *id.* ¶ 37 ("ClearCorrect and Straumann's advertising **misleads** consumers to believe that ClearCorrect aligners are aesthetically more pleasing than Align aligners.").

[9] In assessing whether a statement is misleading, the statement must be viewed in the full context of the advertisement in which it appears.  *Pizza Hut*, 227 F.3d at 501; *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 454 (6th Cir. 2024); *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 271 (6th Cir. 2018).  The Court may consider the actual web pages, *see* Exs. 2, 3, that Align cites in its Complaint, Compl. ¶¶ 34 n.20, 35 n.24, because these sources are central to Align's claims and should therefore be considered in full.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Greater Houston Transp. Co.*, 2015 WL 1034254, at *5 (court, on motion to dismiss, "may consider . . . documents incorporated into the complaint by reference").

Even as to patients, one would have to presume a patient diligent enough to go to the section of the websites directed to doctors to find the page describing the experiments, but careless enough to disregard the information about how the experiments were performed. While the Court must assume all well-pleaded facts as true, to survive a motion to dismiss, the allegations in the complaint must "raise a right to relief above the speculative level." *See Greater Houston Transp. Co.*, 2015 WL 1034254, at *4. Where, as here, Align's false advertising claim rests on "unwarranted factual inferences," the allegations "do not support a plausible claim for relief," and should be dismissed. *Id.* at *12 (dismissing claim requiring an inference that the customer is "careless enough to disregard the information actually provided.").

### B. Align Fails To Adequately Plead Consumer Deception.

Because Align has not alleged literal falsity, it must prove that a substantial segment of the audience has been, or is likely to be, deceived. *Greater Houston Transp. Co.*, 2015 WL 1034254, at *12 (citing *Pizza Hut*, 227 F.3d at 495); *Wysong Corp.*, 889 F.3d at 271. The Complaint fails to do either, stating only: "On information and belief, these advertisements either deceived or had the capacity to deceive a substantial segment of potential Align customers because they do not accurately reflect how Align's products will appear under normal and expected, everyday use by consumers." Compl. ¶ 61. The Complaint does not identify any instance of a consumer having been deceived or cite any other facts to demonstrate that consumers are likely to be deceived. Even at the motion to dismiss stage, a complaint must do more than merely "offer[] labels and conclusions or a formulaic recitation of the elements of the cause of action" and, instead, "must plead specific facts." *Greater Houston Transp. Co.*, 2015 WL 1034254 at *4-5; *Int'l IP Holdings, LLC v. Vitamin Energy, Inc.*, 2023 WL 6466560, at *6 (E.D. Mich, Oct. 4, 2023) (finding allegations of false advertising conclusory and dismissing false advertising claim). Count I of the

Complaint should be dismissed for the independent reason that Align has not adequately pleaded deception. *See Wysong Corp.*, 889 F.3d at 271.

### C. Align Fails To Adequately Plead Materiality.

Because Align does not allege that the statements or images are literally false, it must also demonstrate that they are material. *Pizza Hut*, 227 F.3d at 495. Here, the Complaint states: "These statements were material in that they are likely to influence consumer purchasing decisions raising concerns about the aesthetic quality of Align's aligners and thereby driving consumers to ClearCorrect's competing aligners." Compl. ¶ 61. Once again, the Complaint provides no factual support for the allegation that the statements are material. Rather, the Complaint's allegations suggest that the statements are not material. According to Align, "no reasonable consumer would submerse an aligner in coffee or mustard for 24 hours (or keep mustard or coffee in their mouth for . . . 22 hours a day)," and "Align's instructions for use encourage users to remove their aligners when eating or drinking." *Id.* ¶ 36. If that is the case, then such a consumer would not be influenced by an experiment that shows the results of submerging an aligner in coffee or mustard for 24 hours. Based on the conclusory and contradictory allegations in the Complaint, Align has failed to adequately plead materiality, and Count I should be dismissed for this reason also. *See Pizza Hut*, 227 F.3d at 495.

For the reasons discussed above, Count I should be dismissed.

