# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CLEARCORRECT OPERATING, LLC,<br>CLEARCORRECT HOLDINGS, INC., &<br>INSTITUT STRAUMANN AG,<br><br>        Defendants.<br><br>_____<br><br>CLEARCORRECT OPERATING, LLC,<br>CLEARCORRECT HOLDINGS, INC., &<br>STRAUMANN USA, LLC,<br><br>        Counterclaim-Plaintiffs,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>        Counterclaim-Defendant. | Case No. 6:24-cv-00187-ADA-DTG |

## JOINT RULE 26(f) REPORT

Pursuant to Federal Rule of Civil Procedure 26(f)(3) and this Court's Order dated June 28, 2024 (ECF No. 40), Plaintiff and Counterclaim-Defendant Align Technology, Inc. ("Align") and Defendants and Counterclaim-Plaintiff ClearCorrect Operating, LLC, ClearCorrect Holdings, Inc., and Counterclaim-Plaintiff Straumann USA, LLC (collectively, "ClearCorrect") jointly file this report responding to the nine questions in the Court's June 28, 2024 Order and a

proposed scheduling order as **Exhibit A**.[1]  Where the parties could not reach agreement, their

separate positions are noted.

The parties met and conferred on July 19, 2024.  The participants were:

Rich Hung, Brian Nash, Forrest McClellen, and Ian Bennett for Align.

Holly Ovington, Omar Khan, Hannah Santasawatkul, and Travis Underwood for

ClearCorrect.

## I.      QUESTION 1

*Are there any outstanding jurisdictional issues?*

Institut Straumann AG contests personal jurisdiction and has filed a motion to dismiss

under Rule 12(b)(2).  *See* ECF No. 30.  No other party has contested jurisdiction.

## II.     QUESTION 2

*Are there any unserved parties?*

No.

## III.    QUESTION 3

*What are the causes of action, defenses, and counterclaims pled?*

**Align Technology, Inc.**  Align pled the following causes of action against ClearCorrect

Operating, LLC, ClearCorrect Holdings, Inc., and Institut Straumann AG:

- False advertising under the Lanham Act;

- Unfair competition under Texas law;

- Unlawful civil conspiracy under Texas law;

- Direct, indirect, and willful infringement of United States Patent Nos. 10,973,613,

---

[1]      In view of Institut Straumann's motion to dismiss pursuant to Federal Rule of
Civil Procedure 12(b)(2), Institut Straumann does not join this submission.

11,154,384, 11,648,090, 11,648,091, 8,038,444, 10,456,217, 10,524,879, 11,369,456, and 10,791,936.

*See* ECF No. 1, ¶¶ 60-251.

Align has not yet responded to ClearCorrect Operating, LLC, ClearCorrect Holdings, Inc., and Straumann USA LLC's claims against Align.

**ClearCorrect Operating, LLC and ClearCorrect Holdings, Inc.** ClearCorrect Operating, LLC and ClearCorrect Holdings, Inc. pled the following counterclaims against Align:

- Monopolization under 15 U.S.C. § 2;

- Attempted monopolization under 15 U.S.C. § 2;

- Monopolization under Tex. Bus. & Com. Code § 15.05(b);

- Attempted monopolization under Tex. Bus. & Com. Code § 15.05(b);

- False advertising under the Lanham Act;

- Unfair competition under Texas Law;

- Breach of Contract;

- Declaratory judgment of no false advertising;

- Declaratory judgment of no unfair competition;

- Declaratory judgment of no civil conspiracy;

- Declaratory judgment of non-infringement of United States Patent Nos. 10,973,613, 11,154,384, 11,648,090, 11,648,091, 8,038,444, 10,456,217, 10,524,879, 11,369,456, and 10,791,936; and

- Declaratory judgment of invalidity of United States Patent Nos. 10,973,613, 11,154,384, 11,648,090, 11,648,091, 8,038,444, 10,456,217, 10,524,879, 11,369,456, and 10,791,936.

ECF No. 49 at 147-200.

ClearCorrect Operating, LLC and ClearCorrect Holdings, Inc. pled the following defenses to Align's causes of action:

- Failure to state a claim;

- Non-infringement;

- Invalidity / Patent ineligibility / Unenforceability;

- Limitation on damages / Failure to mark / Failure to mitigate;

- No false advertising;

- Waiver, estoppel, prosecution laches, acquiescence, and unclean hands;

- Prosecution history estoppel and disclaimer;

- No equitable entitlement to injunctive relief;

- No costs;

- Ensnarement;

- Lack of standing;

- License / Patent exhaustion;

- No willfulness / No enhanced damages / No exceptional case;

- Lack of causation;

- Breach of settlement agreement; and

- No civil conspiracy.

ECF No. 49 at 70-74.

**Straumann USA, LLC.** Counterclaim-Plaintiff Straumann USA, LLC pled the same causes of action against Align as the ClearCorrect entities.

**Institut Straumann AG.** Defendant Institut Straumann AG has not yet filed an answer

and therefore has not pled any causes of action or defenses.

## IV.     QUESTION 4

*Are there any agreements or stipulations that can be made about any facts in this case or any element in the cause(s) of action?*

The parties expect that such agreements or stipulations may be possible as the case matures.

## V.     QUESTION 5

*State the parties' views and proposals on all items identified in Fed. R. Civ. P. 26(f)(3).*

The parties propose the following discovery plan based on the Federal Rule of Civil Procedure Rule 26(f)(3) and the Court's Standing Order Governing Proceedings 4.4—Patent Cases ("OGP").

### A.     FRCP 26(f)(3)(A)

*What changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made.*

The parties do not propose changes to form or requirement for disclosures under Rule 26(a). The parties disagree as to the timing of those disclosures:

**Align's Position.** Align believes the parties should follow the Court's default procedure and make their initial disclosures under Rule 26(f) on January 23, 2025, one day after the *Markman* hearing in Align's proposed case schedule. By default, and with limited exceptions, discovery is stayed in patent cases "until after the *Markman* hearing." OGP at 3. Because initial disclosures are discovery, they should be delayed until after the *Markman* hearing.

