███████████████████████████

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| ALIGN TECHNOLOGY, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CLEARCORRECT OPERATING, LLC,<br>CLEARCORRECT HOLDINGS, INC., &<br>INSTITUT STRAUMANN AG,<br><br>        Defendants.<br><br>CLEARCORRECT OPERATING, LLC,<br>CLEARCORRECT HOLDINGS, INC., &<br>INSTITUT STRAUMANN AG,<br><br>        Counterclaim-Plaintiffs,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>        Counterclaim-Defendant. | Case No. 6:24-cv-00187-ADA-DTG<br><br>**JURY TRIAL DEMANDED** |

**OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS UNDER FRCP 12(B)(6)**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................... 1

II.   BACKGROUND .................................................................... 2

III.  LEGAL STANDARD ............................................................. 3

IV.   ARGUMENT ........................................................................ 4

A.    ██████████████████████████████ ............................. 4

      1.    █████████████████████████. ........................... 4

      2.    ████████████████████████. ............................... 5

      3.    ██████████████████████████. .............. 6

      4.    Dismissal is not an appropriate remedy. ................. 10

B.    Align stated a claim for false advertising. ........................ 11

C.    Align stated claims for unfair competition and civil conspiracy. ....................... 13

D.    Align stated a claim for direct infringement of the treatment planning patents. ............................................................... 14

E.    The Court should reject defendant's Section 101 challenge. .............................. 15

      1.    The Court should defer ruling on patent eligibility. ................ 15

      2.    ClearCorrect fails to establish representative claims. ............... 17

      3.    ClearCorrect has not proven any challenged claim ineligible. ............... 17

V.    CONCLUSION ..................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1320/1390 Don Haskins, Ltd. v. Xerox Comm. Sols., LLC*,
  584 S.W.3d 53 (Tex. Ct. App. 2018) ......................................................................6

*3Shape A/S v. Medit Corp.*,
  No. 22-cv-00443-ADA-DTG, 2023 WL 3184619 (W.D. Tex. May 1, 2023).......................17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 ................................................................................... *passim*

*AML IP, LLC v. American Eagle Outfitters, Inc.*,
  No. 21-cv-00823-ADA, 2022 WL 11456095 (W.D. Tex. Oct. 19, 2022)..................16, 17, 20

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016).......................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................4

*AXA Ins. Co. v. Magneco/Metrel, Inc.*,
  No. 17-cv-00273-ADA, 2018 WL 5733171 (W.D. Tex. Oct. 1, 2018)...................................8

*Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*,
  896 S.W.2d 352 (Tex. Ct. App. 1995) ..............................................................9

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018).......................................................................16

*Brosnan v. Dry Cleaning Station, Inc.*
  No. 08-cv-02028, 2008 WL 2388392 (N.D. Cal. June 6, 2008)........................................5, 10

*Centaur Corp. v. ON Semiconductor Components Indus., LLC*,
  No. 09-cv-02041, 2010 WL 444715 (S.D. Cal. Feb. 2, 2010)..................................9

*ClearCorrect Operating LLC v. Align, Inc.*,
  IPR2017-01829, Paper No. 10 (P.T.A.B. Feb. 5, 2018) ...............................................16

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ..........................................................................4

*Crystaphase Prod., Inc. v. Criterion Catalysts & Techs, LP*,
  No. 3:17-cv-00265, 2018 WL 4266237 (S.D. Tex. Aug. 20, 2018) .................................12, 13

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) .................................................................... 18

*Dominion Transmission, Inc. v. Precision Pipeline, Inc.*,
2013 WL 5962393 (E.D. Va. Nov. 6, 2013) ................................................. 9

*Fluor Enterprises, Inc. v. Solutia Inc.*,
147 F.Supp.2d 648 (S.D. Tex. 2001) ............................................................ 10

*Franke v. Yates*,
No. 19-cv-00007, 2019 WL 4856002 (D. Haw. Oct. 1, 2019) .................... 8

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
No. 14-cv-00941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015) ............... 12, 13

*Hohenberg Bros. Co. v. George E. Gibbons & Co.*,
537 S.W.2d 1 (Tex. 1976) .............................................................................. 9

*Hudson v. Wakefield*,
645 S.W.2d 427 (Tex. 1983) .......................................................................... 9

*Ins. Distributors Int'l (Bermuda) LTD. v. Edgewater Consulting Grp. LTD.*,
No. A-08-CA-767-AWA, 2010 WL 3522312 (W.D. Tex. Sept. 8, 2010) .... 6

*International IP Holdings Co., LLC v. Vitamin Energy, Inc.*,
No. 19-cv-11716, 2023 WL 6466560 (E.D. Mich., Oct. 4, 2023) ............... 13

