**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC., | ) | WA:24-CV-00187-ADA-DTG |
| | ) | |
| | ) | |
| v. | ) | WACO, TEXAS |
| | ) | |
| CLEARCORRECT OPERATING, LLC, | ) | |
| CLEARCORRECT HOLDINGS, INC., | ) | |
| INSTITUT STRAUMANN AG, | ) | |
| STRAUMANN USA, LLC. | ) | JULY 25, 2024 |

```
************************************************
        TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE
        BEFORE THE HONORABLE DEREK T. GILLILAND
************************************************
```

FOR THE PLAINTIFF:     BRIAN CHRISTOPHER NASH
                       AUSTIN MICHAEL SCHNELL
                       MORRISON & FOERSTER LLP
                       300 COLORADO STREET, SUITE 1800
                       AUSTIN, TEXAS 78701

FOR THE DEFENDANTS:    JAMES TRAVIS UNDERWOOD
                       GILLAM & SMITH
                       102 NORTH COLLEGE, SUITE 800
                       TYLER, TEXAS 75702

                       OMAR ALI KHAN
                       WILMER CUTLER PICKERING HALE AND DORR LLP
                       7 WORLD TRADE CENTER
                       250 GREENWICH STREET
                       NEW YORK, NEW YORK 10007

                       MARK A. FORD
                       JOSEPH J. MUELLER
                       WILMER CUTLER PICKERING HALE AND DORR LLP
                       60 STATE STREET
                       BOSTON, MASSACHUSETTS 02109

TRANSCRIBER:           ARLINDA RODRIGUEZ, CSR
                       501 WEST 5TH STREET, SUITE 4152
                       AUSTIN, TEXAS 78701
                       (512) 391-8791

Proceedings recorded by electronic sound recording, transcript
produced by computer.

1      (Proceedings began at 2:11 p.m.)

2          THE COURT:  All right.  Let's call -- the next

3  case we want to hear is 6:24-CV-187, *Align Technology v.*

4  *ClearCorrect Operating, LLC*.

5          And for the plaintiff?

6          MR. NASH:  Good afternoon, Your Honor.

7  Brian Nash.

8          THE COURT:  Good to see you, Mr. Nash.

9          MR. NASH:  Good to see you, too.

10         THE COURT:  And for defense?

11         MR. UNDERWOOD:  Good afternoon again,

12  Your Honor.  Travis Underwood for the defendants and

13  counterclaim plaintiffs.  With me is Joe Mueller,

14  Omar Khan, and Mark Ford.

15         THE COURT:  All right.  Very good.  Well, I had

16  excused you earlier there on the last case,

17  Mr. Underwood, but then I thought I might have been

18  speaking too soon.

19         MR. UNDERWOOD:  Well, I was excused on that one

20  but not on this one, I guess.

21         THE COURT:  There you go.  Okay.  All right.

22  So on this one, this is a real interesting one with a lot

23  of stuff going back and forth.  To start with, let's see.

24  I know you-all had submitted a proposed scheduling order,

25  but there was a footnote that everybody was still meeting

1   and conferring on the proposed schedule.  What's the

2   status of trying to get an agreement on the schedule as

3   well as discovery, because that was quite a bit of the

4   Rule 26 report, is when and how discovery should kick

5   off.

6          Mr. Nash?

7          MR. NASH:  That's right, Your Honor.  I think

8   we actually reached agreement on a lot of issues.

9          THE COURT:  Excellent.

10         MR. NASH:  What was attached as, I believe,

11  Attachment A to the 26(f) report, that kind of highlights

12  where we ended up with a few disputes.  So I think it

13  kind of narrow downs to about four different disputes

14  which somewhat interweave with the discovery and then the

15  case schedule.

16         THE COURT:  All right.  Let me get down to

17  that.

18         MR. NASH:  I'm happy to kind of give you the

19  four, and then we can talk about what order.

20         THE COURT:  Yeah.  Let's do that.  Go ahead.

21         MR. NASH:  Okay.  So the way I understand it,

22  we have kind of a threshold question about when discovery

23  should start in the case.  I guess I'll start by saying

24  the plaintiff's position on each one of these is

25  basically the default that the court's operated under

1 with the OGP, order governing patent cases. So,

2 consistent with that, the plaintiff's position has been

3 that we should just wait on general discovery on all

4 these claims until after the *Markman* hearing.

5      The other three issues relate to a request by

6 the defense to narrow the claims. There's a request to

7 stagger the final contention deadlines such that

8 invalidity contentions would be after final infringement

9 contentions.

