# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., | Case No. 6:24-cv-00187-ADA-DTG |
| Plaintiff, | PATENT CASE |
| v. | **JURY TRIAL DEMANDED** |
| CLEARCORRECT OPERATING, LLC, CLEARCORRECT HOLDINGS, INC., & INSTITUT STRAUMANN AG, | |
| Defendants. | |
| CLEARCORRECT OPERATING, LLC, CLEARCORRECT HOLDINGS, INC., & STRAUMANN USA, LLC, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| ALIGN TECHNOLOGY, INC., | |
| Counterclaim-Defendant. | |

**PLAINTIFF ALIGN TECHNOLOGY'S MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS UNDER FRCP 12(B)(6)**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 2

   I.    ALIGN INVESTS IN AND PROTECTS ITS INNOVATIONS WITH PATENTS .......... 2

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

   I.    STRAUMANN'S ANTITRUST CLAIMS ARE TIME-BARRED ................................... 6

   II.    STRAUMANN FAILS TO ALLEGE FACTS SHOWING THAT IT SUFFERED ANTITRUST INJURY ...................................................................................................... 7

   III.   STRAUMANN MUST ALLEGE FACTS TO SHOW COGNIZABLE EXCLUSIONARY CONDUCT; BUT FAILS TO DO SO ...................................................... 9

      A.    Straumann has not plausibly alleged illegal tying. ...................................... 9

      B.    Straumann has not alleged an unlawful refusal to deal. ............................. 12

      C.    Straumann fails to allege actionable exclusive dealing. ............................. 14

      D.    Align's enforcement of its patents and trademarks is Constitutionally protected. ...... 15

      E.    Straumann's conduct allegations fail even if viewed together. ................................ 15

███  ████████████████████████████████████████████████████████████████

███  ████████████████████████████████████████████████████████████████

███  ████████████████████████████████████████████████████████████████

   V.    CONCLUSION ......................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3Shape TRIOS A/S v. Align Tech., Inc.*,
No. 18-1332-LPS, ECF No. 59 (D. Del. Aug. 15, 2019)................................4, 7, 16

*Am. Nat'l Mfg. v. Select Comfort Corp.*,
ED CV 16-0582-GHK, 2016 U.S. Dist. LEXIS 193268 (C.D. Cal. Sept. 28,
2016) ...........................................................................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................6

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp*.
472 U.S. 585 (1985).............................................................................................12, 14

*Axis, S.p.A. v. Micafil, Inc.*,
870 F.2d 1105 (6th Cir. 1989) .....................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................5, 6

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*,
563 F. Supp. 3d 578 (W.D. La. 2021), *aff'd* 49 F.4th 520 (5th Cir. 2022)...............8

*C&C Rd. Constr., Inc. v. SAAB Site Contractors*, *L.P.*,
574 S.W.3d 576 (Tex. App. 2019)..............................................................................17

*Certain Color Intraoral Scanners and Related Hardware and Software*,
Inv. No. 337-TA-1091, Doc. No. 658875 (U.S.I.T.C. Oct. 15, 2018)....................13

*Chandler v. Phoenix Servs., L.L.C.*,
45 F.4th 807 (5th Cir. 2022) .......................................................................................6

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) .....................................................................................16

*Columbia Physical Therapy v. Benton Franklin Orthopedic Assocs., P.L.L.C*
168 Wash. 2d 421 (Washington) ..................................................................................4

*Dawson Chem. Co. v. Rohm & Haas Co.*,
448 U.S. 176 (1980).....................................................................................................9

*E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)....................................................................................................15

*Eatoni Ergonomics, Inc. v. Rsch. in Motion Corp.*,
    486 F. App'x 186 (2d Cir. 2012) .........................................................16

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
    821 F.3d 394 (3d Cir. 2016)..............................................................15

*Elite Sub-Zero Repair v. Great Plains Appliance Parts, Inc.*,
    No. 1:23-CV-118-DAE, 2023 WL 11916709 (W.D. Tex. Oct. 31, 2023) ............................6

*Emrit v. Nat'l Acad. of Recording Arts & Scis.*,
    No. A-14-cv-392-SS, 2015 WL 518774 (W.D. Tex. Feb. 5, 2015) .........................20

*Felder's Collision Parts, Inc. v. All Star Advert. Agency, Inc*.,
    777 F.3d 756 (5th Cir. 2015) .............................................................11

*Franke v. Yates*,
    No. 19-cv-00007, 2019 WL 4856002 (D. Haw. Oct. 1, 2019) ............................18

*Fresenius Kabi USA, LLC v. Par Sterile Prods., LLC*,
    841 F. App'x 399 (3d Cir. 2021) .........................................................8

*FTC v. Qualcomm, Inc.*,
    969 F.3d 974 (9th Cir. 2020) ...........................................................12

*Gurrola v. Walgreen Co.*,
    EP-17-CV-00078-DCG, 2017 WL 6764324 (W.D. Tex. Nov. 15, 2017) ....................14

*In re Humira (Adalimumab) Antitrust Litig.*,
    465 F. Supp. 3d 811 (N.D. Ill. 2020), *aff'd sub nom. Mayor & City Council of
    Baltimore v. AbbVie*, 42 F.4th 709 (7th Cir. 2022)....................................8

*IBM Corp. v. LZLabs GmbH*,
    No. 6:22-CV-00299-DAE, 2023 WL 11916812 (W.D. Tex. Mar. 24, 2023) .................9

