UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC.,<br><br>       Plaintiff,<br><br>v.<br><br>CLEARCORRECT OPERATING, LLC, CLEARCORRECT HOLDINGS, INC., & INSTITUT STRAUMANN AG,<br><br>       Defendants. | Case No. 6:24-cv-00187-ADA-DTG<br><br>PATENT CASE<br><br>**JURY TRIAL DEMANDED** |
| CLEARCORRECT OPERATING, LLC, CLEARCORRECT HOLDINGS, INC., & STRAUMANN USA, LLC,<br><br>       Counterclaim-Plaintiffs,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>       Counterclaim-Defendant. | |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT ALIGN TECHNOLOGY'S
REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANTS'
<u>COUNTERCLAIMS UNDER FRCP 12(B)(6)</u>**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ................................................................................................ 1
II. STRAUMANN'S ANTITRUST CLAIMS ARE TIME-BARRED ................................ 1
III. STRAUMANN FAILS TO PLAUSIBLY ALLEGE ANTITRUST INJURY ................ 3
IV. STRAUMANN FAILS TO ALLEGE COGNIZABLE EXCLUSIONARY CONDUCT 4
   A. Straumann Has Not Plausibly Alleged Illegal Tying. .................................... 4
   B. Straumann Has Not Alleged An Unlawful Refusal To Deal. ....................... 6
   C. Straumann Fails To Allege Actionable Exclusive Dealing. .......................... 7
   D. Straumann's Meritless Claims Cannot Be Combined. .................................. 9

[redacted]
[redacted]
[redacted]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3Shape Trios A/S v. Align Tech., Inc.*,
 No. 18-1332-LPS, 2019 WL 3824209 (D. Del. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4686614 (D. Del. Sept. 26, 2019) ................... 9

*Abbott Lab'ys v. Teva Pharms. USA, Inc.*,
 432 F. Supp. 2d 408 (D. Del. 2006) .................................................................... 8

*Al George, Inc. v. Envirotech Corp.*,
 939 F.2d 1271 (5th Cir. 1991) .............................................................................. 1

*Allen v. Dairy Farmers of Am., Inc.*,
 748 F. Supp. 2d 323 (D. Vt. 2010) ....................................................................... 3

*Am. President Lines, LLC v. Matson, Inc.*,
 633 F. Supp. 3d 209 (D.D.C. 2022) ..................................................................... 8

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
 472 U.S. 585 (1985) ......................................................................................... 6, 7

*Bell v. Dow Chem. Co.*,
 847 F.2d 1179 (5th Cir. 1988) .............................................................................. 3

*Church & Dwight Co. v. Mayer Lab'ys, Inc.*,
 No. C-10-4429 EMC, 2011 WL 1225912 (N.D. Cal. Apr. 1, 2011) ........................ 9

*Fotobom Media, Inc. v. Google LLC*,
 719 F. Supp. 3d 33 (D.D.C. 2024) ....................................................................... 5

*FTC v. Syngenta Crop. Prot. AG*,
 711 F. Supp. 3d 545 (M.D.N.C. 2024) ................................................................. 8

*Int'l Bus. Machines Corp. v. LzLabs GmbH*,
 No. 6:22-CV-00299-DAE, 2023 WL 11916812 (W.D. Tex. Mar. 24, 2023) ............ 2

*Medtronic AVE, Inc. v. Cordis Corp.*,
 No. 2-03-CV-212 (TJW), 2004 WL 7322043 (E.D. Tex. Mar. 18, 2004) ................ 5

*Novell, Inc. v. Microsoft Corp.*,
 731 F.3d 1064 (10th Cir. 2013) ............................................................................ 7

*Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
 517 F.2d 117 (5th Cir. 1975) ............................................................................ 2, 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Pulse Network LLC v. Visa, Inc.*,
30 F. 4th 480 (5th Cir. 2022) ....................3

*Rx.com, Inc. v. Medco Health Sols., Inc.*,
No. 5:04-CV-227-DF, 2008 WL 11449354 (E.D. Tex. Mar. 11, 2008), *aff'd sub nom. Rx.com v. Medco Health Sols., Inc.*, 322 F. App'x 394 (5th Cir. 2009) ....................1, 3