### VI. ALIGN FAILS TO STATE CLAIMS FOR UNFAIR COMPETITION (COUNT II) OR CIVIL CONSPIRACY (COUNT III)

Under Texas law, where, as here, a plaintiff's false advertising claim fails, the unfair competition claim fails as well, absent any specific argument as to why the two claims should be analyzed separately. *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000); *Mission Pharmacal Co. v. Virtus Pharm., LLC*, 23 F.Supp.3d 748, 759, 774 (W.D. Tex. 2014); *Boltex Mfg.*

Co., L.P. v. Ulma Piping USA Corp., 389 F.Supp.3d 507, 519-20 (S.D. Tex. 2019). Align does not allege a separate basis for its unfair competition claim. Compl. ¶¶ 64-65. Accordingly, Count II should be dismissed for the same reasons as Count I.

Align's civil conspiracy claim also fails because it has not adequately alleged an underlying tort or the requisite elements of civil conspiracy. Specifically, because civil conspiracy is not an independent tort, *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019), and Align has failed to adequately plead unlawful conduct for the reasons discussed in Sections V.A through V.C above, there can be no civil conspiracy. *See Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 530-31 (5th Cir. 2004). Accordingly, Count III should also be dismissed.

## VII.  ALIGN FAILS TO STATE A CLAIM FOR DIRECT INFRINGEMENT OF THE "TREATMENT PLANNING" PATENTS.

Align fails to plausibly allege that ClearCorrect performs ***each and every limitation*** of the asserted claims of the treatment planning patents. *Iqbal*, 556 U.S. at 678; *Artrip v. Ball Corp.*, 735 F. App'x 708, 714 (Fed. Cir. 2018). Specifically, Align fails to plead facts to support a reasonable inference that ClearCorrect's software meets the specific software and/or computer limitations for claim 1 of each of the treatment planning patents.[10] Each of the asserted treatment planning patents requires that the software or computer perform certain steps in planning tooth movements, such as "***determining*** . . . an order of movement . . . such that the dental objects ***avoid colliding*** with or obstructing each other." '444 Patent, Claim Limitation 1(c). But Align admits in the Complaint that ***human technicians*** perform those steps, and there is nothing cited or discussed in the Complaint that could give rise to a reasonable inference that ClearCorrect's software satisfies those claim steps. The relevant infringement claims should, accordingly, be dismissed.

---

[10] '444 Patent, Claim Limitation 1(c); '217 Patent, Claim Limitation 1(c), 1(d), 1(e); '879 Patent, Claim Limitation 1(c), 1(e); '456 Patent, Claim Limitations 1(d), 1(e), 1(f).

██████████████████████

***First***, exemplary claim 1 of the '444 patent requires "***determining, by the host computer***, an order of movement for each respective dental object such that the dental objects ***avoid colliding*** with or obstructing each other on their respective routes from said initial position to said desired final position ***through at least one of staggering and round-tripping***." '444 Patent, Claim Limitation 1(c). But Align admits that ClearCorrect's ***technicians***, not software, perform the treatment planning including any round tripping. Compl. ¶ 172. As mentioned above, Align fails to identify any evidence that a ***host computer*** determines an order of movement that avoids collisions, much less does so with the techniques of staggering and round-tripping. Indeed, Align admits the exact opposite.

***Second***, while the Complaint includes certain allegations relating to purported infringement of the '444 patent, those other allegations are ultimately irrelevant to the question of whether ClearCorrect's software performs the "determining" step. Align points to the "Treatment Planning Software Description" contained in ClearCorrect, LLC's 510(k) submission. But that document states that "the software interprets a series of intermediate states that adhere to defined maximum tooth motions"—not collision avoidance—and further provides that the technician refines the intermediate states ***manually***. Compl. Ex. 12 at 8. While Align cites various 510(k) statements regarding "functional equivalence," Compl. ¶ 226, these statements do not support that ClearCorrect's software actually determines the order of movement to avoid collision or the necessary "staggering" and "round-tripping" required by the claims.[11] Align also cites a YouTube