Lifting that stay now does not make sense. The stay is economical. Both Align Technology, Inc. and Institut Straumann AG have yet to respond to the claims against them.

Institut Straumann AG has moved to dismiss and Align may do so as well.[2]  Thus, by the time

discovery begins, some or all of the parties' claims and defenses may no longer exist.  Moreover,

the outcome of the *Markman* hearing may substantially focus the parties' discovery into Align's

claims for patent infringement and ClearCorrect's defenses.

Allowing ClearCorrect to take discovery on some claims while keeping most of Align's

claims stayed would create problems because the parties' claims are intertwined.  As

ClearCorrect acknowledges, there is substantial overlap between the discovery needed for

Align's patent claims and for the parties' other claims and defenses.  ClearCorrect's antitrust

counterclaims, for example, relate to Align's sales of its iTero® scanners and its Invisalign®

aligners and thus are tied to Align's claims for infringement of its patents covering scanner and

aligner features—the parties' sales volumes and marketing practices for the scanners and

aligners, for example, will be relevant to both the patent and antitrust claims.  *E.g.*, ECF No. 49

at 94-95, ¶ 58.  Likewise, ClearCorrect's narrative for its antitrust counterclaims also makes

representations about how well its products work—ClearCorrect contends that it "offers a better

product at a lower price" than Align's, *id.* at 123, ¶ 143—placing the details of ClearCorrect's

technology at issue for the antitrust claims, just as they will be at issue on Align's patent claims.

ClearCorrect's other claims also are intertwined with Align's patent claims.

ClearCorrect's false advertising claim relates to how Align markets its Invisalign® aligners and

whether other companies offer equivalent treatment, which also will be relevant at least to patent

damages.  *Id.* at 138-143, ¶¶ 185-200.  And ClearCorrect's breach of contract claim relates to

Align's assertion that "ClearCorrect never abandoned its strategy of infringing Align's patents."

*Id.* at 145, ¶ 209.  Accordingly, splitting up discovery would likely cause a host of line-drawing

issues, *i.e.*, whether discovery requests relate to patent or non-patent claims, requiring the

Court's attention.  *See, e.g.*, *In re Theodor Groz & Sohne*, 972 F.2d 1352, at *3 (Fed. Cir. 1992)

---

[2] ClearCorrect's response, that stays pending motions to dismiss are atypical, misses the fact that here the stay is the *default* from which it asks the Court to depart.  Nor is Align asking the Court to stay discovery on the antitrust claims until it resolves a motion to dismiss.  The point is that, under the default procedure, the Court may extinguish some claims by next year.

(refusing to overturn finding that "the commonality of the patent and antitrust issues presented made severance and stay of discovery unworkable and inefficient use of judicial resources").

ClearCorrect's proposal also is inequitable. By opening discovery on most of ClearCorrect's claims but not most of Align's, ClearCorrect will be able to burden Align with document requests and motion practice without facing reciprocal requests and motion practice on most of Align's. That Align also has brought non-patent claims does not change matters; the burden and expense imposed by litigating ClearCorrect's antitrust counterclaims likely will far exceed what will be needed to resolve Align's false advertising, unfair competition, and conspiracy claims. The Court should not allow discovery on all ClearCorrect's claims while staying discovery on most of Align's.

ClearCorrect's arguments to the contrary do not add up. ClearCorrect speculates that discovery on its antitrust claims will seamlessly roll over into discovery on the patent claims, but it ignores the likelihood of discovery disputes as to the boundary between them. ClearCorrect argues that the case schedule does not permit sufficient time to litigate both parties' claims, but it fails to explain why proceeding in parallel would not work. In fact, contrary to ClearCorrect's proposal to stay Align's patent claims, courts routinely stay *antitrust* claims pending resolution of *patent* claims. *See, e.g.*, *In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986). Given that ClearCorrect's antitrust claims depend from Align's patent claims—ClearCorrect alleges Align uses "baseless claims of patent infringement[] as an anticompetitive weapon," ECF No. 49 at 82, ¶ 22—it would make even less sense here for the antitrust claims to go first.

ClearCorrect also is wrong that Align already gets substantial patent discovery. The OGP's pre-*Markman* discovery is cabined to what is necessary for the parties to brief claim construction and resolve jurisdictional and venue disputes; it does not include traditional discovery on issues like inducement, willfulness, damages, and other topics. Finally, the parties' proposal to double the default limits on discovery does not require doubling the discovery period; again, the parties can take discovery on all claims in parallel.

Align respectfully requests that the Court maintain the default stay for discovery on all claims and defenses, barring the OGP's limited exceptions. Alternatively, if the Court is inclined to permit opening discovery before *Markman*, it should be open for all claims, not just the few that ClearCorrect has designated.

**ClearCorrect's Position.** ClearCorrect proposes that written and document discovery proceed on all non-patent claims in the case, beginning with the exchange of initial disclosures on non-patent claims on August 8, 2024. As Align acknowledges, its patent claims are intertwined with issues about how the parties compete in the marketplace. Based on those interrelated facts, this case now includes not only patent claims, but also federal and state antitrust claims as well as competing false advertising claims, in addition to other causes of action. While the OGP provides an appropriate process for litigating patent claims, ClearCorrect submits that managing ***this*** case as if it were only a patent case, without regard to the need for additional non-patent discovery, will frustrate the Court's interest in promoting the fair and expeditious resolution of this litigation. ClearCorrect's proposal (1) ensures that the Court's OGP schedule is generally maintained despite the introduction of a significant number of non-patent claims, and (2) facilitates all parties having sufficient time to efficiently pursue and defend their claims. Align's arguments to the contrary are meritless.