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
890 F.3d 995 (Fed. Cir. 2018) ....................................................................... 4, 12, 15

*McRO, Inc. v. Bandai Namco Games Amer. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ..................................................................... 18-20

*Microsoft Corp. v. I4I Ltd. Partnership*,
564 U.S. 91 (2011) ......................................................................................... 17

*Pizza Hut, Inc. v. Papa John's Intern., Inc.*,
227 F.3d 489 (5th Cir. 2000) ......................................................................... 13

*RecogniCorp., LLC v. Nintendo Co. Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017) ..................................................................... 20

*River Cap. Advisors of N. Carolina, Inc. v. FCS Advisors, Inc.*,
No. 4:10-CV-471, 2011 WL 831282 (E.D. Tex. Feb. 7, 2011) ................... 5

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Scanlan v. Texas A&M Univ.*,
    343 F.3d 533 (5th Cir. 2003) ................................................................................4, 5

*Slyce Acquisition Inc. v. Syte – Visual Conception Ltd.*,
    No. 19-cv-00257-ADA, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020) ...................................17

*Spain as Trustees of Linda & Barry Spain Tr. v. Phoenix Elec., Inc.*,
    No. 22-cv-00656, 2024 WL 971661 (Tex. App. Mar. 7, 2024)...............................................10

*Spectrum Gulf Coast LLC v. City Public Service of San Antonio*,
    No. 22-cv-00094-DAE, 2022 WL 22328992 (W.D. Tex., July 18, 2022) .................5, 7, 9, 10

*Stamps v. Univ. of Texas At Austin*,
    No. 1:20-CV-01204-LY-SH, 2022 WL 526169 (W.D. Tex. Feb. 22, 2022) ...........................4

*Trient Part. I Ltd. v. Blockbuster Entertain*,
    83 F.3d 704 (5th Cir. 1996) ................................................................................... 5-6

*Wysong Corp. v. APN, Inc. (17-1975)*,
    889 F.3d 267 (6th Cir. 2018) .................................................................................13

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) ................................................................................19

**Note on Emphasis**: All emphasis is added and all citations and quotation marks are omitted in this brief unless otherwise stated.

## I.  INTRODUCTION

ClearCorrect[1] asks the Court ████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

ClearCorrect's contention that Align's false advertising claim is implausible also fails.
ClearCorrect argues that misleading ads showing aligners stained under abnormal conditions get
a free pass because it describes the abnormal conditions used to stained them.  But if ClearCorrect
had not intended to mislead consumers into believing those pictures reflect normal use, why
would they have published them?  The only plausible inference is that the ads deceive consumers
and thereby drive them from Align to ClearCorrect.

ClearCorrect's arguments for direct infringement fare no better.  ClearCorrect asserts that
a human, rather than a computer, performs certain steps of asserted claims.  That is false.
Align's infringement theory is that ClearCorrect practices the claims because its technicians
perform the claimed steps by running ClearCorrect's software.

Last, the Court should reject ClearCorrect's Section 101 arguments.  Align's inventions
are eligible for patent protection because they claim advancements over prior treatment planning
and intraoral scanning techniques.  Further, as this Court has repeatedly held, Section 101

---

[1] Collectively, ClearCorrect Operating LLC and ClearCorrect Holdings, Inc. Institut Straumann AG also conditionally joined ClearCorrect's 12(b)(6) motion to dismiss.  Align's arguments herein as to ClearCorrect apply equally against Institut Straumann AG.

challenges are premature at this stage.  The Court should deny ClearCorrect's motion to dismiss.

## II.     BACKGROUND

**The Parties.**  Plaintiff Align invented and sells Invisalign® aligners as part of its Invisalign® system for straightening teeth.  ECF No. 1 ("Compl."), ¶ 1.  Defendant ClearCorrect also sells aligners, but it does so using Align's patented technology.  *Id.*, ¶¶ 2-6, 17-18, 21-24, 26, 35.  In 2019, ClearCorrect's parent corporation bought Align's former plastics supplier, Bay Materials LLC.  *Id.*, ¶ 4.  The next year, ClearCorrect began making its aligners from a three-layer plastic, just like Align.  *Id.*, ¶ 18.  That same year, ClearCorrect or a related entity hired a senior Align software engineer and began offering more advanced treatment planning services just like Align's.  *Id.*, ¶ 5.  ClearCorrect's advertising also focuses on Align's competing aligners: ClearCorrect promotes its aligners as aesthetically superior to Align's.  *Id.*, ¶¶ 33-37.