10      And then I think the third overarching issue is

11 just the case aligns otherwise pretty much up through the

12 close of fact discovery, but then because of sort of the

13 defense has kind of spaced out the expert deadlines,

14 which then pushed the trial date out by a couple of

15 months.

16      THE COURT: Okay. All right. Let me hear from

17 whoever -- Mr. Mueller or Mr. Underwood, whoever wants to

18 respond on that.

19      MR. MUELLER: Yes, Your Honor. Good afternoon.

20      THE COURT: Good afternoon.

21      MR. MUELLER: So Mr. Nash is correct that there

22 are a few issues that the parties have not yet reached

23 agreement on. Perhaps just to set the stage here,

24 Your Honor, this case involves on the plaintiff's side

25 both assertion of nine patents as well as false

advertising claims. That's the original complaint. So the original complaint has both patent claims and commercial claims.

For our part we have patent defenses, noninfringement, invalidity, but we also have commercial claims of our own. All of this is intertwined. These are two competitors in the marketplace, and the claims that we have brought in response include antitrust claims and unfair competition claims under Texas law, as well as false advertising claims of our own.

So we have a situation where we have patent claims, patent defenses, and commercial claims on both sides, all of which are intertwined. All of which are intertwined.

And our proposals to Your Honor with respect to the issues that divide the parties are meant, in our view, to present -- or to allow the parties and the Court to adjudicate these issues in the most efficient way possible.

So I'm happy to go through each one of the issues that Mr. Nash took up, however Your Honor would prefer to do it, maybe issue by issue?

THE COURT: I think issue by issue works better. And, of course, it looks like a gating kind of issue is whether or not to open fact discovery. I'm

happy to hear --

MR. MUELLER:  Sure.  And I'm happy to take that one up first, Your Honor, if that makes sense.

THE COURT:  Yeah, go ahead.

MR. MUELLER:  So with respect to taking up discovery early, I actually think the simplist way to cut through this, Your Honor, if you read the joint status report, both parties have as a fallback position opening written discovery on all claims.  They said they were okay with that, and we're okay with that, too.

So we do think that there's another way to do this that we think is absolutely proper under the governing rules, and that would allow for some differences in terms of how the patent and commercial claims are treated in this initial phase of the case. That was our position.

But our fallback position was, fine, let's open written discovery across the board on all claims in the case, patent and commercial.  They said the same.  So it may be the easiest just go with that fallback position on both sides.

To be clear, what that would mean, Your Honor, we would do the written discovery in form of document requests and interrogatories, perhaps requests for admission, also the normal patent written discovery under

1 the local rules. All of that would happen. We would

2 hold off on depositions until the time at which

3 depositions typically occur in a patent case.

4         Again, because these claims are intertwined,

5 much of the patent discovery will intersect with the

6 commercial discovery, and having those depositions occur

7 around about the same time would make good sense.

8         But what we would respectfully submit to

9 Your Honor is, probably the simplist way to deal with the

10 question of discovery is just to adopt the backup

11 position that's common to both sides, and that is written

12 discovery opens now across the board and the local rules

13 would govern on the remaining patent issues.

14         THE COURT: All right. Mr. Nash?

15         MR. NASH: Your Honor, yes, I think that

16 accurately capturing the area of agreement towards the

17 end of is alternative positions. I think our biggest

18 issue with the proposal that Defense had proposed was

19 that it was asymmetric in the sense that it would proceed

20 on nonpatent claims that they've brought in their

21 counterclaims and have the patent claims be stayed.

22         Our preference would be to follow the Court's

23 default and wait on all claims until we have the *Markman*

24 hearing. But, yes, Your Honor, we think that if you are

25 going to open up discovery early, it should be as to all

1  of these claims.

2      THE COURT:  Okay.  So here's what we'll do.  I

3  will -- I guess I'll order the opening of written

4  discovery effective Monday, but just for interrogatories,

5  requests for production, and requests for admissions, for

6  all claims.

7      And then the oral discovery or depositions, be

8  they depositions of parties or third parties, that will

9  be stayed.  And that will open the day after the *Markman*

10  like fact discovery would normally open.

11      MR. NASH:  It does.  Your Honor, I have one

12  clarifying point.

13      THE COURT:  Uh-huh.

14      MR. NASH:  There is a pending motion to dismiss

15  on lack of personal jurisdiction.  So jurisdictional

16  discovery has opened.  We've submitted RFPs and other

17  discovery requests to that effect.  I would assume that

18  at some point there will probably be depositions related

19  to that.

20      So that would be the only sort of note I'd

21  make, is that we are expecting and planning to have

22  jurisdictional discovery to be open at this time.