*Intergraph Corp. v. Intel Corp.*,
    195 F.3d 1346 (Fed. Cir. 1999).........................................................16

*Jebaco, Inc. v. Harrah's Operating Co., Inc.*,
    587 F.3d 314 (5th Cir. 2009) .............................................................7

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984), abrogated on other grounds by *Illinois Tool Works Inc. v.
    Indep. Ink, Inc.,* 547 U.S. 28 (2006) ..................................................10

*Jobe v. JPMorgan Chase Bank, Nat'l Ass'n*,
    No. 3:20-cv-588-K-BN, 2020 WL 5984369 (N.D. Tex. Sept. 18, 2020)....................20

*Jobe v. Morgan Chase Bank, Nat'l Ass'n.*,
   No. 20-cv-588, 2020 WL 5981999 (N.D. Tex. Oct. 7, 2020)..................................20

*Kovaly v. Wal-Mart Stores Texas, LLC*,
   157 F. Supp. 3d 666 (S.D. Tex. 2016) ...................................................................4

*Kroger v. Sanofi-Aventis*,
   701 F. Supp. 2d 938 (S.D. Ohio 2010) ...................................................................8

*Medtronic AVE, Inc. v. Cordis Corp.*,
   No. 2-03-CV-212 (TJW), 2004 WL 7322043 (E.D. Tex. Mar. 18, 2004)...............9

*Misty Snow et al. v. Align Tech., Inc.*,
   3:21-cv-03269-VC, ECF No. 1 (N.D. Cal. filed May 3, 2021). ..........................2, 5

*New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Health.
   Servs.*,
   994 F.3d 1166 (10th Cir. 2021) ...............................................................................9

*Norris v. Hearst Tr.*,
   500 F.3d 454 (5th Cir. 2007) ...............................................................................7, 8

*Novell, Inc. v. Microsoft Corp.*,
   731 F.3d 1064 (10th Cir. 2013) .........................................................................12, 13

*Pac. Bell Tel., Co. v. linkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009)............................................................................................12, 16

*Response of Carolina, Inc. v. Leasco Response, Inc.*,
   537 F.2d 1307 (5th Cir. 1976), *abrogated on other grounds by Cont'l T. V.,
   Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977) ....................................................11

*Salaiz v. Pelican Investment Holdings Grp., LLC*,
   EP-22-CV-00029-FM, 2022 WL 17811482 (W.D. Tex. Nov. 10, 2022)...............12

*Simon & Simon, PC v. Align Tech., Inc.*,
   533 F. Supp. 3d 904 (N.D. Cal. Apr. 8, 2021)..........................................................5

*Simon & Simon PC v. Align Tech., Inc.*,
   No. 19-506-LPS, ECF No. 1 (D. Del. filed Mar. 14, 2019).....................................5

*Simon & Simon v. Align Tech., Inc. and Snow et al. v. Align Tech., Inc.*,
   Nos. 20-cv-03754-VC & 21-cv-03269-VC, 2024 WL 710623 (N.D. Cal. Feb.
   21, 2024) ...................................................................................................................1

*Sutton Place 1 Townhouse v. AmGuard Ins. Co.*,
   668 F. Supp. 3d 684 (W.D. Tex. 2023).....................................................................6

*Swindol v. Aurora Flight Scis. Corp.*,
 805 F.3d 516 (5th Cir. 2015) ...................................................19

*Tampa Elec. Co. v. Nashville Coal Co.*,
 365 U.S. 320 (1961) ..........................................................14

*Tomorrow Telecom, Inc. v. Silvas*,
 No. 07-20-00100-cv, 2021 WL 2461129 (Tex. App. June 16, 2021) ...................20

*United States v. Microsoft Corp.*,
 253 F.3d 34 (D.C. Cir. 2001) ...................................................16

*Velvet Snout, LLC v. Sharp*,
 441 S.W. 3d 448 (Tex. App. 2014) ...............................................16

*Verastique v. City of Dallas, Texas*,
 106 F.4th 427 (5th Cir. 2024) ...................................................4

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
 540 U.S. 398 (2004) .................................................9, 12, 14, 16

*Virgin Atl. Airways v. British Airways*,
 257 F.3d 256 (2d Cir. 2001) ....................................................14

*In re Wellbutrin XL Antitrust Litig.*,
 868 F.3d 132 (3d Cir. 2017) ....................................................8, 9

*Woody v. J. Black's, LP*,
 No. 03-15-00293-cv, 2016 WL 3677241 (Tex. App. July 7, 2016) ...................20

*Zircore, LLC v. Institut Straumann AG*,
 No. 15-cv-1557, ECF No. 139 (E.D. Tex. Sept. 5, 2016) ..........................19

**Statutes**

15 U.S.C. § 15(b) ...............................................................6

Cal. Bus. & Prof. Code § 2400 ..................................................4

Sherman Act ....................................................................6

Tex. Bus. & Com. Code § 15.25 ..................................................6

Tex. Occ. Code Ann. § 164.052(a)(17) ...........................................4

Texas Antitrust Act ............................................................6

Wis. Stat. Ann. § 180.1903 .....................................................4

**Other Authorities**

FRCP 12(b)(6) .................................................................................................6

## INTRODUCTION

Facing the music for its serial patent infringement, Straumann tosses a desperation heave with its antitrust counterclaims. But all Straumann can muster is a tired and untimely retelling of stale and fruitless allegations that have already been litigated and adjudicated in Align's favor after years of voluminous, complex discovery. *See Simon & Simon v. Align Tech., Inc. and Snow et al. v. Align Tech., Inc.*, Nos. 20-cv-03754-VC & 21-cv-03269-VC, 2024 WL 710623 (N.D. Cal. Feb. 21, 2024) (granting summary judgment to Align) (hereinafter "MSJ Order").[1] Dentists and patients already brought these claims and were unsuccessful. Straumann invites this Court to retread the same ground. But even leaving aside that problem, Straumann's claims are deficient for three independent reasons, requiring dismissal.