*Shamrock Mktg., Inc. v. Bridgestone Bandag, LLC*,
775 F. Supp. 2d 972 (W.D. Ky. 2011) ....................5

*Simon & Simon, PC v. Align Tech., Inc.*,
No. 20-CV-03754-VC, 2024 WL 710623 (N.D. Cal. Feb. 21, 2024) ....................4

*In re Surescripts Antitrust Litig.*,
608 F. Supp. 3d 629 (N.D. Ill. 2022) ....................8

*Texas Grain Storage, Inc. v. Monsanto Co.*,
No. SA-07-CA-673-OG, 2008 WL 2570530 (W.D. Tex. June 26, 2008) ....................2

*United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*,
892 F. Supp. 890 (W.D. Tex. 1995), *aff'd*, 89 F.3d 233 (5th Cir. 1996) ....................2, 3

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001) ....................8

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) ....................1, 5, 6

*W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*,
65 F. Supp. 2d 1052 (N.D. Cal. 1998), *aff'd*, 190 F.3d 974 (9th Cir. 1999) ....................8

*ZF Meritor, LLC v. Eaton Corp.*,
696 F.3d 254 (3d Cir. 2012) ....................7, 8

*Zircore, LLC v. Institut Straumann AG*,
No. 15-cv-1557, ECF No. 139 ....................10

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (CCH) 338 (Wolters Kluwer, 2024) ....................4

## I. INTRODUCTION

Straumann's opposition does not and cannot change that its claims, at their core, depend on an alleged refusal to deal with scanner competitors that not only occurred **in 2017** (ECF No. 56 (hereinafter "CC") ¶¶ 69-70), but are disfavored by the Supreme Court, *see Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004), and were rejected by the California federal court that already considered these claims, RJN Ex. 1. Faced with this headwind, Straumann first stakes out a position that would eliminate any statute of limitations in alleged monopolization cases. Straumann next tries to repackage Align's decision to end interoperability as claims for tying and *de facto* exclusive dealing. See ECF No. 113 (hereinafter "Opp.") at 18. But antitrust law sets out precise and demanding tests for those sorts of claims, and Straumann does not meet them. As a last gasp, Straumann argues that it can cobble together a plausible claim based on entirely lawful actions, but that is not the law, for it would undermine completely the Supreme Court's recent direction that antitrust law must provide clear guidance to companies as to what they can and cannot do.

## II. STRAUMANN'S ANTITRUST CLAIMS ARE TIME-BARRED

Straumann does not contest that it fails to allege new conduct by Align during the limitations period. Instead, Straumann asserts that Align's conduct has continued "on an ongoing basis." *See* Opp. 5. But Straumann's allegations that Align continues to decline scans from rivals are nothing more than inertial effects of a 2017 decision, which courts routinely hold do not restart the statute of limitations. *E.g.*, *Rx.com, Inc. v. Medco Health Sols., Inc.*, 2008 WL 11449354, at *7-8 (E.D. Tex. Mar. 11, 2008), *aff'd sub nom. Rx.com v. Medco Health Sols., Inc.*, 322 F. App'x 394 (5th Cir. 2009) (statute of limitations not tolled by repeatedly declining to fill prescriptions pursuant to defendant's previous refusal to admit plaintiff to its subscription fulfillment network); *Al George, Inc. v. Envirotech Corp.*, 939 F.2d 1271, 1274-75 (5th Cir. 1991).

Straumann next relies on cases involving continuing conspiracies to argue for the application of an exception to the statute of limitations, but Straumann has not alleged any conspiracy. *See Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 127 (5th Cir. 1975) (continuing violation exception applies "in the context of a continuing conspiracy to violate the antitrust laws"). In the absence of a conspiracy, a plaintiff must allege that a defendant committed an act during the limitations period "that by its very nature is a continuing antitrust violation." *See e.g.*, *United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*, 892 F. Supp. 890, 912 (W.D. Tex. 1995), *aff'd*, 89 F.3d 233 (5th Cir. 1996). Contrary to Straumann's protests, "continuing conduct within the limitations period which merely furthers the initial [alleged] antitrust violation does not prevent the running of the statute of limitations." *Id. See also Poster Exch.*, 517 F.2d at 127-28 ("unabated inertial consequences" are not further violations). Straumann has not alleged, as required, "an injurious act ***separate from the prior alleged misconduct***," which actually occurred in the limitations period. *United Farmers*, 892 F. Supp. at 912 (emphasis added).