---

[11] Align also confusingly states that "ClearCorrect's treatment planning software also must identify collisions between teeth because, otherwise, it could not plot a treatment plan that avoided collisions and thereby allowed a patient's teeth to reach their final positions." Compl. ¶ 226. That statement makes no sense—in effect, Align is suggesting that because the software plots a treatment plan it must also identify collisions. But, as Align admits, human technicians (not the software) plot the treatment plan. And Align's statement also ignores the claims which require

video animation of the ClearPilot software and suggests the video qualifies as evidence that the software performs treatment planning with staggering. Compl. ¶ 172. This video, however, merely shows—as Align admits—the result of the work done by technicians to avoid collisions. It does not demonstrate ***how*** the order of movement was ***determined***, nor does it support the claim that the collision avoidance is performed by the software itself. The video, instead, confirms that ***technicians*** did the work because there are "comments" to doctors confirming that "***I aligned*** the upper and lower arches as specified . . . ***I put IPR in the lower arch*** to idealize the midline . . . ."[12]

 ***Third***, the other treatment planning patents fare no better than the '444 patent. Claim 1 of the '217 patent requires "***identifying, by a computer processor***, a collision . . . and performing, ***by a computer processor***, a first modification of the schedule of movement . . . the first modification comprising: round-tripping." '217 Patent, Claim Limitation 1(c), 1(d), 1(e). Claim 1 of the '879 patent requires "***modifying, by one or more computer processors***, the schedule of movement to avoid a collision . . . the modifying comprising . . . round-tripping." '879 Patent Claim Limitations 1(c), 1(e). Claim 1 of the '456 patent requires a "***computer implemented method***" "performing a first modification of the schedule of movement . . . determining that the first modification does not avoid a collision . . . and performing a second modification of the schedule of movement . . . the second modification of the schedule of movement modifying whether or not at least one of the dental objects move." '456 Patent, Claim Limitations 1(d), 1(e), 1(f). Align relies on the same facts addressed above in regard to the '444 patent for these claim limitations. Compl. ¶¶ 189, 190, 191, 208, 209, 225, 228, 229, 230. For the same reasons above, Align fails to state any evidence

---

that the software ***perform*** collision avoidance, not just identify a potential collision. The software could identify collisions but fail to ***determine*** "an order of movement" to "avoid colliding."

[12] *ClearPilot features: The Control is in Your Hands*, ClearCorrect, accessible at https://www.youtube.com/watch?v=DYVS21zqH0c at 1:00.

that a ***computer processor and/or computer*** identifies a collision based on a treatment path and performs a modification in response, much less does so with the technique of round-tripping. Thus, the Court should dismiss Align's infringement claims relating to the treatment planning patents.

## VIII.   VARIOUS ASSERTED PATENT CLAIMS ARE § 101 INELIGIBLE.[13]

### A.   The "Treatment Planning" Patent Claims Are Ineligible Under § 101.

The asserted claims of the treatment planning patents are directed to planning a sequence of tooth movements to straighten teeth. The patents merely claim automating that process (which has historically been performed manually) using generic computing devices, without disclosing or claiming any specific mechanisms for achieving the claimed results. The asserted claims are therefore directed to an abstract idea, and they do not otherwise recite any inventive concept sufficient to transform them into patent-eligible subject matter. To be clear: even these abstract claims are not infringed by ClearCorrect and treatments using ClearCorrect—indeed, as noted above, the complaint includes certain facially defective infringement allegations. But the Court need not reach the question of noninfringement for certain of the claims that fail on § 101 grounds.