As a threshold matter, the basic premise of Align's position that the "default" procedure under the OGP is to stay discovery, *see supra* n.2, is flawed. Under the OGP, there is significant discovery on Align's patent claims in advance of *Markman*. For example, the parties are required to exchange written discovery in the form of detailed infringement and invalidity contentions, to make document productions relating to conception, reduction to practice, patent prosecution, prior art, and the core technical documents relating to the accused products, and to serve and exchange any *Markman*-related discovery.[3] Because there ***is*** ongoing pre-*Markman*

---

[3] Align's argument that there is no patent discovery pre-*Markman* is simply untrue—Align filed just last week, over 150 pages of preliminary infringement contentions, accompanied by a production of over 15,000 pages, and it can similarly expect significant discovery (*e.g.*, prior art, core technical documents) from ClearCorrect alongside its invalidity

discovery, it is Align's proposal, and not ClearCorrect's, that would create the inequity of allowing one party (Align) to make significant progress on its affirmative claims, while effectively foreclosing any progress on the other party's claims.

Align's approach is not only manifestly unfair in this way, it is also the approach least likely to promote the orderly and expeditious resolution of the parties' disputes. Align's position ignores that antitrust and false advertising claims require significant discovery (*e.g.*, into Align's sales practices, its contracts and relationships with doctors, third-party competitors, etc.), that likely will require more time than the default patent fact discovery period the OGP provides. The parties are, in fact, in agreement that the standard written discovery and deposition limits need to be more than doubled to account for the additional claims and defenses in the case. Yet Align still presses for a stay of non-patent discovery as if the case were half the size.[4] By proposing to delay all this non-patent discovery until after *Markman*, Align's proposal will ultimately present the Court with two equally untenable outcomes—unnecessarily prolonging the whole litigation, or depriving ClearCorrect a fair opportunity to gather evidence in support of its monopolization claims.

While Align correctly recognizes that there is "substantial overlap" between the claims and counterclaims, ultimately the fact of substantial overlap between the non-patent and patent claims supports ClearCorrect's position—not Align's. It is precisely because of the substantial overlap that pre-*Markman* discovery on the non-patent claims will not be wasted and, in fact,

---

contentions. While some elements of patent discovery are reserved for after the *Markman* hearing, it is not accurate to suggest as Align does that a complete "stay" of discovery is "the **default**" in patent cases.

[4] Align faults ClearCorrect for "speculat[ing]" and "fail[ing] to explain" why litigating double the amount of discovery in the same time period "would not work." First, it is Align's position—that **no additional time** is required for a case of twice the size—that needs explaining, which Align never does. And, second, ClearCorrect's proposal permits efficient discovery on all claims, **and** keeps the overall litigation moving forward essentially as promptly as the OGP contemplates. The proposed schedules submitted by the parties are only 8 weeks apart for trial (accounting for the expanded expert period described below). It is ClearCorrect's proposal to open non-patent discovery now that **allows** for the parties to essentially stick to the OGP cadence and timing. For its part, Align provides no explanation, path, or proposal for how the parties could **possibly** stay non-patent discovery and also meet the OGP schedule with a case now twice the previous size.

will also be advancing Align's patent claims at the same time. Align's reliance on *In re Innotron Diagnostics* and *In re Theodor Groz & Sohne* is therefore misplaced. *Innotron* is entirely inapposite—the case dealt with trial sequencing, not whether antitrust discovery should proceed, and expressly limited its holding to "patent-type" antitrust counterclaims (arising solely from the assertion of a patent), as distinguished from "pure" antitrust claims (arising from broader marketplace conduct). ClearCorrect's proposal (and the parties dispute) has nothing to do with sequencing at trial. And even if it did, *Innotron* would have nothing to offer, because ClearCorrect's antitrust claims are of the "pure" type described in the case. *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) ("the present case involves two species of antitrust claims… "pure" Sherman Act claims…[and]… "patent type antitrust" claims… The present petition concerns only a 'patent type antitrust claim.'"). To be clear, while there is significant factual overlap, ClearCorrect's antitrust claims do not "depend" ***in any respect*** on the outcome of Align's patent claims. The antitrust claims in the case arise from Align's monopolistic sales practices and coercion of doctors. Much more relevant to the dispute before the Court here is *Westinghouse Air Brake Techn. Corp. v. Siemens Mobility, Inc.*, 2019 WL 126192 (D. Del. 2019). There, the Court denied a motion to stay discovery on antitrust claims because the breadth of antitrust and patent claims required "[p]ressing forward with discovery" to "keep all of these cases and issues moving forward in a just and equitable manner," allowing any potential discovery disputes (including those on scope) "to be heard and sorted out by a judge before too long…" *Id.*

Further, *In re Theodor*, in which the Federal Circuit upheld the district court's decision not to sever or otherwise stay discovery on antitrust counterclaims, supports ClearCorrect's proposal. ClearCorrect believes the claims and counterclaims should, and must, remain together precisely because there is so much factual overlap and intertwinement among them, as Align admits. ClearCorrect's proposal to commence non-patent document and written discovery advances this goal because it will allow the Court to keep these interrelated claims together

through trial without delaying final adjudication of any of the claims. Indeed, ClearCorrect filed its counterclaims **early**, well before its answer was due, to allow the Court to do so.

Moreover, ClearCorrect's proposal does not invite "a host of line-drawing issues," as Align hypothesizes. The scope of discovery in the pre-*Markman* phase is defined by what is relevant and proportional to those non-patent claims, a determination this Court is frequently called upon to decide. To be sure, some of the discovery taken on the antitrust and false advertising claims will also be relevant to the patent claims. That just means that, after *Markman*, the parties can more efficiently complete discovery with any additional written and document discovery the patent claims warrant. Nor does ClearCorrect's proposal involve a one-sided discovery burden on Align, as Align argues. Both sides will have significant discovery obligations with respect to the antitrust and false advertising claims (as well as patent claims). That is why beginning now is so important.