Defendant Institut Straumann AG ("Institut") is part of the same corporate family (the "Straumann Group") as ClearCorrect.  *Id.*, ¶ 72.  Although not ClearCorrect's direct parent, Institut manages the entire Straumann Group.  *Id.*, ¶ 72.  Today, it controls ClearCorrect's old website domain, advertises accused products on ClearCorrect's behalf, hires ClearCorrect employees, helps doctors access ClearCorrect's software, and much more.  *E.g.*, *id.*, ¶¶ 72-74.

███████████████  In 2011, Align sued ClearCorrect for patent infringement.  *Id.*, ¶ 2. The litigation, which included a court finding ClearCorrect infringed at summary judgment, ended in 2019 when ClearCorrect agreed to pay Align a multimillion-dollar settlement.  *Id.* █



**The Present Action.** After the settlement, Align moved forward with its award-winning business, but ClearCorrect's misconduct did not end. Compl., ¶¶ 60-251. Today ClearCorrect[2] advertises, manufactures, and sells (at Institut's inducement) three-layer aligners that directly infringe at least four Align patents. *Id.*, ¶¶ 68-152. It advertises and performs advanced treatment planning methods (again at Institut's inducement) that directly infringe four more Align patents. *Id.*, ¶¶ 153-230. And, along with Institut, it induces doctors to use an intraoral scanner system that directly infringes another Align patent. *Id.*, ¶¶ 231-251. Both ClearCorrect and Institut also unfairly compete with Align by falsely advertising that ClearCorrect's aligners are aesthetically superior to Align's. *Id.*, ¶¶ 60-67.

## III. LEGAL STANDARD

"[I]n the procedural posture of a motion to dismiss, a district court must accept

---

[2] According to ClearCorrect, counterclaim Plaintiff Straumann USA, LLC "markets and sells ClearCorrect® aligners to doctors throughout the United States." ECF No. 49, ¶ 27.

[3] Citations to "Ex. __" refer to exhibits to the declaration of Forrest McClellen, which is filed concurrently with this brief.

the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018). Thus, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

**A.**    █████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

**1.**    ████████████████████████████████

As ClearCorrect's own authority makes clear, "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). ClearCorrect points to a "limited exception" to this rule that a court may consider "documents that [1] are referred to in the plaintiff's complaint and [2] are central to the plaintiff's claim." *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); Br. at 3, n.3. But that exception truly is limited: a document is "central" only if it is "necessary to establish an element of one of the plaintiff's claims." *Stamps v. Univ. of Texas At Austin*, No. 1:20-CV-01204-LY-SH, 2022 WL 526169, at *5 (W.D. Tex. Feb. 22, 2022).

█████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████    For personal jurisdiction, Align pled that Institut hires

employees for ClearCorrect in Texas, maintains an interactive website that redirects doctors to Texas-based ClearCorrect's website, controls ClearCorrect's infringing activities in Texas, and much more. *E.g.*, Compl. ¶¶ 57, 73, 75, 77. For willfulness, Align pled that an Institut employee had conceded knowledge of Align's "extensive patent portfolio," that Institut had hired Align employees who knew of Align's patents, and that ClearCorrect had filed an IPR petition against one of Align's treatment planning patents *before* Align asserted it, among other allegations. *E.g.*, *id.* ¶¶ 76-77, 235. Where, as here, a "plaintiff[] rel[ies] on substantial, other evidence to support their claims" a document is not "central." *Scanlan*, 343 F.3d at 537.

███████████████████████████████████████████████

████ A "plaintiff is under no obligation to plead against a possible affirmative defense or the possible exceptions to an affirmative defense," *River Cap. Advisors of N. Carolina, Inc. v. FCS Advisors, Inc.*, No. 4:10-CV-471, 2011 WL 831282, at *9 (E.D. Tex. Feb. 7, 2011).

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████ The same cannot be said for any of Align's false advertising, unfair competition, conspiracy, and patent infringement claims.

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████ The Court should "not grant a Rule 12(b)(6) motion on an affirmative defense that does not appear on the face of the complaint." *River Cap.*, 2011 WL 831282, at *9.

**2.** ████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████



**3.**

**a.** 

As ClearCorrect's own authority explains, "Texas courts disfavor conditions precedent and will avoid construing a contract to include a condition precedent when another reasonable reading of the contract is possible." *Spectrum*, 2022 WL 22328992, at *3.