23      MR. MUELLER:  And we're happy to meet and

24  confer with the plaintiff on that, Your Honor.  I agree

25  with Mr. Nash.  That's a separate subject, and we can

take that up at the appropriate time.  But with respect
to the remainder, Your Honor I think had it exactly
right.

THE COURT:  Okay.  That's what we'll do.
I'll -- you-all meet and confer on the jurisdictional
discovery since that's already begun.  If you reach an
impasse, you can -- you can use the standard email
discovery process to get that sorted.

But we'll order the rest of the discovery --
written discovery open now.  Testimonial discovery will
open the day after the *Markman* hearing.

Given the complexity of the case, I'm happy to
hear arguments.  It seems like the more extended -- it
looked like there were only about two months between the
trial deadlines in the case.  But it looked like a more
extended schedule, especially if we're starting early,
should be good enough.

But Mr. Nash, what are your thoughts on that?

MR. NASH:  You're talking about the overarching
case schedule, Your Honor?

THE COURT:  Yes, sir.

MR. NASH:  Yeah.  I think given the fact
discovery would be opening earlier, given Your Honor's
ruling right now, the -- the schedule proposed by
Plaintiff would actually make sense, because that has us

1  two months earlier.  So we'll have all of the discovery

2  beginning now, and that gives us plenty of lead time for

3  both the patent claims and the additional counterclaims

4  that they've raised.

5        THE COURT:  Okay.  Mr. Mueller?

6        MR. MUELLER:  Your Honor, I think we're pretty

7  close on this, too.  The one piece that I would just ask

8  for a bit of initial discussion now would be the expert

9  discovery period, Your Honor.  We had suggested a bit

10  longer period than the normal rules would provide, and we

11  think that's appropriate here, given the complexity of

12  these intertwined issues.

13        We're going to be having, for example, more

14  expert reports than infringement and invalidity.  There

15  will almost certainly be a fair amount of expert

16  discovery on the antitrust issues, false advertising, and

17  the rest.

18        So we do think a modest extension of expert

19  discovery in line with our proposed schedule would be

20  appropriate, how that intersects with the actual end date

21  of the overall case we'll have to take a look at again.

22  But we weren't that far apart.  As Your Honor noted, we

23  are about two months apart to begin with.

24        So if we were to, you know, perhaps meet in the

25  middle, maybe a month extra, but have that extra expert

1  discovery, we would be fine with that, Your Honor.

2        THE COURT:  Okay.  That one I'm going to table

3  that one.  Let's go through these other issues.  But at

4  the end of this, I think what we'll do in light of the

5  fact that fact discovery is opening for written fact

6  discovery now, I'm going to give you-all a week to meet

7  and confer after we get through these other issues -- a

8  week to meet and confer and submit a revised schedule.

9        All right.  So what was the next point of

10  disagreement in the -- that we need to address in the

11  schedule?

12        MR. NASH:  Yeah, Your Honor.  It might make

13  sense for Mr. Mueller to go ahead and address this one.

14  It's a deviation from the Court's default.  So I believe

15  these two would relate to the -- the dates you might see

16  in this proposed schedule to require that Plaintiff

17  reduce its asserted claims first before the *Markman*

18  hearing and then another shortly after the *Markman*

19  hearing.

20        And that's in addition to the two that are

21  always typically included in the default schedule, which

22  as Your Honor knows, takes place later the case, usually

23  well into fact discovery, after the plaintiff has had

24  both the benefit of understanding what the claim

25  constructions are going to be as well as an opportunity

1  to get actual discovery in the case.

2          So this would be injecting four different

3  tranches of claim narrowing throughout the case.  We

4  obviously disagree with that.  We think the default is

5  fine.  In fact, trying to limit a plaintiff up front in a

6  case, before it's had the opportunity for discovery and

7  the benefit of claim construction, we believe is

8  inequitable.

9          THE COURT:  All right.  Thank you, Mr. Nash.

10          Mr. Mueller.

11          MR. MUELLER:  Yes, Your Honor.  So we are

12  requesting some additional claim narrowing.  And we do

13  think it's appropriate here for a couple of reasons.

14          Number one, in the nine patents that are

15  asserted, there's 183 asserted claims as of today.

16  That's obviously far more than the parties could actually

17  litigate.  What we're suggesting, Your Honor, is that the

18  plaintiff reduce that 183 to 75 by mid October.

19          And, to be clear, under our proposed schedule,

20  mid October would be after we serve our initial

21  invalidity contentions and make our core technical

22  production.  And, indeed, if the written discovery is

23  starting on Monday, there should be even more information

24  available to the plaintiff by the time that first

25  election was made.  And, again, if the election that

we're proposing is to 75 claims, it's certainly an ample

number on that date.