***First***, Straumann delayed bringing its antitrust claims beyond the four-year statute of limitations. All of the conduct about which Straumann complains was previously alleged by scanner competitor 3Shape in a Delaware court in October 2019—nearly five years ago. Straumann fails to plead an exception to the statute of limitations, so the claims are time-barred.

***Second***, ClearCorrect Operating, LLC, ClearCorrect Holdings, Inc., and Straumann USA, LLC (together, "Straumann") make aligners by infringing Align's patents. Straumann is not a lawful market participant and thus, as numerous decisions have held, cannot plausibly allege antitrust injury—an element of its antitrust counterclaims. This, too, is alone fatal.

***Third,*** Straumann's antitrust counterclaims likewise fail to allege the required "exclusionary conduct." It is not enough to allege monopoly power and industry success. But Straumann's allegations are the same, previously litigated, losing theories that failed the various doctrinal tests in their original form and they fail in their new disguises.

---

[1] For the convenience of the court a true and correct copy of the MSJ Order is provided as Exhibit 1 to Align's Request for Judicial Notice ("RJN") concurrently filed hereto.

███████████████████████████████████████████

████████████████████████████

## FACTUAL BACKGROUND

## I.   ALIGN INVESTS IN AND PROTECTS ITS INNOVATIONS WITH PATENTS

To this day, the vast majority of orthodontic treatment uses braces, with most orthodontists relying on methods developed generations ago. Align has sought to disrupt that, harnessing the power of computer-added design and 3D printing to create clear plastic trays to treat malocclusion, introducing Invisalign to the U.S. in 1999. (Counterclaim Compl. ("CC") ¶ 42, ECF No. 49). Align provides custom-made medical devices that apply precise pressure to teeth to facilitate orthodontic movement under the direction of a trained medical doctor. Over 17 million patients have been treated with the Invisalign system.

Align has invested over $2 billion to develop its Invisalign system, and continues to invest more than $250 million per year in R&D. To protect its innovations, Align was issued hundreds of patents on its aligner technology—including the patents asserted in this case. This portfolio reflects Align's substantial investment in its technology, and its commitment to revolutionizing straightening teeth for patients in the United States and around the world.

Align previously enforced its patents against ClearCorrect, Inc., ClearCorrect Operating, LLC, and ClearCorrect Holdings, LLC. *See Align Tech., Inc. v. ClearCorrect, Inc.*, 4:11-cv-00695, ECF No. 1 (S.D. Tex. filed Feb. 28, 2011). Align eventually won summary judgment, with the court finding ClearCorrect had infringed one of Align's patents.[2] The U.S. International Trade Commission ("ITC") also ruled in Align's favor on infringement.[3] Facing the threat of a jury trial, ClearCorrect agreed to a ██████ settlement with Align to end the litigation. Compl. ¶ 2, ECF

---

[2] RJN Ex. 2.
[3] RJN Ex. 3.

No. 1.

Straumann's infringement continues even today. There is no mystery why: it cannot effectively compete without infringing. Straumann admits that it uses the three-layer FLX plastic in its aligners (Answer, ¶ 4, ECF No. 49), and it alleges that the FLX plastic lets it "compete against Invisalign®" (CC, ¶ 142). Yet FLX-aligners practice Align's patents. (Compl., Counts 4-7.) So do the accused treatment planning software and scanner. (Id., Counts 8-11).

Confronted about its patent infringement, Straumann filed copycat antitrust claims mirroring allegations made nearly five years ago in October 2019. These claims are based on Align's 2011 acquisition of Cadent Holdings, Inc. ("Cadent") a leading provider of 3D digital scanning solutions for orthodontics and dentistry, that led to Align's introduction of an intraoral scanner called the iTero HD ("iTero"). Dentists also use iTero to send scans for purchasing clear aligners from competing aligner companies. Notably, multiple competing clear aligner companies, including Straumann, ***specifically teach doctors to use iTero to send cases to non-Invisalign*** aligners.[4] In April 2016, Align and 3Shape, a manufacturer of 3D scanning and CAD/CAM software solutions, announced an agreement whereby 3Shape's scanner, TRIOS, could be used to submit scans for Invisalign—"interoperability." (CC ¶ 67). In November 2017, Align initiated patent litigation against 3Shape in the ITC and District of Delaware asserting 26 patents against 3Shape.[5] After filing these patent claims, Align determined that continuing interoperability with 3Shape could fatally compromise Align's patent claims against 3Shape. On December 20, 2017, Align publicly announced that due to 3Shape's infringing conduct and the resulting litigation, Align terminated interoperability with 3Shape in the U.S. (CC ¶ 70 n. 28). 3Shape sued Align for

---

[4] RJN Ex. 4; *id.,* Ex. 5 ("iTero allows us to see if you're eligible for ClearCorrect"); *id.,* Ex. 6 at 8, 24.
[5] RJN Ex. 7.