The other cases cited by Straumann are also distinguishable – they identify specific, cognizable anticompetitive conduct occurring *during* the statute of limitations period. In *Int'l Bus. Machines Corp. v. LzLabs GmbH*, 2023 WL 11916812, at *4 n.1 (W.D. Tex. Mar. 24, 2023), the plaintiff provided the month and year of several injurious acts that occurred within the four-year statute of limitations. In contrast, Straumann does not allege any injurious acts that occurred within the limitations period. In *Texas Grain Storage, Inc. v. Monsanto Co.*, 2008 WL 2570530, at *5-6 (W.D. Tex. June 26, 2008), the complaint referenced "alleged misconduct during the limitations period," such as entering into supply agreements with additional competitors, a recent acquisition, and plaintiff's purchase of products during the class period. Straumann's bare assertions of "an ongoing monopolistic scheme," without more, do not come close to these cases.

Even under Straumann's inapposite continuing conspiracy authority, a plaintiff must allege "a specific act or word of refusal during the limitations period" that contributed to the conspiracy. *Poster Exch., Inc.*, 517 F.2d at 128-29.[1] *See also Rx.com*, 322 F. App'x at 397 (similar). In *Poster Exchange Inc.*, the Fifth Circuit held that plaintiff failed to demonstrate that it had been refused access to supplies within the limitations period and remanded the case to the district court to make the "critical" determination "whether there was, during the period sued upon, a mere absence of dealing, or whether there was some specific act or word precluding [plaintiff] from obtaining supplies." 517 F.2d at 128. Despite these clear warnings, Straumann has not identified a specific act that constitutes a continuing violation.

As a final effort, Straumann points to an alleged 2023 *renewal* of Align's agreement with Heartland Dental, LLC. *See* Opp. 5. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Pearl Decl. Ex. 1. And a renewal is nothing more than a continuation of earlier acts. *See e.g.*, *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 350 (D. Vt. 2010); *United Farmers*, 892 F. Supp. at 912; *Rx.com, Inc.*, 2008 WL 11449354 at, *7-8. Accordingly, the renewal cannot restart the statute of limitations either.

## III. STRAUMANN FAILS TO PLAUSIBLY ALLEGE ANTITRUST INJURY

Straumann does not allege antitrust injury adequately because it is not a lawful competitor in light of its infringement. *See* ECF No. 96 (hereinafter "Br.") at 8 & n.14 (collecting cases). Against that intuitive argument, Straumann first offers the distraction that it seeks lost profits. Opp. 6. But that has nothing to do with Align's argument about patent violations, as evidenced by the case Straumann cites, which does not involve intellectual property. Opp. 6 (citing *Pulse Network*

---

[1] *Bell v. Dow Chem. Co.*, 847 F.2d 1179, 1187 (5th Cir. 1988) is inapposite: the Fifth Circuit affirmed judgment for the *defendants* on other grounds and noted the district court did not sufficiently analyze the limitations issue.

*LLC v. Visa, Inc.*, 30 F. 4th 480, 491 (5th Cir. 2022)). Next, Straumann tries to contest the significant authority supporting Align's argument that patent infringers do not suffer antitrust injury with the slender reed of an unpublished out-of-circuit district court case. But "a plaintiff cannot be injured in fact by private conduct excluding it from the market when a statute prevents the plaintiff from entering that market in any event." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (CCH) 338 (Wolters Kluwer, 2024). Finally, Straumann's retort that Align is asking the court to adjudicate its patent claims now, (*cf.* Opp. 6), is simply wrong. Straumann has the burden to plausibly plead antitrust injury arising from something other than Align's patent right enforcement and lawful, vigorous competition through discounts and product innovation. *See* Br. 7-9.[2]