Claim 1 of the '444 patent is representative of the asserted treatment planning claims[14]:

---

[13] The Supreme Court has established a two-step framework for determining whether an invention claims a law of nature, natural phenomenon, or abstract idea and is thus patent-ineligible. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). First, courts "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* Second, if it is, courts then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.*

[14] The '217, '879, and '456 patents share an identical specification with the '444 patent, and the differences between the asserted claims do not change their abstract nature. For example, claim 1 of the '217 patent recites "selecting a movement pattern . . . defining a schedule of movement," which, like each limitation of claim 1 of the '444 patent, can be performed manually. *See* Compl. ¶ 187 ("a ***human technician*** selects a movement pattern"). And while the Examiner withdrew eligibility rejections for the '879 and '271 patents during prosecution after Align amended the claims to recite that "the dental objects" (*i.e.*, teeth) are "based from output of a scanning device,"

1. A computer-implemented method for staging the movement of a plurality of dental objects, the method comprising:

receiving, at a host computer, an electronic representation of each dental object of the plurality of dental objects in relation to one another;

receiving, by the host computer, an electronic representation of a desired final position for each respective dental object; and

determining, by the host computer, an order of movement for each respective dental object such that the dental objects avoid colliding with or obstructing each other on their respective routes from said initial position to said desired final position through at least one of staggering and round-tripping of at least one dental object.

At *Alice* Step One, the claims of the treatment planning patents are quintessentially abstract because they recite only computer automation of processes that "can be performed in the human mind, or by a human using a pen and paper." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Specifically, the claims are directed to the abstract idea of planning a sequence of tooth movements to straighten teeth. But that process can be—and indeed has been, and often still is—performed manually. Each limitation—receiving an initial position of a patient's teeth, receiving a desired final position of a patient's teeth, and determining an order of movement that avoids collision by "staggering" or "round-tripping"—can readily be performed manually, and none recites how the computer is programmed to perform the claimed function or otherwise describes a technological improvement to the computer for carrying them out.[15] Nor

_____

those claims do not rely on a "scanning device" to perform **any** steps in the claimed methods. Rather, the scanning device is invoked merely to provide data for the mental analysis steps (which can also be provided by a physical impression of teeth taken with a mold), and therefore the generic recitation of a "scanning device" does not make the claims less abstract. *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (rejecting patentee's argument that "claims are not drawn to an abstract idea because human minds are unable to process and recognize the stream of bits output by a scanner"). The '444 and '456 patents do not recite a "scanning device" at all, and it therefore cannot even arguably provide a basis for eligibility.

[15] Indeed, the specification and claims include only functional, result-driven limitations that do not recite any specific implementation mechanism or technological improvement. Claiming a desired

does anything in the specification suggest that the individual steps, or the overall process of creating a treatment plan, are performed any differently on a computer from how they could be performed manually. In fact, the specification **nowhere** purports to provide a new type of tooth movement that was previously unknown or suggests that the "staggering" and "round-tripping" determined by automation differ in any way from how those same movements were previously implemented manually. Thus, the claims are directed to an abstract idea.

Indeed, the specification itself confirms that the asserted claims of the treatment planning patents are directed merely to automating a practice previously performed manually. Specifically, it explains that "[i]n currently available systems . . . it is often necessary to **manually** manipulate digital and/or physical models of a patient's teeth to plan movements," '444 Patent col. 1 ll. 45-48, and characterizes the "objective[]" of the patents as "**increas[ing] automation** of a tooth movement treatment planning process." *Id*. col. 1 ll. 65-66; *see also, e.g.*, *id*. col. 6 ll. 1-3 ("[s]election of a pattern . . . can be suitably determined by the system **user**"); *id*. col. 6 ll. 28-30 ("the system **user** can determine . . . if the pattern should be modified"); *id*. at col. 7 ll. 12-13 ("[t]he system **user** . . . can suitably select a rate of tooth movement for each stage"). In fact, Align's own allegations **in this case** acknowledge that the steps of the claimed methods can be performed manually. Compl. ¶ 169 ("**technicians** . . . derive the desired final tooth positions"); *id*. ¶ 170 ("ClearCorrect's treatment planning software receives an electronic representation . . . after a **doctor** digitally edits the desired final positions"); *id*. ¶ 171 ("a **technician** further refines these intermediate states"); *id*. ¶ 172 ("**technicians** will . . . treatment plan . . . using anterior round-tripping"); *id*. ¶ 187 ("a **human technician** selects a movement pattern"). Further, while the

---

result based on undisclosed algorithms does not improve the functioning of a computer. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016).

specification explains that "the program is configured to 'stagger,' 'round-trip,' and/or slow the movement" if the teeth "cannot be moved without colliding," '444 Patent col. 6 ll. 39-42, this process—tracing lines, seeing if they cross, and, if so, changing the sequence of movements—could alternatively be performed with pen and paper.  Finally, to the extent that the specification discloses that the claimed steps can be performed by a computer, it describes (at most) only basic arithmetic processes that can be performed with pen and paper.  *E.g.*, *id*. col. 6 ll. 33-35 ("the computer program can suitably ***calculate distances*** . . . then ***apply geometrical techniques***").