Finally, this efficiency is not disturbed by the fact that Align "may" file a motion to dismiss. Indeed, as stated above, the parties are proceeding with patent discovery despite ClearCorrect's pending motions to dismiss. For "good cause" (shown by the party opposing discovery), a court may stay discovery pending a motion to dismiss, but "in practice such stays are very rare, and almost never wise." *360 Mortg. Grp, LLC v. LoanCare LLC*, 2018 WL 6272034, at *1 (W.D. Tex. Nov. 30, 2018) (adding such stays are often "directly at odds with the need for expeditious resolution of litigation"). That is especially so here where Align acknowledges that a significant amount of the early discovery would ultimately be relevant to its own patent claims, meaning the risk that proceeding with discovery would pose an unnecessary burden is even lower.

While ClearCorrect maintains that its proposed schedule presents the most equitable and efficient path forward, in the alternative, ClearCorrect would be amenable to opening all written and document discovery **on all claims** at this time. For the reasons stated above, Align's efficiency and equity concerns are meritless, but proceeding with all written and document

discovery on all claims now would nevertheless resolve these objections. This is consistent with Align's alternative position as well.

### B. FRCP 26(f)(3)(B)

*The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues.*

The parties anticipate that discovery will be needed on each party's claims, defenses, and counterclaims listen in response to Question 3, above, and on damages. The parties disagree regarding the timing of discovery:

**Align's Position.**

***Overall Case Schedule***. Align respectively requests the Court adopt Align's proposed schedule, as set forth in Exhibit A. That schedule, with some adjustments for holidays and an agreed extension for ClearCorrect's preliminary invalidity contention date, generally tracks the OGP's default schedule for patent cases.

ClearCorrect seeks to deviate from the Court's default by adding additional time through expert discovery and trial. Align does not agree. ClearCorrect identify a concrete reason why the Court's default cadence for expert discovery deadlines will not work. Nor does the parties propose to doubling the default limits on fact discovery support an extended expert discovery schedule. Align and ClearCorrect are sophisticated parties and will be able to advance expert discovery on the patent and non-patent claims in parallel. Align respectfully requests a trial date 52 weeks following the Court's *Markman* hearing, as is the norm.

***Pre-Markman Written and Document Discovery on Non-Patent Claims.*** As explained in response to Question 5.A., Align believes that discovery for all claims and defenses in this lawsuit should proceed in parallel. Consistent with the Court's OGP, and as set out in Exhibit A to this report, fact discovery should begin on January 23, 2025 and close on August 21, 2025 and expert discovery should begin on August 28, 2025 and close on October 16, 2025.

***Final Invalidity Contentions Date.***  Align disagrees with staggering the final infringement contention and final invalidity contentions dates.  As is the norm, the parties should serve their final infringement and invalidity contentions simultaneously.

ClearCorrect is wrong that staggering is proper.  It argues that it should be able to adjust its invalidity theories in response to Align dropping claims or accusing products, but ClearCorrect's invalidity theories should not change based on either event.  Nor is it true that preparing invalidity contentions would unduly burden ClearCorrect.  Align has asserted nine patents, but those nine patents break into three families that cover narrow universes of subject matter.  Moreover, there is nothing wrong with Align dropping claims *in response to* final invalidity contentions.  That is the norm before trial.  Finally, *ACQIS LLC v. ASUSTek Computer Inc.* involved a Defendant revealing new products two months *after* the default deadline for final contentions—that case did not, as ClearCorrect proposes here, provide for staggered contentions from the start.  No. 6:20-cv-00966-ADA, ECF No. 142 at 2 (W.D. Tex. Dec. 29, 2022); *ACQIS LLC v. ASUSTek Computer, Inc.*, No. 6:20-cv-00966-ADA, ECF No. 26 at 3 (W.D. Tex. July 6, 2021) (originally providing for simultaneous exchange of invalidity contentions).

***Claim Narrowing.***  This Court "generally will not require a plaintiff to reduce its number of asserted claims without the benefit of discovery, claim construction, and invalidity contentions." *Jawbone Innovations, LLC v. Apple Inc.*, No. 21-cv-00984-ADA, 2022 WL 707227, at *2 (W.D. Tex. Mar. 8, 2022).  The OGP provides two dates by which the parties should confer regarding claim narrowing claims, both of which are after the *Markman* hearing and well into fact discovery.  That default practice fairly allows plaintiffs to determine which claims to try to the jury after the Court's claim construction order and after most of fact discovery is complete.  Align believes that default practice should apply here.

ClearCorrect's proposal for narrowing sooner is inequitable.  It would first require that Align substantially narrow its case on October 17, 2024, before both the *Markman* hearing and the deadline for ClearCorrect's final invalidity contentions.  In other words, Align would have to drop most of its patent claims: (1) before the Court resolves any claim construction disputes in its

*Markman* order; (2) without the opportunity to take fact discovery, including depositions, regarding ClearCorrect's technologies; and (3) without the opportunity to choose claims resistant to ClearCorrect's final invalidity theories. ClearCorrect's second proposed narrowing on March 6, 2025, also comes months before the Court's default deadline for the parties to meet and confer to narrow claims and well-before most of fact discovery. Align also notes that, beyond suggesting that the parties meet and confer "on reasonable narrowing of prior art and timing of the same," ClearCorrect commits to no reciprocal narrowing for its invalidity case. That Align will see ClearCorrect's *preliminary* invalidity contentions and some technical documents pre-*Markman* in no way cures these inequities. There is no reason why Align should have to give up most of its claims nearly a year earlier than the Court's usual practice, which recognizes that discovery and the *Markman* proceedings will naturally narrow or focus the parties' positions.