---

[4]



███████ █████████████████████████████████████████████████████

ClearCorrect's laundry list of cases are also unavailing.  Br. at 4-6.  ████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

**b.**  ████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

---

[5] ████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████████████████████████████████████████



#### 4. Dismissal is not an appropriate remedy.

ClearCorrect has not shown that dismissal is even an appropriate remedy. ClearCorrect argues that *Spectrum* supports dismissal, but that case was stayed, not dismissed. Br. at 3 n.4. 2022 WL 22328992, at *4. Its reliance on *Brosnan v. Dry Cleaning Inc.*, is also misplaced; the Northern District of California dismissed that case pursuant to a *California* state law that is not applicable here. No. 08-cv-02028, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008).

ClearCorrect's subsequent counterclaims have also revealed the disingenuity of its

dismissal request.  ECF No. 49. ████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████

**B.      Align stated a claim for false advertising.**

ClearCorrect argues Align did not plausibly allege a misleading statement, consumer deception, and materiality.  But Align sufficiently pled each element.

**a.      Align sufficiently pled a misleading statement.**

Align pled that Defendants' ads showing stained Align aligners alongside unstained ClearCorrect aligners mislead consumers.  Compl. ¶¶ 33-37, 60-63.  For example:



Compl., ¶ 35; *see also* ECF No. 32-2 at 5 (Institut ad); ECF No. 32-3 at 16 (ClearCorrect ad).

As the Complaint explains, Defendants' ads imply that "Align's aligners are aesthetically inferior" to ClearCorrect's, which is not true.  Compl., ¶ 36.  ClearCorrect stained Align's aligners by submersing them in mustard and coffee for 24 hours at 37°C.  *Id.*  But Align's instructions for use tell consumers to remove their aligners while eating and drinking.  *Id.* Contrary to Defendants' ads, Invisalign aligners do not stain during everyday use.  *Id.*

ClearCorrect fails to show these allegations are implausible.  In ClearCorrect's telling, the ads cannot mislead because, in minute text, they state how ClearCorrect stained the aligners.

Br. at 8. That misses the point: regardless of whether the ads have disclaimers, they falsely imply that Align's aligners stain during everyday use. *See* ECF Nos. 32-2 at 5 ("ClearCorrect aligners have been proven to be more stain-resistant than the leading aligner brand"); 32-3 at 15 ("ClearCorrect [aligners were] demonstrated to be more stain resistant"). Nor, at this stage, are disclaimers enough to defeat a false advertising claim. *See Crystaphase Prod., Inc. v. Criterion Catalysts & Techs, LP*, No. 3:17-cv-00265, 2018 WL 4266237, at *9 (S.D. Tex. Aug. 20, 2018) (declining to dismiss false advertising claim based on misleading image but true text). Finally, ClearCorrect's argument that the ads are aimed at doctors is also a factual dispute that, at this stage, the Court should resolve in Align's favor. *See M-I Drilling*, 890 F.3d at 999. Any person can navigate to the ads online; they are not behind a wall. Fed. R. Evid. 201.

ClearCorrect's reliance on implausible allegations in *Greater Houston Transp. Co. v. Uber Techs., Inc.*, is misplaced. *See* Br. at 9 (citing No. 14-cv-00941, 2015 WL 1034254, *12 (S.D. Tex. Mar. 10, 2015). There, the court dismissed as implausible an allegation that, because a dictionary defined "ridesharing" as uncompensated, consumers would believe that Uber's ridesharing services were free. 2015 WL 1034254, at *12. Here, it is more than plausible that, because Defendants present their ads as experimental results and call ClearCorrect aligners "more stain-resistant" than Align's, consumers would believe that Align's aligners stain during normal use. ECF No. 32-2 at 5; *see also* ECF No. 32-3 at 16. As in *Crystaphase*, Align sufficiently pled that ClearCorrect published a misleading statement. 2018 WL 4266237, at *9.

### b. Align sufficiently pled deception.

ClearCorrect contends that Align failed to adequately support its allegation of deception, but the proof is in Defendants' pictures. Br. at 9. ClearCorrect does not dispute that Defendants' ads do not show how Align's aligners look during normal use. *Compare* Compl., ¶ 36 *with* Br. at 10. And if the ads did not influence consumers, why would Defendants advertise them? The most plausible explanation is that, as Align pled, Defendants' ads drive consumers to ClearCorrect *by deceiving consumers* about whether Align's aligners stain. *See* Compl., ¶¶ 33-37, 61. Indeed, ClearCorrect pled the deception element of its own false advertising claim using

language nearly identically to Align's. *Compare id.*, ¶ 37 *with* ECF No. 49, ¶ 200.