The second narrowing we're suggesting is the

end of next March, and that would be 40.  That would be

after *Markman* under the proposed schedules and at the

same time as the final infringement contentions.  So,

again, we think this is still giving the plaintiff ample

room and flexibility with respect to how they prepare

their case for trial.

We think moving from 183 to 75 after, again,

after, we serve our initial invalidity contentions and

begun the technical production of facts and information

into the accused products is an appropriate narrowing at

that juncture.  And then 40, concurrent with the final

infringement contentions, we also think is appropriate.

I would note, Your Honor, there have been

examples of this Court doing something analogous to what

we're suggesting.  And we cited in the papers the

*ParkerVision v. Intel* case, where the court ordered the

plaintiff to narrow to 50 claims in the initial

infringement contentions and then four claims per patent

after *Markman*.  Four claims per patent after *Markman*

would be 36.  We're suggesting 40 next year and 75 in

October.

So we do think that this is a very reasonable

proposal with respect to narrowing.  And against the

backdrop of this complicated set of intertwined issues,

this would allow us to do that piece of it in a more

efficient way.

THE COURT:  Okay.  I appreciate it.

Mr. Nash, go ahead.

MR. NASH:  Yeah.  Your Honor, I think my only

response is that 183 claims at this stage of a case --

which, again, is preliminary; we haven't even had an

opportunity to get their contentions yet -- I don't think

that's atypical.  There's certainly many other cases in

this court that have had similar number of claims,

similar number of patents.

We cited in the 26(f) report there have been

cases where, in recent time, that have been pressed to

reduce their claims in advance of things like claim

construction or general fact discovery, and those have

been rejected.

The *ParkerVision* case, I recall that.  I

believe that was in 2020.  I've seen, as this Court's

practice has, like, continued, that we've gone back and

forth on this.  And I think that's why in this most

recent OGP we've actually built in dates for that.  I

think the feedback that we saw when we tried to have

restrictions earlier in cases was that that was unduly

1 restrictive on a plaintiff and was being done before the

2 case had developed sufficiently to know which claims they

3 were able to narrow to.

4        THE COURT: Okay. And Plaintiffs have

5 already -- you already served your preliminary

6 infringement contentions, correct?

7        MR. NASH: That's correct, Your Honor.

8        THE COURT: And is that 183 asserted claims?

9        MR. NASH: It is, yes.

10        THE COURT: Okay. And that's across nine

11 patents?

12        MR. NASH: Yes.

13        THE COURT: Okay. Yeah. At this time I'm

14 going to deny the request to add those extra deadlines to

15 the scheduling order, and we'll just stay with what's in

16 the standard existing order governing proceedings.

17        What is the next issue? Is it the substantial

18 completion or something?

19        MR. NASH: I'll tee it up. But, again, this a

20 is a deviation from the default. I think this is about

21 the final contentions.

22        THE COURT: Okay.

23        MR. NASH: So, Your Honor, the plaintiff's

24 proposal is obviously to have final contentions, I

25 believe the date is, March 20th, 2025. So a few weeks

1    after *Markman*, consistent with the default schedule.

2    That's when we believe all contentions should be due.

3           I believe Defendants' proposal is to stagger

4    them such that, first, Plaintiff would have to do its

5    infringement contentions, its final infringement

6    contentions, and then the defendants would do their final

7    invalidity contentions.  We obviously disagree with that.

8           We believe the reason why the default is to

9    have both exchange simultaneously is because the updating

10   that's being done at that time is based off the

11   information that's revealed through claim construction

12   process.  Both parties now have the positions that are

13   being used for infringement and invalidity, and then it's

14   just seeing what updates need to happen relative to the

15   change in claim construction.

16           THE COURT:  Got it.  Mr. Mueller?

17           MR. MUELLER:  Yes, Your Honor.  And our

18   proposal is to stagger it by four weeks, such that the

19   invalidity contentions would be four weeks after

20   infringement.  We think the reason for, Your Honor, is to

21   allow us to tailor in terms of the scope of the arguments

22   the invalidity contentions to the infringement

23   contentions.

24           They would be -- as Mr. Nash said, there would

25   need to be an antecedent basis in the original invalidity

contentions.  But, nonetheless, the infringement

contentions could be narrowing the infringement theories,

some of which would carry with them an implied position

as to the scope of the claims according to the plaintiff.

That can have implications for invalidity arguments that

are tied to the implied scope of the claims.

So the bottom line is, from our perspective,

there's a logical connection between the ultimate

positions that we articulate for invalidity and their

final infringement contentions, such that having your

final infringement contentions will allow us to

efficiently present the invalidity contentions and the

final contentions.