antitrust violations, publicly alleging *in October 2019*, as **Straumann parrots here nearly five years later**, that Align (1) integrated its iTero scanner in a digital workflow together with the Invisalign system; (2) terminated Invisalign interoperability with 3Shape; (3) entered exclusive contracts with group purchasing entities called dental service organizations ("DSOs"), including Heartland; and (4) bundled iTero and Invisalign together with package discounts (the "Fusion program").[6]

The DSO allegation concerned a July 2018 multi-year agreement with Heartland Dental, LLC ("Heartland") to allow Heartland doctors to use the iTero within their individual practices. (CC ¶ 79-81.) The agreement contains no requirement that Heartland doctors exclusively use iTero or prescribe Invisalign. *See* Pearl Decl. Ex. 1.[7] In fact, **numerous state laws, including those of Texas, prohibit corporate entities from practicing medicine**.[8] The discount allegation concerns a discount program called "Fusion," which allows doctors to split payment for a full-priced iTero into three annual payments, reducing the second and third payments if the doctor meets certain goals for Invisalign case prescriptions. (CC ¶¶ 102-104.) Other companies selling aligners and scanners offer similar bundles.[9]

---

[6] *See* Amended Compl. ¶¶10-16, *3Shape Trios A/S v. Align Tech., Inc.* No. 18-1332-LPS (D. Del. filed Oct. 28, 2019) ECF. No. 63.

[7] The Counterclaims allege the Heartland contract gives rise to liability. (*See* CC ¶¶ 81, 126-127.) As such, it is incorporated by reference and is appropriately considered at the dismissal stage. *Verastique v. City of Dallas, Texas*, 106 F.4th 427, 437 (5th Cir. 2024) ("Documents incorporated into the complaint are properly examined on a motion to dismiss.") (citation omitted).

[8] *See, e.g.*, Tex. Occ. Code Ann. § 164.052(a)(17) (Texas); Cal. Bus. & Prof. Code § 2400 (California); *Columbia Physical Therapy v. Benton Franklin Orthopedic Assocs., P.L.L.C* 168 Wash. 2d 421, 430 (Washington); Col. Rev. Stat. 12-240-138(6)(a) (Colorado); Wis. Stat. Ann. § 180.1903 (Wisconsin). "Federal courts are required to take judicial notice of the content of state law." *Kovaly v. Wal-Mart Stores Texas, LLC*, 157 F. Supp. 3d 666, 674 (S.D. Tex. 2016) (citation omitted).

[9] *See* RJN Ex. 8. Dentsply also offered a "DW World 2020 Promotion" in which practices that purchase a Primescan intraoral scanner for $44,995 and sign up for an educational event received a $7,500 instant rebate on the Primescan, "up to $20,000 in rebates on qualifying purchases," a

In March 2019, a dentist copied 3Shape's antitrust claims[10] A group of Invisalign patients later followed with their own suit (together with the dentistry case, the "California Cases").[11] In February 2022, Align and 3Shape settled their claims against each other, with 3Shape agreeing to pay Align substantial consideration. 3Shape also agreed there would be no U.S. interoperability with Invisalign but interoperability would continue abroad.

In February 2024, the court granted summary judgment to Align in the California Cases. RJN Ex. 1 at 1. On a voluminous record, the court found no cognizable exclusionary conduct, whether considered as individual theories or viewed together. *Id.* at 2. Specifically, "the evidence, viewed in the light most favorable to the plaintiffs, [did] not give rise to a viable refusal-to-deal claim based on termination of the interoperability agreement with 3Shape." *Id.* at 1. The court noted that although plaintiffs' additional allegations that Align engaged in exclusionary conduct "might have combined with the refusal-to-deal claim to form the basis of a larger antitrust claim, they cannot stand on their own." *Id.* at 5; *Simon & Simon, PC v. Align Tech., Inc.*, 533 F. Supp. 3d 904, 918 (N.D. Cal. Apr. 8. 2021). Straumann repackaged the stale and rejected allegations from the California Cases—already rejected on a complete record—and refiled them as its Counterclaims here.

## **LEGAL STANDARD**

To survive a 12(b)(6) motion, claims must include "enough facts to state a claim to relief that is plausible on its face," which requires "more than labels and conclusions." *Bell Atl. Corp. v.*

---

[10] *See Simon & Simon PC v. Align Tech., Inc.*, No. 19-506-LPS, ECF No. 1 (D. Del. filed Mar. 14, 2019). The plaintiff dismissed its claims before the District of Delaware ruled on Align's then-pending challenge to the pleadings and filed in the Northern District of California.

[11] *See Misty Snow et al. v. Align Tech., Inc.*, 3:21-cv-03269-VC, ECF No. 1 (N.D. Cal. filed May 3, 2021).

SureSmile starter kit that includes a free case, and various other discounts. RJN Ex. 6. Straumann offers a "Commitment Bundle" in which doctors receive "a complimentary scanner" in exchange for a "monthly [aligner] case purchase commitment" over a 24-month term. *See* RJN Ex. 10.

*Twombly*, 550 U.S. 544, 555, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must create "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Dismissal is required if the allegations do not "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Court may also "draw on its judicial experience and common sense" when assessing whether a claim is plausible. *Iqbal*, 556 U.S. at 679.