## IV. STRAUMANN FAILS TO ALLEGE COGNIZABLE EXCLUSIONARY CONDUCT

### A. Straumann Has Not Plausibly Alleged Illegal Tying.

Straumann concedes it did not allege that access to Invisalign is expressly conditioned on the purchase of an iTero. Straumann instead asks the court to "infer" a tie based on its contention that PVS is no longer an economically viable alternative. *See* Opp. 16-17. But Straumann does not contest that, around the time Align made its decision to terminate interoperability with 3Shape, PVS accounted for the majority (or near majority) of impressions submitted to Invisalign. *See* Br. 10; RJN Ex. 11 at 12; *cf.* Opp. 17. PVS was unquestionably a viable alternative to digital scans when Align enacted the alleged policy, and it remains so today. Following Straumann's logic, the only way to "untie" Invisalign and iTero would be to force Align to deal with scanner competitors

---

[2] Straumann unironically cites two decisions from the Northern District of California while simultaneously ignoring that court already determined Align had not engaged in exclusionary conduct after considering the same behavior Straumann seeks to recycle in its counterclaims. *See Simon & Simon, PC v. Align Tech., Inc.*, No. 20-CV-03754-VC, 2024 WL 710623 (N.D. Cal. Feb. 21, 2024).

and start allowing rivals to submit Invisalign orders. That shows that Straumann's tying claim is really a refusal to deal claim – a claim that the Supreme Court has said is on "the outer boundary of § 2 liability." *Trinko*, 540 U.S. at 409.

Further, Straumann has not plausibly alleged force or coercion, which is an "essential characteristic of an invalid tying arrangement" but that Straumann omits in its discussion. *See* Br. 10, 16 n.14. Straumann's conclusory allegations of coercion fail to supply sufficient factual allegations to show customers are actually compelled to purchase an iTero. Straumann indeed concedes that dentists may order Invisalign without an iTero. *See* Opp. 13, 17. The cases that Straumann cites only reinforce this deficiency. Each involves specific allegations of coercion that the court credited before inferring a tying relationship. In *Medtronic AVE, Inc. v. Cordis Corp.*, 2004 WL 7322043, at *4 (E.D. Tex. Mar. 18, 2004), the court found the complaint sufficiently alleged coercion because "the products were not separately available for all practical purposes" due to high demand that exceeded supply, and defendant prioritized supplying customers that purchased both products. Unlike *Medtronic*, the complaint lacks any allegations that customers were compelled to purchase an iTero or else their Invisalign orders would be relegated to the back of the queue. In *Shamrock Mktg., Inc. v. Bridgestone Bandag, LLC*, 775 F. Supp. 2d 972, 980 (W.D. Ky. 2011), the court inferred a tying arrangement when defendant provided a financial incentive to induce purchases of the tied product, and plaintiff alleged a 90% decline in its sales since implementation of that incentive. *Shamrock* cautioned that a plaintiff must meet "a very high bar," and "Courts should only in the rarest of circumstances and under the most coercive of conditions infer a tying arrangement." *Id.* at 981. Here, Straumann has not alleged that Align offered an inducement so coercive that it resulted in a near complete decline in competitive sales. In *Fotobom Media, Inc. v. Google LLC*, 719 F. Supp. 3d 33, 51 (D.D.C. 2024), the complaint

alleged a "coercive effect" because, if a manufacturer pre-loaded a non-Google search access point to a device, the manufacturer "must go through a longer certification process that is 'purposefully opaque,'" and can be failed "without a clear explanation as to why or how to resolve the issue." Here, Straumann fails to allege that customers are left without other choices, and indeed concedes it is possible for customers to order Invisalign with PVS and purchase competing aligners using the iTero. *See* Br. 10; Opp. 12.

### B. Straumann Has Not Alleged An Unlawful Refusal To Deal.

Straumann attempts an end-run around the legal framework applicable to an alleged refusal to deal by arguing it applies only to a refusal to deal with *rivals* and characterizing its own theory as a refusal to deal with *customers*. *See* Opp. 18. But, as discussed above, Straumann's customer tying theory is entirely premised on Align's alleged policy of refusing to interoperate with scanner competitors. (*See* CC ¶ 9). The Supreme Court's *Aspen Skiing* refusal to deal framework, therefore, plainly applies to Straumann's claims.