At *Alice* Step Two, the claims do not recite an inventive concept sufficient to transform the claimed methods into patent-eligible subject matter.  ***First***, the claims recite only a generic "computer" to perform (at most) routine arithmetic and geometric functions to implement a process that could alternatively be performed by hand.  *Id*. col. 4 ll. 58-62 ("any computing device utilized by a user may include an operating system as well as conventional support software").  ***Second***, the individual limitations do not recite inventive concepts.  To the extent that the claims recite modifying a treatment plan to avoid collisions or using a pattern to determine the treatment plan, those limitations could be performed with pen and paper, and are therefore themselves abstract ideas.  *See Chamberlain Grp., Inc. v. Techtronic Indus. Co*, 935 F.3d 1341, 1349 (Fed. Cir. 2019) (inventive concept cannot be "abstract idea that the claims are directed to").  Further, specifying that the "dental objects" are "based from output of a scanning device" is not an inventive concept. As recited in the claims, the "scanning device" only provides data, and therefore operates only as a generic computing device.  ***Third***, the ordered combination of the limitations does not give rise to an inventive concept.  Rather, the claimed order is the same as how the same result could be achieved manually, and nothing in the claims suggests otherwise.  Accordingly, the claims are ineligible under § 101.

**B. The "Composite Image" Patent Claim Is Ineligible Under § 101.**

The asserted claim of the composite image patent is directed to creating a composite image based on scans of a patient's teeth. Specifically, the claim recites displaying data from a first scan of a patient's teeth, receiving a selection of a portion of the scan to be replaced, receiving data from a second scan, and replacing the selected portion of the first scan with data from the second scan. But the Federal Circuit has repeatedly held that such collection, manipulation, and display of data is an abstract idea, including ***specifically*** in the context of creating composite images. The claim is therefore directed to an abstract idea, and it does not otherwise recite any inventive concept sufficient to transform the claim into patent-eligible subject matter.

The specification explains that "it is often the case that when scanning the intra oral cavity . . . part of the finish line"—the boundary between a prosthesis and a dental preparation—"may be obscured." '936 Patent col. 1 l. 60-col. 2 l. 2. Rather than re-scanning the entire cavity, the patent proposes performing a second scan of only the affected area and creating a composite of the two scans. Claim 1 is representative:

1. A system for scanning a patient's teeth for a dental procedure, the system comprising:

a hand-held intraoral scanner; and

a computer readable medium including instructions that when executed by a computer system, cause the computer system to:

receive first scan data of the patient's teeth from the hand-held intraoral scanner;

display, to a display, a model of the patient's teeth, wherein the model of the patient's teeth is based on the received first scan data of the patient's teeth;

receive user input defining a portion of the model to be removed;

remove, from the displayed model, a removed surface portion of the model to be removed according to the user input;

receive second scan data of the patient's teeth from the hand-held intraoral scanner, the second scan data including surface data of a physically changed portion of the patient's intraoral cavity;

replace at least a portion of the removed surface portion of the model using the received second scan data of the patient's teeth including surface data of a physically changed portion of the patient's intraoral cavity; and

output, to the display, the model of the patient's teeth with the portion of the removed surface portion replaced using the received second scan data.