ClearCorrect's arguments to the contrary do not hold water. It first argues that reducing claims before *Markman* would prevent the Court from having to address claims that do not reach the jury. But ClearCorrect has it backwards: the *Markman* order will impact which claims Align brings to trial, not the other way around. Nor should the Court credit ClearCorrect's speculation that Align will ask to construe many terms. For one thing, the parties have not yet exchanged proposed claims for construction. For another, the defendant, not the plaintiff, usually submits many disputes for resolution at claim construction. Also untrue is ClearCorrect's assertion that following the Court's standard narrowing schedule would allow Align to "hide the ball." According to agreed dates in the parties' proposed schedules, Align will narrow well in advance of trial, with the first narrowing deadline roughly a month before the close of fact discovery and the second shortly after the close of expert discovery.

ClearCorrect's cases are inapposite. Although other courts sometimes order early narrowing, that is not this Court's default practice. For example, in *Jawbone Innovations, LLC v. Meta Platforms*, this Court refused to order pre-*Markman* narrowing where a plaintiff asserted over 200 claims. No. 23-cv-00158-ADA-DTG, 2023 WL 8856049, at *2 (W.D. Tex. Dec. 20, 2023). Instead, it gave the defendants a one-week extension on their preliminary invalidity

contentions.  *Id.*  Here, Align already has agreed a *two-week* extension for ClearCorrect's preliminary infringement contentions.  In *ParkerVision, Inc. v. Intel Corp.*, the docket entry ClearCorrect cites states the *defendants*—not the Court—"said that they would reduce" claims pre-*Markman*.  No. 6:20-cv-00108-ADA, ECF No. 23 (W.D. Tex. June 26, 2020).  And as for *In re Katz Interactive Call Processing Pat. Litig.*, that Federal Circuit opinion actually highlighted the problems with ClearCorrect's approach: "a claim selection order could come too early in the discovery process, denying the plaintiff the opportunity the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity in light of the defendant's accused products and proposed defenses."  639 F.3d 1303, 1309 (Fed. Cir. 2011).

Finally, ClearCorrect's characterization of the parties' Rule 26(f) conference is not accurate.  Align did not "refuse[] to engage ClearCorrect in any meaningful discussion"; it explained why it believed early narrowing was improper and declined ClearCorrect's proposal.  Align also offered to discuss the issue further when the parties conferred again on Sunday afternoon.  That the parties disagree about pre-*Markman* narrowing is not a basis for implying that Align failed to adequately meet and confer.

For the foregoing reasons, Align respectfully requests the Court deny ClearCorrect's request to impose early, pre- and post-*Markman* narrowing.

**ClearCorrect's Position.**

***Overall Case Schedule.***  ClearCorrect respectfully requests that the Court adopt ClearCorrect's proposed schedule, as set forth in the second column of Exhibit A.  Through the close of fact discovery, ClearCorrect's schedule tracks the timing and cadence of the OGP's default schedule for patent cases, but also (i) allows for non-patent written and document discovery prior to the *Markman* hearing (as explained *supra* 8-9); (ii) staggers the final invalidity contentions deadline to be after the deadline for final infringement contentions (as explained in detail *infra* 17-19); and (iii) requires additional claim and prior art narrowing during the fact discovery period (as explained in detail *infra* 19-22).

Following the close of fact discovery, ClearCorrect's schedule provides for 15 weeks of expert discovery, 7 weeks more than what is contemplated under the OGP, to ensure a full and fair opportunity for both parties to pursue their claims and defenses. Align stresses that its proposed schedule "generally tracks the OGP's default schedule for patent cases," but this is no longer just a patent case. As both parties agree, Align's patent claims are just one part of a dispute based on intertwined fact issues. Indeed, the parties agree that ***double*** the amount of written and deposition discovery is required. And naturally, additional expert discovery also will be necessary as compared to the run-of-the-mill patent case—Align's nine (9) asserted patents implicate three (3) different technology areas and are asserted against three (3) different sets of accused products; antitrust claims often require expert economic analysis by an economist, which is not required in patent cases; and the antitrust and false advertising claims may also require industry and survey experts. The simple ***fact*** of the additional claims already favors a slightly expanded expert discovery period. But the complexity of the parties claims—especially, the complexity of the patent claims Align asserts against ClearCorrect—independently supports the need for additional expert discovery time in the schedule.

To accommodate the additional time for expert discovery, ClearCorrect proposes only a slight deviation with regard to the trial date, extending it from 52 weeks after *Markman* to 60 weeks—a mere 8-week difference for a case encompassing Align's patent claims for nine (9) patents, false advertisement, unfair competition, and civil conspiracy ***and*** ClearCorrect's federal and state antitrust claims and competing false advertising claims, among other claims. Align's request for a trial date 52 weeks after *Markman* is simply not feasible. While 52 weeks may be "the norm" with regard to patent cases, this is not merely a patent case. Furthermore, as mentioned above, this 8-week difference only reflects the additional time needed to conduct the

additional expert discovery implicated by the non-patent claims. ClearCorrect seeks no additional expansion of the ***fact discovery*** schedule, because its proposal to open written and document discovery on non-patent claims resolves any pressure on the standard fact discovery schedule. Align presents no proposal for completing double the amount of discovery in the same amount of time, and therefore Align's proposal is far more likely to result in inefficient departures from the proposed schedule.

**Pre-Markman *Written and Document Discovery on Non-Patent Claims.*** For the reasons stated in Section 5A, proceeding with written and document discovery on at least the non-patent claims before *Markman* is necessary to ensure the schedule is not overburdened post-*Markman*, and to avoid delay in adjudication of all claims. ClearCorrect submits that written and document discovery on the non-patent claims should begin on August 8, 2024, fact discovery on the remaining claims should begin on January 23, 2025 and close on August 21 2025, and expert discovery should begin on September 25, 2025 and close on December 4, 2025.