ClearCorrect's cases are not to the contrary. As *International IP Holdings, LLC v. Vitamin Energy, Inc.* explained, "[w]hether an advertisement is *deceptive* is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss." No. 19-cv-11716, 2023 WL 6466560, at *5 (E.D. Mich., Oct. 4, 2023). *Vitamin Energy* found that "Back to 100% Energy" and "5-HOUR ENERGY" ads *could* deceive "a reasonable consumer." *Id.* at *5-6 (dismissing on causation, not deception). *Greater Houston* did not even reach the "deception" prong. 2015 WL 1034254, at *12. And *Wysong Corp. v. APN, Inc. (17-1975)* dealt with a "puffery defense" that ClearCorrect has not raised. 889 F.3d 267, 271-72 (6th Cir. 2018); *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 496 (5th Cir. 2000) (puffery is "non-actionable").

### c.     Align sufficiently pled materiality.

ClearCorrect takes the same tact with materiality as deception: it concedes Align pled materiality but calls Align's allegations implausible. Br. at 10 (quoting Compl., ¶ 61). At base, ClearCorrect's argument is that because its ads misrepresent how Align's aligners usually look, they could not influence consumer behavior. *Id.* Again, that makes no sense: Defendants would not post the ads unless they drove consumers from Align to ClearCorrect. As Align explained in the Complaint, customers care whether their teeth will appear stained and the ads therefore "encourage[] them to select ClearCorrect's aligners instead, to Align's detriment." Compl., ¶¶ 36, 61. And, again, ClearCorrect framed the materiality element of its own false advertising claims using language just like Align's. *Compare* Compl., ¶ 37 *with* ECF No. 49, ¶ 200. As in *Crystaphase*, which involved similar allegations, Align sufficiently pled materiality. 2018 WL 4266237, at *10 (denying motion to dismiss where a complaint alleged that statements were misleading because the statements were "likely to influence a customer's purchasing decision").

### C.     Align stated claims for unfair competition and civil conspiracy.

ClearCorrect's sole challenge to the unfair competition and civil conspiracy claims is that they derive from Align's false advertising claim. Br. At 10-11. Because Align adequately pled

false advertising, the Court also should deny ClearCorrect's motion to dismiss these claims.

### D. Align stated a claim for direct infringement of the treatment planning patents.

ClearCorrect does not dispute that Align pled ClearCorrect's software "determine[s] … an order of movement … such that dental objects would avoid colliding with or obstructing each other." Br. 11-13. Nor could it. Compl., ¶ 172; *see also id.*, ¶¶ 171, 190-91, 209, 227-30. Instead, ClearCorrect argues that, at this early stage, Align's allegation that ClearCorrect's software performs that function is implausible. Br. at 11.

The Complaint more than clears this low bar. First, as Align alleged, ClearCorrect tried to cancel the '444 patent *before* Align ever asserted it. Compl., ¶¶ 158, 178, 197, 215. Drawing all reasonable inferences in Align's favor, that fact is independently sufficient to support Align's allegation that ClearCorrect has long infringed—and known that it infringes—the '444 patent.[7] *Id.* ClearCorrect never addresses this allegation in its briefing.

Align also pled many other facts that provide a plausible basis for concluding that ClearCorrect's software performs the limitation. Align pled that ClearCorrect told the FDA that ClearCorrect's software was "functionally equivalent to" Align's, which has the claimed features. *Id.*, ¶¶ 171-72, 190-91, 209, 227-29. Align also pled that ClearCorrect told the FDA that its technicians only modify the software's output "as necessary," meaning human intervention is optional. ECF 1-12 at 9; *see* Compl., ¶¶ 171, 189, 206, 208, 224-225. For round-tripping, Align pled "ClearCorrect advertises that its technicians will, by default, treatment plan … using 'anterior round tripping as needed." Compl., ¶¶ 172, 191, 209. And for staggering, Align pled ClearCorrect published a YouTube video showing its treatment plans used that technique. *Id.*, ¶¶ 172, 209, 227. Accepted as true, these allegations lead to one plausible conclusion: ClearCorrect's software performs the disputed collision-avoidance limitations.

ClearCorrect has no good response. It starts by arguing that its software could not

---

[7] ClearCorrect also asks for dismissal on the other treatment planning patents but, apart from one footnoted sentence, it offers no unique arguments about them. Br. at 12, n.11, 13-14.

practice the claimed methods because Align alleged that the technicians do so. Br., 11-12. But ClearCorrect has it backwards: the technicians practice the claimed methods *by running ClearCorrect's software*. *See* Compl. ¶¶ 171-72, 190-91, 209, 227-30; ECF No. 1-12, 9. Also false is ClearCorrect's claim that Align "ignore[ed] the claims which require that the software *perform* collision avoidance." Br., 12-13, n. 11 (original emphasis). Align pled that ClearCorrect's software does exactly that. *E.g.*, Compl. ¶¶ 191, 209. 227, 229-30. And Align's observation that ClearCorrect's software *must* avoid collisions because otherwise it could not plot treatment plans is sound logic. Compl., ¶¶ 190, 226. How else could ClearCorrect's software plot treatment plans without human intervention, as ClearCorrect told the FDA its software can do? ECF No. 1-12, 9 ("as necessary").