Just to make two other points, Your Honor.  One

is we take Your Honor's ruling, of course, on the claim

narrowing, but that does underscore, we think, the need

for this stagger.  Because if there's going to be that

many claims potentially in play at that stage of the

case, we may be preparing invalidity contentions on

arguments that are moot.  We may receive the infringement

contentions and have claims that are dropped, for

example, by the plaintiff in their contentions, and we'll

have spent time preparing invalidity contentions that are

no longer necessary.

So, if they're going to have the flexibility to

have as many claims in play as they will, we do think
it's appropriate to allow us at least the chance to see
where they arrive in terms of a resting point for their
final set of asserted claims in the final infringement
contentions before we respond to them.

And I'll note, Your Honor, one case in which
this court has done exactly that is the *ACQIS v. ASUStek*
case which we cited in our papers, staggering the
contentions deadlines and setting the deadline for the
final invalidity contentions four weeks after the
infringement contentions.  That's exactly what we're
respectfully requesting here, Your Honor.

THE COURT:  All right.  Thank you, Mr. Mueller.

Mr. Nash, final words on this one.

MR. NASH:  Yes, Your Honor.  I don't think
there's anything atypical about this case that would
require an atypical staggering of these final
contentions.  It's like any other patent case in that
regard, including cases that involve a lot of claims.

The *ACQIS* case that was noted by counsel I
believe is distinguishable.  That involved some later
developed products that I believe were trying to be
injected into the case.  And so I think there was a
separation in contentions to reflect the fact that that
was newly added products.

          THE COURT:  All right.  On this one I'm going
to stay with the court's standard as well.  We'll just
make those due at the same time.

          All right.  Do we need -- is there another
issue in the chart that we need to address, Mr. Nash?

          MR. NASH:  I don't believe so, Your Honor.  The
chart does talk about some early discovery questions.  I
think with the Court opening discovery, we'll see that
play out, so it would be premature, probably, to address
the applicability of some of these cases that are being
requested up front.

          At the very least, I think there would be an
RFP, we'd respond, and then if there's a dispute over it,
we would tee that up for the Court's decision.

          MR. MUELLER:  That's fine, Your Honor.

          THE COURT:  Okay.

          MR. MUELLER:  I think the only remaining issue
would be just that expert discovery schedule.  And we
would, again, respectfully request some additional time,
given the complexity of the issues and the number of
expert reports that we anticipate will be in play.

          THE COURT:  Understood.  What I'll do is I'm
going to -- rather than order you to submit a proposed
schedule in Word form now, I'll order you to submit a
proposed scheduling order.  Email it to chambers a week

1   from tomorrow, so one week from Friday.  Take the next

2   seven plus one, eight, days to meet and confer and see if

3   you can find some common ground between the trial date

4   and the length of expert discovery in light of discovery

5   opening and the other rulings we've made here today.

6          How does that sound?

7          MR. NASH:  That sounds great, Your Honor.

8   Thank you.

9          MR. MUELLER:  Sounds good, Your Honor.  Thanks

10  very much.

11         THE COURT:  You're welcome.  Let's see.  I

12  think -- yeah.  I think that's it.  Is there anything

13  else from the plaintiff we need to address on this one?

14         MR. NASH:  Nothing further from the plaintiff,

15  Your Honor.

16         THE COURT:  All right.  I will say -- I need to

17  make sure the record reflects that Mr. Schnell, is he at

18  the table with you on this case, or is he ...

19         MR. NASH:  I'm at the table with him,

20  Your Honor.

21         THE COURT:  There you go.  He snuck up there,

22  after -- before we did announcements.  So I want to make

23  sure the record reflects, Austin Schnell's attendance and

24  copious passing of notes to Mr. Nash during argument.

25         Anything else for Defense?

1    MR. UNDERWOOD:  No, Your Honor.  Thanks very

2 much.

3    THE COURT:  All right.  Thank you-all very

4 much, and you-all can be adjourned.

5    (Proceedings concluded at 2:31 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1 **REPORTER'S CERTIFICATE**

2     I, Arlinda Rodriguez, do hereby certify that the foregoing

3 was transcribed from an electronic recording made at the time

4 of the aforesaid proceedings and is a correct transcript, to

5 the best of my ability, made from the proceedings in the

6 above-entitled matter, and that the transcript fees and format

7 comply with those prescribed by the Court and Judicial

8 Conference of the United States.

9

10 /S/ Arlinda Rodriguez               July 31, 2024

11

12 ARLINDA RODRIGUEZ                 DATE

13

14

15

16

17

18

19

20

21

22

23

24

25