## ARGUMENT

## I. STRAUMANN'S ANTITRUST CLAIMS ARE TIME-BARRED

Straumann is too late to assert its antitrust claims. Sherman Act claims are limited to four years from the cause of action's accrual, *see* 15 U.S.C. § 15(b), which begins "when a defendant commits an act that injures a plaintiff's business." *Chandler v. Phoenix Servs., L.L.C.*, 45 F.4th 807, 815 (5th Cir. 2022) (citation omitted). Straumann's Texas antitrust claims have the same limitations period and accrual rules as its Sherman Act claims. *Compare* 15 U.S.C. § 15(b) *with* Tex. Bus. & Com. Code § 15.25.[12] Where the statute of limitations problem is evident in the pleadings, including materials subject to judicial notice, dismissal under FRCP 12(b)(6) is appropriate. *See Sutton Place 1 Townhouse v. AmGuard Ins. Co.*, 668 F. Supp. 3d 684, 689 (W.D. Tex. 2023).

Straumann alleges Align adopted a policy in 2017 to no longer accept scans from scanner competitors, (CC ¶ 1), allegedly to protect its market position before certain patents expired. (CC ¶ 8). As part of that, Align terminated 3Shape-Invisalign interoperability. (CC ¶¶ 66-72). But Align

---

[12] "[T]he analysis of claims under the Texas Antitrust Act and the Sherman Act are substantially identical." *Elite Sub-Zero Repair v. Great Plains Appliance Parts, Inc.*, No. 1:23-CV-118-DAE, 2023 WL 11916709 at *7 (W.D. Tex. Oct. 31, 2023) (citation omitted).

announced this termination on December 20, 2017, nearly seven years ago. (CC ¶ 70). Straumann concedes on the face of its complaint that "[*s]ince Align announced that it would no longer accept scans from the TRIOS 3®*, and continuing to this day, doctors in the United States with any modern scanner beside the iTero®, regardless of the quality of the scan, cannot place orders for Invisalign® using a digital scan." (CC ¶ 72). Straumann thus attempts to litigate a business policy choice that is six years old. That is stale on its face.

Straumann's exclusive dealing allegations fare no better. Agreements with large DSOs such as Heartland also date back nearly 6 years. These purported violations were known to the public and Straumann did nothing. Indeed, the press release announcing the Heartland deployment of iTero scanners dates to July 25, 2018. (CC ¶ 81). The Advantage and Fusion programs, DSO agreements, and termination of 3Shape-Invisalign interoperability were all alleged by 3Shape in its October 2019 Delaware amended complaint putting Straumann on clear notice, at the latest, in October 2019.[13] Straumann alleges nothing that can rescue it from the normal course application of the four-year statute of limitations.

## II.    STRAUMANN FAILS TO ALLEGE FACTS SHOWING THAT IT SUFFERED ANTITRUST INJURY

Unless Straumann pleads facts to show that it is a lawful competitor in aligners, it fails to state a claim as to Counts One through Four. Straumann must also plausibly allege a causal connection between a competition-reducing aspect of the Align behavior alleged and Straumann's purported injury, part of "antitrust injury." *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318–19 (5th Cir. 2009). [A]ntitrust laws "were enacted for 'the protection of *competition* not *competitors.*'" *Norris v. Hearst Tr.*, 500 F.3d 454, 465 (5th Cir. 2007) (emphasis in original).

---

[13] *See* Amended Compl., ¶¶ 10-16 *3Shape Trios A/S v. Align Tech. Inc.* No. 18-1332-LPS (D. Del. filed Oct. 28, 2019) ECF No. 63.

Accordingly, "[e]ven a plaintiff injured in his business or property must, in order to sue for damages, show 'antitrust injury,' that is, 'injury of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Id.* (citation omitted). "[A]n inquiry into antitrust injury always asks whether there is a causal connection between the alleged injury of the plaintiff and the anticipated anticompetitive effect of the specific practice that allegedly violates antitrust law." *BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 563 F. Supp. 3d 578, 589 (W.D. La. 2021), *aff'd* 49 F.4th 520 (5th Cir. 2022). Complaints that fail to plausibly plead antitrust injury are rightly dismissed. *See e.g., id.*

Straumann is not a lawful competitor in aligners, so it has no antitrust injury. Its infringement of Align's patents dooms its claims. It is well-recognized that antitrust injury is missing where patents stand between the would-be participant and the market alleged. As the Third Circuit has explained, "[t]hat a regulatory or legislative bar can break the chain of causation in an antitrust case is beyond fair dispute." *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 165 (3d Cir. 2017).[14]

As Align detailed, Straumann offers its ClearCorrect aligners in the U.S. by infringing Align's valid patents. (*See* Compl. ¶¶ 68-251). Straumann even concedes that Align's patents created barriers to offering aligners, (CC ¶ 171 ("intellectual property costs"))—unsurprising since "the essence of a patent grant is the right to exclude others from profiting by the patented invention."

___

[14] Numerous precedents agree. *See, e.g., Fresenius Kabi USA, LLC v. Par Sterile Prods., LLC*, 841 F. App'x 399, 403 (3d Cir. 2021) ("when a product infringes a valid patent, that patent blocks the plaintiff's entry into the market and precludes a claim that the defendant's allegedly anticompetitive conduct caused the plaintiff's injury."); *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1111 (6th Cir. 1989) (same); *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 846 (N.D. Ill. 2020), *aff'd sub nom. Mayor & City Council of Baltimore v. AbbVie*, 42 F.4th 709 (7th Cir. 2022) (earlier entry date in the but-for world was implausible due to "impassable" IP portfolio); *Kroger v. Sanofi-Aventis*, 701 F. Supp. 2d 938, 952-59 (S.D. Ohio 2010) (no antitrust injury alleged where entrant was enjoined in patent infringement suit).

*Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 215 (1980). Align obtaining and enforcing patents to protect its innovations is pro-competitive. This alone dooms Straumann's antitrust claims. *See In re Wellbutrin*, 868 F.3d at 165 (no antitrust injury where patent precluded a lawful launch of a product).

### III. STRAUMANN MUST ALLEGE FACTS TO SHOW COGNIZABLE EXCLUSIONARY CONDUCT; BUT FAILS TO DO SO

Straumann must allege cognizable exclusionary conduct with well-pled facts. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). "In the Fifth Circuit, proving anticompetitive conduct generally requires 'some sign that the monopolist engaged in behavior that – examined without reference to its effect on competitors – is economically irrational.'" *IBM Corp. v. LZLabs GmbH*, No. 6:22-CV-00299-DAE, 2023 WL 11916812 at *7 (W.D. Tex. Mar. 24, 2023) (citation omitted). The key factor is "the proffered business justification for the act." *Id.* (citation omitted).

Over time, "courts have been able to adapt the general inquiry of what is anticompetitive conduct into particular circumstances, that has allowed the creation of specific rules for common forms of alleged misconduct." *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Health. Servs.*, 994 F.3d 1166, 1173 (10th Cir. 2021). Straumann's allegations meet none of the applicable tests.

#### A. Straumann has not plausibly alleged illegal tying.

At the core of Straumann's antitrust claims is the previously rejected refusal to deal theory disguised as illegal tying. (CC ¶¶ 9, 58, 62, 173, 221(a), 232(a)). Tying within antitrust law is selling a product "only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from another supplier." *Medtronic AVE, Inc. v. Cordis Corp.,* No. 2-03-CV-212 (TJW), 2004 WL 7322043, at *3 (E.D. Tex. Mar. 18, 2004).

No allegations whatsoever suggest that Align *ever* conditioned the sale of Align products on purchase of an iTero scanner, or vice versa. Nowhere does Straumann allege that a dentist desiring to purchase an iTero digital scanner must also purchase cases of Invisalign.

Rather, Straumann pled the opposite—that customers can and do purchase just one or the other. Straumann concedes that iTero is used for scanning for restorative dentistry, (CC ¶¶ 46, 174 n.72 (contrasting digital scans with "restoration 'remakes'")) such as implants, abutments, and bridges. Despite Align offering iTero since 2011, (CC ¶ 64), **PVS submissions for Invisalign comprised the majority of Invisalign submissions on a quarterly basis until late 2016**.[15] Thus, it was the principal means of ordering Invisalign until very recently in the product lifecycle. Straumann also acknowledges that PVS molds can and are still used for submitting Invisalign cases. (*See* CC ¶ 174). The availability of PVS for submitting Invisalign demonstrates the absence of a tie between Invisalign and iTero. One does not need an iTero to order Invisalign, therefore there is no actual tie nor is it "functionally impossible" according to Straumann's own pleading. (CC ¶ 181).

The alleged inconvenience to export files from iTero scans for use with competing aligners (CC ¶¶ 86) or using PVS to order Invisalign cases (CC ¶¶ 174) do not amount to "coercion" or "exploitation" required for a tying claim. *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984), abrogated on other grounds by *Illinois Tool Works Inc. v. Indep. Ink, Inc.,* 547 U.S. 28, 31 (2006). Rather, Straumann conflates the benefits of Align's digital workflow, the popularity of Invisalign, and voluntary discounts with coercion. (*See* CC ¶¶ 46, 174 n.72 (scans sent for creating restorations and implants); CC ¶ 47 (mapping teeth position and modeling potential improvement);

---

[15] *See* RJN Ex. 11 at 12(showing North American Invisalign cases submitted digitally for 48.8% of cases in Q3 2016 and 51.3% of cases in Q4 2016).

CC ¶ 49 (efficiency, precision, and reduced labor for dentist and their staff). None of that is coercion within antitrust law. *See Felder's Collision Parts, Inc. v. All Star Advert. Agency, Inc.*, 777 F.3d 756, 760-61(5th Cir. 2015) ("Low prices benefit consumers and are usually the product of the competitive marketplace that the antitrust laws are aimed at promoting.") (citation omitted). And Straumann concedes another key point: ***patients decide*** whether to purchase a particular brand of aligner treatment or not. No dentist purchases Invisalign (or any other aligner) to hold in inventory—they are custom-made for a patient. (CC ¶¶ 162-163, 188). The decision to purchase treatment is still up to the patient. Straumann provides no explanation of how its purported "coercion" at the dentist level interacts with the patient decision.

Straumann likewise fails to plausibly allege a "tech tie" between iTero scanners and Invisalign. Straumann makes only conclusory references to "tech tying." (*See* CC ¶¶ 9, 58, 62, 173, 221). This is insufficient. Straumann would instead have to plausibly allege that its digital workflow, increasing simplicity and convenience, does not follow from its design. *See Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1330 (5th Cir. 1976) (violations limited to "the technological factor tying the hardware to the software has been designed . . . [to tie] the products, rather than to achieve some technologically beneficial result"), *abrogated on other grounds by Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977). But Straumann has conceded the benefits, as shown above.