Straumann cannot survive *Aspen Skiing* scrutiny. *First*, a plaintiff must allege that, among other things, before the defendant refused its competitors access, the defendant "voluntarily engaged in a course of dealing[.]" *Trinko*, 540 U.S. at 409. Interoperability is not an off-the-shelf retail product offered by Align. *Second,* Straumann has not met its burden to plausibly allege that Align had no "efficiency justification whatever for its pattern of conduct," as is required to state an actionable refusal to deal. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 608 (1985). Straumann nakedly asserts that Align had "no valid business justification" for terminating its agreement with 3Shape. *See* Opp. 18. But Straumann does not deny, because it can't, that Align terminated to protect its intellectual property enforcement rights. Straumann's counterclaims incorporate a press release relied on in the Northern District of California summary judgment ruling finding Align legitimately terminated its relationship with 3Shape because of

6

concerns that continuing to interoperate would subject Align to equitable defenses that threatened its patent rights. *See* Br. 13 (citing CC ¶ 70 n.28); RJN Exs. 1, 7.[3] These judicially noticeable facts are properly before the Court because they cannot be reasonably disputed and because they are referred to in the counterclaims. Given Straumann's failure to allege that Align's already judicially-accepted intellectual property business justification was not valid, Straumann has not met its burden under *Aspen Skiing*.

### C. Straumann Fails To Allege Actionable Exclusive Dealing.

Straumann groups together a handful of non-exclusive contracts and argues that the effect is "*de facto* exclusivity." Making its *de facto* exclusivity claim even flimsier, Straumann concedes it has alleged only partial or "near" exclusivity. "'[P]artial' exclusive dealing is **rarely** a valid antitrust theory," reserved for exceptional cases based on actual market realities. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 283 (3d Cir. 2012) (emphasis added). No case has held that *de facto* partial exclusivity based on discount programs is enough to state a claim. Straumann's essential claim is that consumers prefer Align but are allowed to and sometimes do pick competitor products.

Straumann next raises abstract arguments about *de facto* exclusivity allegedly imposed by "loyalty pricing schemes" untethered to any specific allegations about any particular Align discount programs, contracts, or specific terms that Straumann alleges to be anticompetitive. *See* Opp. 13-15. Straumann relies on cases relating to requirements contracts, which have no bearing

---

[3] Straumann alleged that there is "no technological justification" for Align's policy of refusing scans from third-party scanners (CC ¶ 76), but that is a red herring, because Align is not required to show a "technological justification" for its decision to terminate interoperability. Align was entitled to take such action to protect its intellectual property rights. *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013) (to be actionable, "conduct must be irrational but for its anticompetitive effect"). Straumann does not allege that Align's patent suit against 3Shape was sham litigation, nor could it. Straumann indeed confirmed its "antitrust claims do not arise from Align's litigation tactics." *See* Opp. 19, n. 19.

here.[4] Straumann does not allege that Align requires customers to purchase a specified percentage of their total requirements to qualify for a discount, only that Align offers discounts for volume commitments, but such agreements are not exclusive. Opp. 13; *see W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*, 65 F. Supp. 2d 1052, 1065 (N.D. Cal. 1998), *aff'd*, 190 F.3d 974 (9th Cir. 1999) (contracts that "require[d] the customer to maintain certain levels of volume in order to receive agreed pricing discounts" were not "in fact exclusive").

Straumann also claims that *de facto* exclusive dealing is imposed through iTero's purportedly "anticompetitive product design," which allegedly deters orders of competing aligners. Opp. 12-13. Straumann cites cases relating to product innovation, *e.g.*, *Abbott Lab'ys v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 422 (D. Del. 2006), but it has not alleged that Align redesigned its product during the limitations period. Rather, Straumann asserts that the process to order a competing aligner with an iTero is cumbersome merely because a doctor must choose the appropriate scan setting, wait for the scan to download, navigate to it in the cloud, and export the file. CC ¶¶ 88-89. For this novel theory, Straumann turns to decisions with dramatically different facts. *See* Opp. 12-13. For example, in *United States v. Microsoft Corp.*, 253 F.3d 34, 60, 64 (D.C. Cir. 2001), the district court found that Microsoft had imposed license restrictions that prevented OEMs from distributing rival browsers and used technical measures so that any attempt to delete Internet Explorer would corrupt the operating system. In contrast, here, Straumann does not allege that Align has entered into exclusive arrangements with scanner manufacturers that would prevent third-party scanners from interoperating with clear aligners rivals, or that Align implemented any

---

[4] *E.g.*, *Am. President Lines, LLC v. Matson, Inc.*, 633 F. Supp. 3d 209, 228-29 (D.D.C. 2022) (90% of requirements); *FTC v. Syngenta Crop. Prot. AG*, 711 F. Supp. 3d 545, 559 (M.D.N.C. 2024) (85-95% of requirements); *ZF Meritor, LLC*, 696 F.3d at 284 (roughly 90% of requirements); *In re Surescripts Antitrust Litig.*, 608 F. Supp. 3d 629, 637 (N.D. Ill. 2022) (100%).

design measures that would destroy iTero's functionality if a user exports a scan.