At *Alice* Step One, the claims of the composite image patent are directed to collecting, manipulating, and displaying data, which the Federal Circuit has repeatedly held is an abstract idea. *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017). Specifically, claim 1 recites **receiving** data from a first scan, **displaying** the data, **receiving** a user input, **manipulating** the first scan data by removing a portion, **receiving** data from a second scan, **manipulating** the data by replacing the removed portion of the first scan with data from the second scan (i.e., making a composite of the two scans), and **displaying** the composite data. Indeed, the Federal Circuit has repeatedly held that such claims directed to creating a composite image are ineligible. For example, in *RecogniCorp, LLC v. Nintendo Co., Ltd.*, the court held claims directed to methods for "building a composite facial image using constituent parts" ineligible. 855 F.3d 1322, 1324, 1327 (Fed. Cir. 2017). There, the claims recited displaying facial feature images, selecting a facial feature image, incorporating the facial features image into a composite image, and displaying the composite image. *Id*. at 1324. The court held that the claims were directed to an abstract idea because, as here, the process "started with data, added an algorithm, and ended with a new form of data." *Id*. at 1327. Likewise, in *Yu v. Apple Inc.*, the court considered claims directed to capturing two images and producing a composite image where the first image is enhanced with the second image. 1 F.4th 1040 (Fed. Cir. 2021). The court held

that the claims were directed to the abstract idea of "taking two pictures . . . and using one picture to enhance the other in some way." *Id*. at 1043. If anything, the claims of Align's composite image patent are even more abstract because, rather than "enhancing" a first image with a second image, the claims merely recite replacing a portion of the first image with the second image.

At *Alice* Step Two, the claims do not recite any inventive concept that transforms the claims into patent eligible subject matter. ***First***, the claims recite using only generic components to perform their usual functions. The specification explains that the claimed "intra oral scanner" can be "any suitable scanning equipment," '936 Patent col. 18 l. 10, and the data is stored in a "suitable storage medium, for example a memory in a computer." *Id*. col. 19 ll. 5-7. The specification characterizes the "computer" only as a "suitable computer system," *id*. col. 20 l. 31, and does not otherwise suggest that it is anything other than a conventional computing device. ***Second***, none of the limitations individually recite inventive concepts. Rather, they recite only generic data management functions like receiving, manipulating, and displaying data, which are themselves abstract ideas. *See Chamberlain Grp.*, 935 F.3d at 1349. ***Third***, the ordered combination of limitations does not give rise to an inventive concept. While the specification suggests that the alleged benefit of the claimed methods is to avoid the "time, inconvenience, and . . . discomfort" of rescanning an entire area where only part of an image is obscured, '936 Patent col. 2 ll. 17-22, the claims' "solution to [that] problem[] is the abstract idea itself—to take one image and 'enhance' it with another." *Yu*, 1 F.4th at 1044. Accordingly, the claims are ineligible under § 101.

IX. **CONCLUSION**

Align's complaint should be dismissed for ███████████████████████████████ ███████████████████████ Alternatively, various Align claims—as described and explained above—should be dismissed for failure to state a claim.

██████████████████████

Dated: June 20, 2024                    Respectfully submitted,


*/s/ Melissa R. Smith*
Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM AND SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
(903)934-8450
Fax: (903)934-9257

Omar A. Khan
Joseph J. Mueller
WILMER CUTLER PICKERING HALE AND
    DORR LLP
250 Greenwich Street
New York, NY 10007
(212) 230-8800
omar.khan@wilmerhale.com
joseph.mueller@wilmerhale.com

Gerard A. Salvatore
Robert B. Stiller
WILMER CUTLER PICKERING HALE AND
    DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000
jerry.salvatore@wilmerhale.com
robert.stiller@wilmerhale.com

Hannah Santasawatkul
Texas State Bar No. 24107617
WILMER CUTLER PICKERING HALE AND
    DORR LLP
1225 17th Street, Suite 2600
Denver, Colorado 80202
(720) 274-3135
hannah.santasawatkul@wilmerhale.com

*Attorneys for Defendants*
*ClearCorrect Operating, LLC*
*ClearCorrect Holdings, Inc.*

*Limited and Special Appearance for*
*Defendant Institut Straumann AG*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail on June 20, 2024.

/s/ Melissa R. Smith
Melissa R. Smith