***Final Invalidity Contentions Date.*** ClearCorrect proposes staggering the final infringement and invalidity contention dates to promote efficiency and to allow the parties and the Court to focus on the claims actually at issue in the case. *First*, a simultaneous disclosure (as Align's proposal contemplates) is not appropriate for a case of this size. Align has asserted ***nine (9) patents*** in a single case. The nine (9) asserted patents cover at least three different technologies—the material properties of clear aligners, treatment techniques for clear aligners, and capabilities of an intraoral scanner. In its preliminary infringement contentions, plaintiff has asserted 183 claims against ClearCorrect. There is no practical way that ClearCorrect could assert even close to that many claims at trial and, yet, Align has taken the position that it need not even discuss narrowing the claims until July 25, 2025, ***after*** its proposed deadline for serving

final infringement contentions. As a result, Align is unduly burdening ClearCorrect with preparing invalidity contentions on (likely) dozens of claims that will later be withdrawn. This is unnecessarily wasteful, and does not serve any aspect of the case, or any party (other than perhaps plaintiff, by imposing unnecessary cost on the defendant).

*Second*, the sequencing proposed by ClearCorrect is logical: it allows Align to identify its theories of infringement and its asserted claims before ClearCorrect identifies responsive prior art to such theories and claims. By contrast, under Align's proposal, Align could substantially change its infringement theories or otherwise withdraw or drop asserted claims in its final infringement contentions (Align provides no assurances that it won't), while simultaneously depriving ClearCorrect of the opportunity to forgo invalidity contentions for withdrawn claims or to adjust its invalidity arguments to account for those updated theories of infringement as to 183 claims. ClearCorrect would, in turn, be forced to seek the Court's leave to amend its contentions in view of such changes, injecting inefficiency and delay into an otherwise orderly fact discovery schedule. While Align argues that ClearCorrect's invalidity theories should not change in response to Align dropping claims or accused products, basic patent practice says otherwise. Courts widely acknowledge that amending invalidity contentions "***in response to***" amended infringement contentions is justified and proper. *Synchronoss Techs., Inc. v. Dropbox Inc*., 2018 WL 5619743, at *6 (N.D. Cal. Oct. 29, 2018) ("It is generally permissible for a party to amend its invalidity contentions in response to the patentee amending its infringement contentions.") (quoting *Advanced Micro Devices, Inc. v. LG Elecs., Inc*., 2017 WL 2774339, at *6 (N.D. Cal. June 26, 2017).

ClearCorrect's proposal—in which the Defendants serve final invalidity contentions 4 weeks after Align's final infringement contentions are served—would significantly streamline

the issues for the parties and the Court. *See, e.g.*, *ACQIS LLC v. ASUSTeK Computer Inc.*, No. 6:20-cv-00966-ADA, ECF No. 146 at 2 (staggering contentions deadlines and setting deadline for final invalidity contentions four weeks after infringement contentions).[5]

*Claim Narrowing.* As noted above, Align's preliminary infringement contentions accuse 3 sets of products of infringing 183 claims across 9 patents. For five of the patents—relating to treatment planning techniques and scanner technology—Align asserts every single claim. To avoid needlessly litigating large numbers of claims that will never be tried, ClearCorrect respectfully requests that the Court order Align to narrow its asserted claims before and after *Markman*, as it did in *ParkerVision* which, as noted below, also involved 9 patents. Such an order would accomplish three things:

*First*, it would avoid burdening the Court with disputes over claim terms that will have no impact on the ultimate trial in this case. Indeed, the burden on the Court at *Markman*, in a case involving 183 asserted claims, would be enormous. To preemptively manage the Court's resources, Judge Albright's OGP limits the maximum number of claim terms that parties can request to 12 terms for a case involving more than 5 patents like this one. OGP at 7. As the Court knows, without limits such as these, plaintiffs tend to request that the Court construe an outrageous and untenable number of claim terms at *Markman*. But 12 terms would not come close to resolving the number of disputes arising from 183 asserted claims. Without a preliminary narrowing of asserted claims, the Court would be forced to adjudicate the meaning of numerous terms at (or after) *Markman* and in discovery disputes and during dispositive

---

[5] Align presents the claim narrowing in ACQIS as ***resulting*** from defendants revealing new products in that case, but while this Court did order staggered amended infringement and invalidity contentions ***after*** the initial scheduling order, it did so "in light of recent Federal Circuit guidance and this Court's revised claim constructions"—***not*** because of any new products introduced to the case.

motion practice that Align will drop before trial. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."). By refusing to agree to the periodic narrowing ClearCorrect proposes, Align unnecessarily burdens the Court and seeks to expend its finite time and resources.

ClearCorrect's proposal is consistent with this Court's past orders in similar cases. For example, in *ParkerVision, Inc. v. Intel Corp.* (also involving nine asserted patents), this Court ordered the plaintiff to narrow its assertions to 50 claims in its ***initial*** infringement contentions and then to "no more than 4 claims per patent" "***after*** *Markman*." *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-00108-ADA, ECF No. 27 at 6:7-13; 12:22-24 (W.D. Tex. June 29, 2020) (plaintiff's counsel stating "***[f]rom the Court's prior guidance***, we went through the potential claims. We reduced it to 50 . . . We'll have those [initial infringement contentions] served today."). During the initial scheduling conference in that case, plaintiff argued that requiring claim narrowing was "premature" and that narrowing prior to the end of discovery was inappropriate because of infringement and damages related issues that plaintiff would need information on to determine "the most valuable claims to assert." *Id.* at 12:1-7. Nevertheless, the Court ordered plaintiff to further narrow its asserted claims after *Markman*. *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-00108-ADA, ECF No. 23 (W.D. Tex. June 26, 2020).