The rest of ClearCorrect's arguments fail because they merely dispute facts. ClearCorrect argues that its FDA submission "provides that the technician refines the intermediate states *manually*." Br. at 12 (original emphasis). Again, that submission indicates human intervention is optional. ECF No. 1-12, 9 ("as necessary"). ClearCorrect argues that its software's "functional equivalence" to Align's does not show how its software works, but ClearCorrect never explains why that admission does not support the inference that its software practices Align's claims. *Compare* Br. at 12 *with* Compl., ¶¶ 171-72, 190-91, 209, 227-29. And the fact that a YouTube video depicts a technician's comments that "I aligned the upper and lower arches" and "I put IPR in the lower arch" in no way refutes that the technician used ClearCorrect's software to create the treatment plan. Br. at 13. To rule in ClearCorrect's favor, the Court would have to draw factual inferences against Align, which the Court cannot do. *M-I Drilling*, 890 F.3d at 999. The Court should not dismiss Align's direct infringement claims.

### E. The Court should reject defendant's Section 101 challenge.

ClearCorrect's section 101 challenge fails because (1) it is premature; (2) it does not address most claims; and (3) on the merits, neither step of the *Alice* inquiry favors ineligibility.

#### 1. The Court should defer ruling on patent eligibility.

As this Court has explained, "a Rule 12(b) motion to dismiss is a procedurally awkward

place for a court [to] resolve a patent's 101 eligibility." *AML IP, LLC v. American Eagle Outfitters, Inc.*, No. 6:21-cv-00823-ADA, 2022 WL 11456095, at *4 (W.D. Tex. Oct. 19, 2022). The Federal Circuit requires both clear and convincing evidence of invalidity and that courts draw "all reasonable inferences in the [patentee's] favor," meaning the movant "needs to overcome both a factual deck stacked against it and a heightened burden of proof." *Id.* Claim construction poses another hurdle: "because claim construction can affect—and in most cases, will affect—a court's § 101 eligibility analysis … it is generally wiser and more efficient to wait to determine a patent's § 101 eligibility …." *Id.*, at *5. The same is true of fact discovery, which is "almost certainly require[d]" for a Section 101 determination. *Id.* And the difficulty of applying Section 101 precedent weighs against an early invalidity determination, too. *Id.*

These considerations warrant denial here. Take claim construction as an example. ClearCorrect argues that the treatment planning patents' "specification nowhere … suggests that 'staggering' and 'round-tripping' determined by automation differ in any way from how those movements were previously implemented manually." Br. at 16. But the specification expressly defines both "staggering" and "round-tripping." ECF 1-5 at 12:44-55. Moreover, as ClearCorrect well knows, those concepts were novel. *See ClearCorrect Operating LLC v. Align, Inc.*, IPR2017-01829, Paper No. 10 at 11-17 (P.T.A.B. Feb. 5, 2018) (denying ClearCorrect's petition for *inter partes* review of the '444 patent because "round-tripping" and "staggering" were not obvious). This dispute—what the claims mean and whether they cover something new—goes to the heart of the Section 101 inquiry. *AML*, 2022 WL 11456095, at *4. And the parties have not even exchanged preliminary contentions; other construction disputes are likely.

Questions of fact also weigh against deciding this issue now. Whether the challenged claims disclose an inventive concept (*Alice* Step Two) is a question of fact. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018). Yet ClearCorrect offers this Court little to go on. Its *Alice* Step Two briefing totals two paragraphs with no citation to expert testimony or technical documents. Br. at 17, 20. Align, meanwhile, pled that its treatment planning patents are the result of "years of research and development" and cover "critical advancements" that provide

"major benefits." Compl., ¶ 20. And it pled that its intraoral scanning technology is "faster and more accurate than the conventional method of a doctor casting a patient's teeth" and is "more flexible." *Id.*, ¶ 25. The Court should, at a minimum, allow Align time to develop factual support for those assertions through fact and expert discovery before invalidating its patents.

This Court has explained that it "prefers to conduct a § 101 invalidity analysis on a full record." *3Shape A/S v. Medit Corp.*, No. 22-cv-00443-ADA-DTG, 2023 WL 3184619, at *2 (W.D. Tex. May 1, 2023). As in other cases, the Court should defer ruling on Section 101.