In embellishing, Straumann twists itself into confusion. It purports to allege that the digital workflow—the simplicity of sending scans from the iTero scanner to configure Invisalign—locks dentists into purchasing only Invisalign. (CC ¶ 86). But Straumann also alleges that Align charges dentists to export scans, such as if they seek to use them for treating a patient with a competing aligner. (CC ¶ 13). Align can only charge a fee for exporting such scans if it happens. It would

make no sense for there to be a fee assigned for a feature that is never utilized. (*Cf.* CC ¶ 101).

Such allegations are then properly disregarded. "A court is neither obligated to reconcile nor accept

the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Salaiz v.*

*Pelican Investment Holdings Grp., LLC*, EP-22-CV-00029-FM, 2022 WL 17811482 at \*2 (W.D.

Tex. Nov. 10, 2022) (citation omitted).

### B.     Straumann has not alleged an unlawful refusal to deal.

Straumann retells the story of Align ending the contractual and technical interoperability

between competing scanner 3Shape TRIOS and Invisalign in the United States. Straumann also

alleges a vague "policy" of not extending Invisalign interoperability with other competing scanners.

Neither episode is exclusionary conduct within antitrust law.

"As a general rule, businesses are free to choose the parties with whom they will deal, as

well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel., Co. v. linkLine Commc'ns,*

*Inc.*, 555 U.S. 438, 448 (2009) (citation omitted). The very narrow exception is the case of *Aspen*

*Skiing Co. v. Aspen Highlands Skiing Corp*. 472 U.S. 585 (1985), further narrowed by *Trinko*, 540

U.S. at 409. In *Trinko*, the Court held that an actionable refusal to deal involves the "unilateral

termination of a voluntary (*and thus presumably profitable*) course of dealing [that] suggested a

willingness to forsake short-term profits to achieve an anticompetitive end," and the refusal to sell

a product sold to others in a retail market. *Id.* (emphasis in original). In *Aspen Skiing*, the defendant

offered no "efficiency justification whatever for its pattern of conduct." 472 U.S. at 608. Thus, for

liability, courts require that "the only conceivable rationale or purpose is to sacrifice short-term

benefits in order to obtain higher profits in the long run from the exclusion of competition." *FTC*

*v. Qualcomm, Inc.*, 969 F.3d 974, 993-94 (9th Cir. 2020) (internal quotation marks and citations

omitted); *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013) ("conduct must be

irrational but for its anticompetitive effect").

Straumann's allegations fail this demanding test. The Align press release, **to which Straumann points**, describes that Align had asserted 26 patents against 3Shape in four patent infringement suits and two Section 337 complaints with the U.S. International Trade Commission. (CC ¶ 70 n.28). As the press release states, Align terminated 3Shape-Invisalign interoperability in order to protect the validity of its patent claims against 3Shape and, by extension, its patents. 3Shape itself validated Align's rationale when 3Shape argued to the ITC that Align had ceded equitable defenses to 3Shape by delaying terminating interoperability between filing the patent infringement suits and stopping all Invisalign case submissions from TRIOS scanners.[16] Against this strong contemporaneous evidence, all publicly available, Straumann fails to plausibly allege that the 3Shape termination was irrational but for its anticompetitive effect. *See Novell*, 731 F.3d at 1075. Indeed, after years of litigation, this termination was the core of the anticompetitive allegations alleged against Align in the California Cases. In dismissing both class actions at summary judgment, the court observed: "contemporaneous evidence that Align had long been concerned about patent infringement by 3Shape," and "contemporaneous evidence that Align was concerned about the effect of the interoperability agreement on the litigation." RJN Ex. 1. at 3. Thus, even viewing the evidence in the light most favorable to the plaintiffs (*i.e.*, the consumers that are actually protected under antitrust laws), the court rejected a refusal-to-deal claim. *Id.* at 1.

Align declining to extend Invisalign interoperability to other competing scanners is no more actionable. Straumann concedes that other scanners were never interoperable with Invisalign, (CC ¶¶ 71), or were not terminated from interoperability. (CC ¶¶ 67). Thus, there was no prior course of dealing, as is require to impose liability under *Aspen. See Trinko,* 540 U.S. at 409.

---

[16] *Certain Color Intraoral Scanners and Related Hardware and Software*, Inv. No. 337-TA-1091, Doc. No. 658875 at 70 (U.S.I.T.C. Oct. 15, 2018).

### C. Straumann fails to allege actionable exclusive dealing.

Exclusive dealing in antitrust law is when a buyer agrees to purchase its requirements of a product exclusively from a particular seller and the plaintiff shows the competition foreclosed by the arrangement constitutes a substantial share of the relevant market, leaving opportunities for others to enter into or remain in that market significantly limited. *Gurrola v. Walgreen Co.*, EP-17-CV-00078-DCG, 2017 WL 6764324 at *4 & n.2 (W.D. Tex. Nov. 15, 2017). Straumann must show that long-term exclusive agreements are so widespread as to keep rivals below the scale needed to compete. *See id.*; *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961). Straumann fails.

The agreements alleged are not exclusive. Dentists retain the authority to direct treatment for their patients. *See* Pearl Decl. Ex. 1 at 1 ("███████████████████████████████████████████████████████████████████████████████."). This protects against possible intrusion into the treatment room by corporate entities, as prohibited by state corporate practice of medicine laws.[17] Rather, loyalty and volume discounts "promote[ ] competition on the merits" and benefit consumers. *Virgin Atl. Airways v. British Airways*, 257 F.3d 256, 265 (2d Cir. 2001). On a complete record, the Northern District of California examined the allegedly exclusionary contracts and wrote: "they cannot stand on their own." RJN. Ex. 1 at 5. Neither do the discrete terms and conditions (termed "anti-steering" provisions, CC ¶ 19) create exclusivity. The earlier dentist class action bears on this point. There, a Los Angeles dental practice among the name plaintiffs used its iTero scanner (with its purportedly closed system) to order competing Candid aligners.[18] Despite the same terms and conditions to which Straumann points, the dentist was even listed on Candid's online practice locator.