While Straumann makes conclusory statements about the "60%" foreclosure of competition, it does not allege that it or any other competitors have been unable to achieve growth or profitability in the market. *See* Opp. 16. Nor can it in light of the ever-increasing number of competing aligner companies to whom it sells its infringing material. Straumann has not adequately alleged that Align's digital workflow, contracts, or discount programs hold competitors, including global companies like Straumann and Dentsply, below the scale needed to compete.

### D. Straumann's Meritless Claims Cannot Be Combined.

Because Straumann cannot adequately allege any instance of independently anticompetitive conduct, it instead asks the Court to cobble together an antitrust violation from the "combined effect" of Align's alleged market behavior. *Id.* at 9-10; *cf.* Br. 15. Straumann is incorrect that *linkLine* and its progeny have been limited to so-called "price-squeeze cases." *See* Opp. 10 n.8. Nothing in *linkLine*'s holding suggests it is so limited – and the case has been interpreted broadly. *See 3Shape Trios A/S v. Align Tech., Inc*., 2019 WL 3824209, at *11 (D. Del. Aug. 15, 2019) (citing *linkLine* and holding generally that "an antitrust plaintiff" must plead "at least one" instance of unlawful anticompetitive conduct "in order to proceed under a theory that the combined conduct is anticompetitive"), *report and recommendation adopted,* 2019 WL 4686614 (D. Del. Sept. 26, 2019). Straumann relies on dicta from the *Hill-Rom* case, but the authority underlying the dicta says that *linkLine* applies to **any** case involving "some form of predatory pricing[.]" *See Church & Dwight Co. v. Mayer Lab'ys, Inc.*, 2011 WL 1225912, at *9 (N.D. Cal. Apr. 1, 2011). The case at bar involves such allegations (CC ¶¶ 15-16), and thus falls squarely within *linkLine*'s ambit.

- ███████████████████████████████████████
  - ███████████████████████████████████

9



DATED: November 6, 2024       *Respectfully submitted,*

By: */s/ James M. Pearl*
       James M. Pearl

James M. Pearl (*pro hac vice*)
Emma Farrow (*pro hac vice*)
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, California 90067
Telephone: (310) 620-5700
Facsimile:  (310) 620-5899
jamespearl@paulhastings.com
emmafarrow@paulhastings.com

Thomas A. Counts (*pro hac vice*)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
tomcounts@paulhastings.com

Michael F. Murray (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, DC 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
michaelmurray@paulhastings.com

Adam M. Reich (*pro hac vice*)
PAUL HASTINGS LLP
71 South Wacker Drive, 45th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
adamreich@paulhastings.com

Brian C. Nash (TX Bar No. 24051103)
Austin M. Schnell (TX Bar No. 24095985)
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, Texas 78701
Telephone: (512) 617-0650
Facsimile: (737) 910-0730

bnash@mofo.com
aschnell@mofo.com

Daralyn J. Durie (*pro hac vice*)
Rich S.J. Hung (*pro hac vice*)
Forrest McClellen (*pro hac vice*)
Ian Bennett (*pro hac vice*)
Jenny Xin (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market St.
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
ddurie@mofo.com
rhung@mofo.com
fmcclellen@mofo.com
ibennett@mofo.com
jxin@mofo.com

Bradley S. Lui (*pro hac vice*)
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
blui@mofo.com

Amanda A. Potter (*pro hac vice*)
Malavika M. Fitzgerald (*pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
apotter@mofo.com
mfitzgerald@mofo.com

*Attorneys for Plaintiff and Counterclaim Defendant Align Technology, Inc.*

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail on November 6, 2024.

                                                  */s/ James M. Pearl*
                                                    James M. Pearl