Other courts have done the same at early stages in the case—prior to infringement contentions and claim construction. *See, e.g., In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1309-14 (Fed. Cir. 2011) (initial limit of 40 claims per defendant-group before discovery and contentions, from original 1,975 claims); *see also Deere & Co. v. AGCO Corp.*, No. 1:18-cv-00827-CFC, ECF No. 72 at Ex. A (D. Del. Mar. 20, 2019) (Chief Judge

Connolly ordering patentee to narrow from 200 claims across 13 patents to 39 claims in the preliminary infringement contentions, 20 claims prior to *Markman*, and 18 claims post-*Markman*); *Oasis Research, LLC v. Adrive, LLC*, 2011 WL 7272473, at *2 (E.D. Tex. Sept. 13, 2011) (requiring plaintiff to reduce number of asserted claims from 121 to 31 claims before *Markman*); *X2Y Attenuators, LLC v. Intel Corp.*, No. 18-cv-1394, ECF No. 138 (D. Or. Feb. 14, 2019) (requiring plaintiff to reduce number of asserted claims from 382 to 30 claims in its infringement contentions).

*Second*, proceeding with a large number of claims now only to drop the vast majority of claims before any trial would effectively conceal from ClearCorrect the identity of the actual claims that Align intends to pursue, thus impairing ClearCorrect's ability to prepare its cases and defenses. Align should not be allowed to effectively hide the ball by proceeding through fact and expert discovery asserting many times the number of claims that it intends to pursue at trial. *See Crane Co. v. Sandenvendo Am., Inc.*, No. 2:07-cv-00042, ECF No. 66 at 1 (E.D. Tex. Aug. 15, 2008) ("The practice of asserting an unreasonably large number of patent claims serves to obfuscate the more material issues in the case.")

*Third*, Align will suffer no prejudice by having to make an initial selection of claims before *Markman* and a second selection at the time of serving final infringement contentions. Indeed, ClearCorrect proposes that Align be ordered to narrow its assertions to 75 claims by October 17, 2024, and again narrow to 40 by March 30, 2025. The first selection is 3 weeks *after* ClearCorrect serves its initial invalidity contentions and makes its core technical production, and the second selection is post-*Markman* and at the time of final infringement contentions. Many of the patents asserted here are related and there is significant duplication

among the patent claims, making it easier for Align to reduce the overall number of claims including, at least, eliminating the largely duplicative ones.

During the 26(f) conference, ClearCorrect made clear that it was open to suggestions from Align to narrow its claims in any way pre-*Markman* and before the parties exchange final contentions. Align refused. ClearCorrect also made clear that it was amenable to similarly imposing limitations on the number of prior art references it could assert. Align, again, refused to engage ClearCorrect in any meaningful discussion during the 26(f) conference. No patent plaintiff has an inherent right to assert an unmanageable number of claims until the brink of trial. *Katz*, 639 F.3d at 1309-14. For that reason, we ask for the Court's guidance on this issue.

### C. FRCP 26(f)(3)(C)

*Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.*

The parties anticipate that discovery may include the production of electronically stored information. Per the Court's Standing Order Governing Proceedings (OGP) 4.4—Patent Cases, the parties will try to negotiate any ESI searching amongst themselves before contacting the Court for assistance.

### D. FRCP 26(f)(3)(D)

*Any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.*

The parties agree that, subject to agreed upon limitations, each party will serve a privilege log for any documents or communications withheld or redacted on the grounds of attorney-client privilege or work product immunity that includes the following information for each item or category of documents: production number(s); date; author; recipient(s); carbon copy

recipient(s); description sufficient to identify the contents of the withheld or redacted document; and basis for withholding.

At this time, the parties agree that a party need not identify on its privilege log information or documents withheld from production on grounds of the attorney-client privilege and/or work product immunity created after April 10, 2024, unless any such documents relate to an advice of counsel defense that either party may rely upon in this action. The parties may discuss other potential limitations on their respective privilege log obligations to limit unnecessary burden, and may present those issues to the Court at a later date.

The parties agree that if documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party. The parties intend to discuss specific procedures relating to such "claw backs" and will present those to the Court at a later date as well.

The parties intend to request that the Court memorialize these agreements in an order.

### E.    FRCP 26(f)(3)(E)

*What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed.*

Given the volume of claims, defenses, and counterclaims at issue in this lawsuit, the parties propose adjusting the Court's general discovery limitations outlined in the Court's Standing Order Governing Proceedings (OGP) 4.4—Patent Cases as follows:

- Interrogatories: 60 per side;

- Requests for Admission: 90 per side;

- Requests for Production: 150 per side;

- Fact Depositions: 140 hours per side (for both party and non-party witnesses combined); and

- Expert Depositions: 7 hours per report.

Standing Order Governing Proceedings (OGP) 4.4—Patent Cases at 3.

The parties also propose that no individual Rule 30(b) deponent may be deposed for more than seven (7) hours, absent agreement of the parties or an order of the Court upon a showing of good cause and that each Rule 30(b)(1) deposition will count for at least 3.5 hours toward the above limit of total fact deposition time. For deponents requiring the assistance of an English translator substantially throughout the deposition, only one-half (0.5) the length of the examination shall count towards the time limit; for example, a deposition requiring an English translator having six hours of examination time shall only count as a three-hour deposition under the time limit.

### F.    FRCP 26(f)(3)(F)

*Any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).*

The parties anticipate requesting that the Court issue a protective order to supersede the Court's interim protective order set forth in the Court's Standing Order Governing Proceedings (OGP) 4.4—Patent Cases. The parties will submit a proposed protective order for the Court's consideration.

### VI.    QUESTION 6

*What, if any, discovery has been completed? What discovery remains to be done? Have the parties considered conducting discovery in phases?*

The parties have not completed any discovery. The parties agree that discovery should be phased but disagree how:

**Align's Position.** For the reasons set forth in response to Question 5.A and 5.B, Align believes that fact discovery should begin on January 23, 2025 and close on August 21, 2025 and expert discovery should begin on August 28, 2025 and close on October 16, 2025.

After discovery opens, Align intends to request documents, discovery responses, and deposition transcripts from recent patent and contract cases relating to Align's patent claims in which ClearCorrect (or its sister companies) were parties. These cases include at least *Bay Materials LLC v. 3M Company*, No. 21-cv-01610 (D. Del.), which involved litigation over the nature of the plastics used to form ClearCorrect's aligners and *SoftSmile, Inc. v. Institut Straumann AG et al.*, No. 22-cv-01189 (D. Del.) and a related arbitration proceeding, which involved a dispute over how ClearCorrect developed of its accused treatment planning software.