### 2. ClearCorrect fails to establish representative claims.

To prevail on a Section 101 challenge "a defendant must provide clear and convincing evidence that *each* of the asserted dependent claims does not provide an inventive concept." *Slyce Acquisition Inc. v. Syte – Visual Conception Ltd.*, No. 19-cv-00257-ADA, 2020 WL 278481, at *6 (W.D. Tex. Jan. 10, 2020). The same goes for independent claims. *AML*, 2022 WL 11456095, at *8 (ordering defendant "brief the patent ineligibility of *each* asserted claim").

ClearCorrect fails to analyze each claim. Instead, it recites one claim of a treatment planning patent and one claim of a scanner patent, contends in conclusory fashion that each are representative, and other than a few lines in footnote, fails to otherwise address the limitations of any other claim. Br. at 14-20. Those claims are not representative of the other claims in the asserted patents. For example, claim 8 of the '217 treatment planning patent requires producing physical aligners whereas that patent's claim 1 does not. ECF No. 1-6 (claims 1, 8). Likewise, claim 2 of the scanner patent requires specialized optics whereas that patent's claim 1 does not. ECF No. 1-9 (claims 1, 2). Thus, ClearCorrect has far from met its burden to establish representative claims, let alone establish that any claim is invalid.

### 3. ClearCorrect has not proven any challenged claim ineligible.

Under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, a patent claim is invalid if it (1) is directed "to a patent-ineligible concept" and (2) does not recite an "inventive concept." 573 U.S. 208, 217-18 (2014). Patents are presumed valid, however, and ineligibility must be proven by clear and convincing evidence. *Microsoft Corp. v. I4I Ltd. Partnership*, 564 U.S. 91, 101-103 (2011).

*Alice* **Step One.**  *Alice* Step One asks whether a patent claim "focus[es] on a specific means or method that improves the relevant technology or [is] instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Amer. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).  Claim 1 of the '444 Patent fits squarely into the former camp.  It recites a method of "staging the movement of a plurality of dental objects" including a "determining" step:

> determining, by the host computer, an order of movement for each respective dental object such that the dental objects avoid colliding with or obstructing each other on their respective routes from said initial position to said desired final position through at least one of staggering and round-tripping of at least one dental object.

ECF No. 1-5 (claim 1).  That method improved on prior automation solutions by reducing "the time and resources needed to stage the movement of teeth," *id.* at 1:67-2:2, including by requiring specialized kinds of "round-tripping" and "staggering," *id.* at 12:44-55.

The Federal Circuit has confirmed that similar claims satisfy *Alice* Step One.  In *McRO*, for example, it held that claims directed to "a specific asserted improvement in computer animation, i.e., the automatic use of rules of a particular type" were directed to eligible subject matter.  837 F.3d at 1314.  Claim 1 of the '444 patent is the same: it uses "staggering" and "round-tripping" rules, ECF No. 1-5, 12:44-55, to "achieve an improved technological result in conventional industry practice," *McRO*, 837 F.3d at 1316.  Like the claims at issue in *McRO*, Align's challenged claims are "not directed to an abstract idea." *Id.*

ClearCorrect, meanwhile, has not carried its burden to show otherwise.  Relying on *CyberSource Corp. v. Retail Decisions, Inc.*, ClearCorrect argues the challenged claims fail *Alice* Step One because a human could perform the claimed method by hand.  Br. at 15-17.  But no evidence supports that contention.  ClearCorrect never ties its quotes from the specification to the claimed method. *Id.* at 16-17.  And its argument that Align conceded technicians manually

treatment plan fares no better here than before. *Supra* § IV.D. The court in *McRO* rejected the same argument for lack of evidence—there, the defendant failed to show that human animators would have used certain rules relating to "sub-sequences" and "transition parameters." 837 F.3d at 1314. Here too, ClearCorrect offers no evidence that human treatment planners performed collision avoidance via the exact round-tripping and staggering methods claimed. Finally, ClearCorrect's only other argument—a footnoted citation to *Apple, Inc. v. Ameranth, Inc.*—also fails because the challenged claims here are directed to an improved process, not its result. *See* 842 F.3d 1229, 1241 (Fed. Cir. 2016). Thus, the challenged claims pass *Alice* Step One.