---

[17] *See supra*, note 8 (citing various state laws).
[18] RJN Ex. 12 at Interrog. No. 3.

But even assuming the agreements are treated as exclusive, Straumann fails to allege substantial foreclosure. Straumann points to at most nine agreements, (*see* CC ¶ 126), versus **more than 200,000 dentists in the U.S.** in 2023.[19] Straumann "has operated in the dental industry for over seventy years and is a global leader." (CC ¶ 139.) Its "investment in ClearCorrect brought experience, capital, and existing contacts within the dental industry." (CC ¶ 139.) It is not plausible that a handful of contracts held Straumann below the scale needed to compete. *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 404 (3d Cir. 2016) ("identification of a few dozen hospitals out of almost 6,000 in the United States" subject to the challenged practices "not enough to demonstrate 'substantial foreclosure'").

**D.    Align's enforcement of its patents and trademarks is Constitutionally protected.**

Straumann complains about Align's enforcement of its patents and trademarks. (*See* CC ¶ 54, 123 n.44). This is not cognizable as exclusionary conduct without allegations that the suits are sham litigation. *See E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).

**E.    Straumann's conduct allegations fail even if viewed together.**

Straumann alleges "inextricably intertwined conduct" and a "self-reinforcing cycle." (CC ¶ 58). But liability cannot be based on individually lawful, unilateral conduct—the Supreme Court has precluded an "an amalgamation" of multiple "meritless claim[s]" that would require courts "to act as central planners, identifying the proper price, quantity, and other terms of dealing." *linkLine*, 555 U.S. at 450, 452.[20] Indeed, this very type of "amalgamation" of these very same type of

_____

[19] RJN Ex. 13.

[20] *See also Eatoni Ergonomics, Inc. v. Rsch. in Motion Corp.*, 486 F. App'x 186, 191 (2d Cir. 2012) (affirming dismissal); *United States v. Microsoft Corp.*, 253 F.3d 34, 78 (D.C. Cir. 2001); *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1367 (Fed. Cir. 1999); *Am. Nat'l Mfg. v. Select Comfort Corp.*, ED CV 16-0582-GHK (JCx), 2016 U.S. Dist. LEXIS 193268 at *1 (C.D. Cal. Sept. 28, 2016).

allegations again Align already has been rejected by two separate judges. RJN Ex. 1 at 2; *3Shape TRIOS A/S v. Align Tech., Inc.*, No. 18-1332-LPS, ECF No. 59 at 20-23 (D. Del. Aug. 15, 2019) *adopted by* ECF No. 62 (D. Del. Sept. 26, 2019).

Straumann uses the term "leveraging" to describe the complementary relationship between Align's iTero scanner and Invisalign. That term once denoted a cognizable theory of exclusionary conduct, but the Supreme Court rejected monopoly leveraging as an actionable theory in the *Trinko* decision. *See* 540 U.S. at 415 n.4 ("***leveraging presupposes anticompetitive conduct***") (emphasis added). Erasing any doubt, the Court in *linkLine* also rejected as an actionable antitrust theory leveraging behavior in one market seen to affect a second, related market—there termed a "price squeeze." *linkLine*, 555 U.S. at 452-53, 457.









## V. CONCLUSION

For the foregoing reasons, Align respectfully requests that the Court dismiss Straumann's counterclaims.

DATED: September 13, 2024                    *Respectfully submitted,*

By: */s/ James M. Pearl*
    James M. Pearl

James M. Pearl (*pro hac vice*)
Emma Farrow (*pro hac vice*)
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, California 90067
Telephone:  (310) 620-5700
Facsimile:  1(310) 620-5899
jamespearl@paulhastings.com
emmafarrow@paulhastings.com

Michael F. Murray (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, DC 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
michaelmurray@paulhastings.com

Adam M. Reich (*pro hac vice*)
PAUL HASTINGS LLP
71 South Wacker Drive, 45th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
adamreich@paulhastings.com

Noah B. Pinegar (TX Bar No. 24074900)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
noahpinegar@paulhastings.com

Brian C. Nash (TX Bar No. 24051103)
Austin M. Schnell (TX Bar No. 24095985)
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
Telephone: (512) 617-0650

Facsimile: (737) 910-0730
bnash@mofo.com
aschnell@mofo.com

Daralyn J. Durie (*pro hac vi*ce)
Rich S.J. Hung (*pro hac vi*ce)
Forrest McClellen (*pro hac vi*ce)
Ian Bennett (*pro hac vi*ce)
Jenny Xin (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market St.
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
ddurie@mofo.com
rhung@mofo.com
fmcclellen@mofo.com
ibennett@mofo.com
jxin@mofo.com

Bradley S. Lui (*pro hac vi*ce)
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
blui@mofo.com

Malavika M. Fitzgerald (*pro hac vi*ce)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
mfitzgerald@mofo.com

*Attorneys for Plaintiff and Counterclaim*
*Defendant Align Technology, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email on September 13, 2024.

                             */s/ James M. Pearl*
                                James M. Pearl