Align understands from the parties' conference that ClearCorrect will serve a request for production for the materials that it identifies below after discovery opens. Align will respond to that request for production in due course. To the extent ClearCorrect requests immediate production of these materials at the scheduling conference or shortly thereafter, however, the Court should deny that request. Align has not yet received a document request, has not yet been able to evaluate the merits and scope of any such request, and should not have to pre-litigate a motion to compel that ClearCorrect has not yet filed. To the extent the parties later develop a discovery dispute, Align believes that the parties should follow the Court's ordinary procedures for resolving it. *See generally Goro v. Flowers Foods, Inc.*, No. 17-cv-02580, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019) ("[t]here could be a number of reasons why documents appropriately requested and provided in another case—even if the subject matter of those cases seem to overlap—would be irrelevant or burdensome to provide in another case").

**ClearCorrect's Position.** For the reasons set out in response to Question 5A., ClearCorrect proposes that written and document discovery on all non-patent claims should begin on August 8, 2024, with document production on non-patent claims substantially complete

by January 22, 2025.  Consistent with the Court's Standing Order Governing Proceedings (OGP) 4.4—Patent Cases, and as set out in Exhibit B to this report, remaining fact discovery on all patent claims and defenses, and all deposition discovery on all claims, should begin on January 23, 2025 and close on August 21, 2025 and expert discovery should begin on September 25, 2025 and close on December 4, 2025.

In addition to this phasing, ClearCorrect anticipates seeking third-party discovery, and also Align's documents, discovery responses and deposition transcripts from recent monopolization cases relating to the iTero and Invisalign in which Align was a defendant, including *3Shape Trios A/S v. Align Tech., Inc.*, Case No. 1:18-cv-1332 (D. Del.); *Simon & Simon, Pc v. Align Tech., Inc.*, Case No. 3:20-cv-3754 (N.D. Cal.); and *Snow v. Align Tech., Inc.*, Case No. 3:21-cv-3269 (N.D. Cal.).  While ClearCorrect's monopolization claims against Align here address a much more expansive scope of anticompetitive and exclusionary conduct, the discovery in those cases (which relates to Align's monopoly power and its sales practices in the same markets at issue here) is entirely and highly relevant.  *See, e.g.*, *Whitman v. State Farm Life Ins. Co.*, 2020 WL 5526684, *3 (W.D. Wash. Sept. 15, 2020) (requiring production where lawsuits were against the "same defendant" and were "almost identical"); *Hall v. Marriott Int'l, Inc.,* 2021 WL 1906464, *7-9 (S.D. Cal. May 12, 2021) (ordering production of prior case discovery due to "substantial overlap in the factual allegations").  Because that discovery has already been completed, the burden of reproduction here is minimal.

## VII.    QUESTION 7

*What, if any, discovery disputes exist?*

Apart from the timing of discovery, the parties do not currently have discovery disputes.

## VIII.   QUESTION 8

*Have the parties discussed the desirability of filing a proposed order pursuant to Federal Rule of Evidence 502?*

The parties have discussed the desirability of filing a proposed order pursuant to Federal Rule of Evidence 502.  As noted above, the parties intend to request that the Court memorialize

their agreements regarding privilege issues in an order.

## IX.    QUESTION 9

*Have the parties discussed mediation?*

The parties intend to mediate this dispute and are discussing suitable dates for meditation

in August and September.

Dated: July 22, 2024

Respectfully submitted,

*/s/ Brian C. Nash*
Brian C. Nash (TX Bar No. 24051103)
Austin M. Schnell (TX Bar No. 24095985)
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
Tel: (512) 617-0650
Fax: (737) 910-0730
BNash@mofo.com
ASchnell@mofo.com

Daralyn J. Durie (*pro hac vice*)
Rich S.J. Hung (*pro hac vice*)
Forrest McClellen (*pro hac vice*)
Ian Bennett (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market St.
San Francisco, CA 94105
Tel: (415) 268-7000
Fax: (415) 268-7522
DDurie@mofo.com
RHung@mofo.com
FMcclellen@mofo.com
IBennett@mofo.com

*Attorneys for Plaintiff and Counterclaim
Defendant Align Technology, Inc.*

*/s/ Omar A. Khan (by permission)*
Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM AND SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450
Fax: (903)934-9257

Joseph J. Mueller
Vinita Ferrera
Mark A. Ford
Marissa A. Lalli
Holly A. Ovington
Tyler L. Shearer
WILMER CUTLER PICKERING HALE AND
  DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
joseph.mueller@wilmerhale.com
vinita.ferrera@wilmerhale.com
mark.ford@wilmerhale.com
marissa.lalli@wilmerhale.com
holly.ovington@wilmerhale.com
tyler.shearer@wilmerhale.com

Omar A. Khan
WILMER CUTLER PICKERING HALE AND
  DORR LLP
250 Greenwich Street

New York, NY 10007
(212) 230-8800
omar.khan@wilmerhale.com

Gerard A. Salvatore
Robert B. Stiller
WILMER CUTLER PICKERING HALE AND
   DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000
jerry.salvatore@wilmerhale.com
robert.stiller@wilmerhale.com

Hannah Santasawatkul
Texas State Bar No. 24107617
WILMER CUTLER PICKERING HALE AND
   DORR LLP
1225 17th Street, Suite 2600
Denver, Colorado 80202
(720) 274-3135
hannah.santasawatkul@wilmerhale.com

***Attorneys for Defendants and
Counterclaim-Plaintiffs
ClearCorrect Operating, LLC
ClearCorrect Holdings, Inc.***

***Attorneys for Counterclaim-Plaintiff
Straumann USA, LLC***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on July 22, 2024.

*/s/ Brian C. Nash*
Brian C. Nash