*Alice* **Step Two.** The Court should reject ClearCorrect's cursory argument for *Alice* Step Two. ClearCorrect never responds to Align's factual allegations that its treatment planning patents are the result of "years of research and development by Align" and cover "critical advancements in treatment planning" that provide "major benefits to patients." Compl., ¶ 20. Instead, ClearCorrect just repeats that the claimed method could be done manually, which ClearCorrect has not shown is true. Br. at 17. Its only other argument—that incorporating the output from an intraoral scanner was not inventive—is yet another factual assertion for which ClearCorrect offers no proof. *Id.* Thus, the challenged claims also pass *Alice* Step Two.

> **b.** **ClearCorrect fails to establish that any claim of the Scanner Patent is directed to an abstract idea or lacks an inventive concept.**

*Alice* **Step One.** Claim 1 of the '936 patent is directed to an improved digital dentistry system for scanning, rescanning, and modelling a patient's teeth using a specialized intraoral scanner wand. ECF No. 1-9 (claim 1). As the '936 patent's specification explains, "it is often the case that when scanning the intraoral cavity to obtain 3D data … part of [a patient's mouth] may be obscured by soft tissues" or by "saliva, blood, lubricant … debris … and so on." *Id.* at 1:60-2:5. Conventionally, "[s]uch situations … required … rescanning of the entire physical item, and this may involve significant additional time, inconvenience, and … patient discomfort." *Id.*, 2:17-22. The '936 patent solves this problem with a system that lets doctors rescan only the parts of a patient's mouth that need to be rescanned. *E.g.*, *id.* (claim 1).

ClearCorrect has not shown this physical system is an "abstract concept." Br. at 18-20. ClearCorrect's only substantive arguments are analogies to *RecogniCorp., LLC v. Nintendo Co. Ltd.* and *Yu v. Apple Inc.*, but neither case fits. 855 F.3d 1322 (Fed. Cir. 2017); 1 F.4th 1040 (Fed. Cir. 2021). The representative claim in *RecogniCorp.* was "directed to the abstract idea of encoding and decoding data." 855 F.3d at 1326-28. Likewise, the representative claim in *Yu* was "directed to the abstract idea of taking two pictures … and using one picture to enhance the other in some way." 1 F.4th at 1043. The '936 patent's claim 1, with its specialized hardware, three-dimensional digital models, and improved functionality over prior methods, is different. *E.g.*, ECF No. 1-9 (claim 1). Because ClearCorrect has not proven the challenged claim "as a whole" is ineligible, it has not carried its burden at *Alice* Step One. *McRO*, 837 F.3d at 1312.

*Alice* **Step Two.** The Court should reject ClearCorrect's arguments for *Alice* Step Two. ClearCorrect fails to even mention Align's factual allegations that its claimed intraoral scanning system is "faster and more accurate than the conventional method of a doctor casting a patient's teeth" and also is "more flexible." Compl., ¶ 25. Instead, it asserts that the claimed hardware is generic and the individual limitations and their combination were not inventive. Br. at 20. But the specification's reference to "any suitable scanning equipment" does not mean *the claimed intraoral scanner* is generic hardware. ECF No. 1-9 at 18:32-34. Nor, apart from rehashing its argument that the claimed system is abstract, does ClearCorrect offer any *evidence* that challenged claim does not recite an inventive concept. Br. at 20. At bottom, these arguments depend on the Court drawing factual inferences in ClearCorrect's favor, which, at this early stage, the Court cannot. *E.g.*, *AML*, 2022 WL 11456095, at *4. If the Court reaches *Alice* Step Two, it should find that ClearCorrect has not carried its burden of proof for this patent, either.

## V.    CONCLUSION

Align filed suit because Defendants misrepresent Align's products and willfully infringe its patents. █████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████ and it should reject ClearCorrect's other challenges, too.

Dated:  July 19, 2024

MORRISON & FOERSTER LLP

By:  */s/ Brian C. Nash*
Brian C. Nash (TX Bar No. 24051103)
Austin M. Schnell (TX Bar No. 24095985)
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
Tel: (512) 617-0650
Fax: (737) 910-0730
BNash@mofo.com
ASchnell@mofo.com

Daralyn J. Durie *(pro hac vi*ce)
Rich S.J. Hung *(pro hac vi*ce)
Forrest McClellen *(pro hac vi*ce)
Ian Bennett *(pro hac vi*ce)
MORRISON & FOERSTER LLP
425 Market St.
San Francisco, CA 94105
Tel: (415) 268-7000
Fax: (415) 268-7522
DDurie@mofo.com
RHung@mofo.com
FMcClellen@mofo.com
IBennett@mofo.com

*Attorneys for Plaintiff*
*ALIGN TECHNOLOGY, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2024, a true and correct copy of the foregoing document was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the Court's local rules.

*/s/ Brian C. Nash*
Brian C. Nash
