# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

ALIGN TECHNOLOGY, INC.,

        Plaintiff,

v.

CLEARCORRECT OPERATING, LLC,
CLEARCORRECT HOLDINGS, INC., &
INSTITUT STRAUMANN AG,

        Defendants.

---

CLEARCORRECT OPERATING, LLC,
CLEARCORRECT HOLDINGS, INC., &
STRAUMANN USA, LLC,

        Counterclaim-Plaintiffs,

v.

ALIGN TECHNOLOGY, INC.,

        Counterclaim-Defendant.

Case No. 6:24-cv-00187-ADA-DTG

PATENT CASE

**JURY TRIAL DEMANDED**

**ALIGN TECHNOLOGY, INC.'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I. The "Treatment Planning" Patents.................................................................1

    A. "through at least one of staggering and roundtripping of at least one dental object" ('444 patent, cls. 1-14) ............................................................1

    B. "optimal number of stages for the order of movement of the dental objects" ('444 patent, cls. 5, 19, 33) .......................................................3

    C. Pattern Terms ......................................................................................6

        1. ClearCorrect Has Not Shown The Inventors Acted As Lexicographers ..........6

        2. ClearCorrect Excludes Preferred Embodiments .................................7

        3. ClearCorrect's Other Arguments Fail .............................................9

    D. Means-Plus-Function Terms ...............................................................10

        1. The Form of Align's Constructions Is Proper...................................10

        2. The '444 Patent's Specification Discloses Adequate Structure for Each Challenged Means-Plus-Function Limitation ...................................10

II. The Scanner Patent ........................................................................................18

    A. "replace [replacing] at least a portion of the [removed] surface portion of the model [. . .] using the received second scan data [at least a portion of the second scan data]" ('936 patent cls. 1-20) .......................................18

    B. "second scan data of the patient's teeth" ('936 patent cls. 17-20)........................19

III. The Court Should Disregard ClearCorrect's "APPENDIX A" .........................................20

**TABLE OF AUTHORITIES**

**Cases**                                                                **Page(s)**

*3rd Eye Surveillance, LLC v. United States*,
   140 Fed. Cl. 39 (Fed. Cl. 2018) ...................................................................2

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
   521 F.3d 1328 (Fed. Cir. 2008)..............................................13, 16, 17

*Atmel Corp. v. Info. Storage Devices*,
   198 F.3d 1374 (Fed. Cir. 1999).................................................................10

*BlackBoard, Inc. v. Desire2Learn, Inc.*,
   574 F.3d 1371 (Fed. Cir. 2009).................................................................13

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co.*,
   224 F.3d 1308 (Fed. Cir. 2000)................................................................18

*Ergo Licensing, LLC v. CareFusion 303 Inc.*,
   673 F.3d 1361 (Fed. Cir. 2012).................................................................13

*Function Media, L.L.C. v. Google, Inc.*,
   708 F.3d 1310 (Fed. Cir. 2013).................................................................11

*Galderma Labs. L.P., v. Amneal Pharmas. LLC*,
   806 F. App'x 1007 (Fed. Cir. 2020) ...........................................................3

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*
   732 F.3d 1376 (Fed. Cir. 2013).................................................................12

*InfoGation Corp v. ZTE Corp.*,
   No. 16-cv-01901, 2017 WL 1821402 (S.D. Cal. May 5, 2017) ................6

*Karmagreen, LLC v. MRSS Inc.*,
   No. 21-cv-674, 2021 WL 8268144 (N.D. Ga. Dec. 8, 2021) ...................7

*In re Katz Interactive Call Processing Patent Litigation*,
   639 F.3d 1303 (2011) ...............................................................................11

*Markman v. Westview Instr.*,
   52 F.3d 967 (Fed. Cir. 1995) (*en banc*) ..................................................18

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005)..................................................................1

*Nautilus, Inc. v. Biosign Instrs., Inc.*,
   572 U.S. 898 (2014)..................................................................................10

*Radware Ltd. v. A10 Networks, Inc.*,
No. 13-cv-2021-RMW, 2014 WL 1572644 (N.D. Cal. Apr. 18, 2014) .............................1, 2

*RideApp Inc. v. Lyft, Inc.*,
845 F. App'x 959, 961 (Fed. Cir. 2021) ...................................................................15

*Salazar v. Procter & Gamble Co.*,
414 F.3d 1342 (Fed. Cir. 2005)...............................................................................20

*Sisvel Int'l S.A. v. Sierra Wireless, Inc.*,
82 F.4th 1355 (Fed. Cir. 2023) ....................................................................... *passim*

*Sonix Tech Co. Ltd. v. Publications Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017).............................................................................. 5-6

*Thorner v. Sony Computer Enter. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)...............................................................................19

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
659 F.3d 1376 (Fed. Cir. 2011)...............................................................................12

*Virtru Corp. v. Microsoft Corp.*,
No. 23-cv-872, 2023 WL 11799421 (W.D. Tex. Jan. 22, 2023) ................................ 14, 15

**Other Authorities**

37 C.F.R. § 1.104(e)................................................................................................23

# TABLE OF ABBREVIATIONS

| Term | Abbreviation |
|---|---|
| Plaintiff and Counterclaim-Defendant Align Technology, Inc. | "Align" |
| Defendants and/or Counterclaim-Plaintiff's ClearCorrect Operating LLC, ClearCorrect Holdings, Inc., Straumann USA LLC, and Institut Straumann AG | "ClearCorrect" |
| U.S. Patent No. 8,038,444 | "'444 patent" or "'444 pat." |
| U.S. Patent No. 11,369,456 | "'456 patent" or "'456 pat." |
| U.S. Patent No. 10,791,936 | "'936 patent" or "'936 pat." |
| ECF No. 1 | "Compl." |
| ECF No. 121 | "Br." |
| ECF No. 136 | "Opp." |
| ECF No. 138 | "Reply" |
| ECF No. 136-2 | "Kuo Decl." |
| ECF No. 136-3 | "Singh Decl." |

# I.    THE "TREATMENT PLANNING" PATENTS

## A.    "through at least one of staggering and roundtripping of at least one dental object" ('444 patent, cls. 1-14)

ClearCorrect's Reply does not meaningfully grapple with Align's arguments and case law.  Instead, ClearCorrect repeats the same flawed arguments from its Opening: that the plain claim language is "clearly conjunctive;" that *SuperGuide* mandates a conjunctive construction here; and that prosecution disclaimer and a desire to avoid "gamesmanship" bar a disjunctive construction.  Reply at 1-2.  Each argument fails.

***First,*** ClearCorrect erroneously argues that the "plain language of the claim is "clearly conjunctive:  Align used 'and,' not 'or.'"  *Id.* at 1.  "And" is not always read conjunctively.  Read in context with the rest of the claim language—context that ClearCorrect ignores—"and" is disjunctive.  The claim language requires "***at least one of***" two possible actions.  Reading "and" conjunctively would impermissibly make "***at least one of***" superfluous.  *Radware Ltd. v. A10 Networks, Inc.*, No. 13-cv-2021-RMW, 2014 WL 1572644 at *7 (N.D. Cal. Apr. 18, 2014) (construing "at least one of . . . and" in two part list disjunctively).  As *Radware* explains:

> [T]he phrase 'at least one of' … is only used to select between two parameters separated by 'and.'  The inventors used 'at least one of' hops and latency as a shorthand for hops, or latency, or hops and latency.  If the inventors had limited their claims to only 'hops and latency,' the phrase *'at least one of' would be unnecessary: the claim could simply read 'wherein said network controller determines proximities based on hops and latency*.'

*Id.* (emphasis added); *see also Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

***Second,*** ClearCorrect admits that the specification permits claims directed to staggering, roundtripping, or both.  The specification thus also is consistent with a disjunctive interpretation.

***Third***, *SuperGuide* is not controlling for the same reasons.  Although the claim in

*SuperGuide* did use the phrase "at least one of . . . and," the similarity ends there.  As Align has already explained, the *SuperGuide* claim involved a multi-part list.  Opp. at 4.  Here, the claim has only two options, making the "plain grammar" of "and" disjunctive.  Multiple courts have applied this same logic to distinguish *SuperGuide* and construe "at least one of . . . and" claims disjunctively.  *E.g., 3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39, 68-69 (Fed. Cl. 2018); *Radware*, 2014 WL 1572644, at *7.

ClearCorrect does not substantively or meaningfully address the differences between *SuperGuide*'s and Align's claims or Align's case law.  Sidestepping the issues, ClearCorrect instead points to the Federal Circuit's observation in *Superguide* that the specification there did not "rebut" the presumption that the "patentee intended the plain and ordinary meaning."  Reply at 1-2.  That observation in *SuperGuide* is irrelevant here, where the plain meaning of "and" in Align's claim is disjunctive.  Similarly, ClearCorrect's protests that opinions distinguishing *SuperGuide* were from "lower courts" does not address the facts or logic in those cases.

**Fourth**, whether ClearCorrect was entitled to advance a "broadest reasonable construction" position before the PTAB does not matter to the outcome here.  What does matter is that ClearCorrect still does not identify a reason to read *SuperGuide* differently, whether under the broadest reasonable construction or *Philips* standard.

**Fifth,** ClearCorrect's assertion of prosecution disclaimer still rings hollow.  Besides *Power Integrations*, ClearCorrect makes no attempt to distinguish Align's multiple other cases holding that prosecution disclaimer does not apply where the Patent Office rejects the patentee's argument.  Opp. at 5 (citing *Motiva Patents, LLC v. Sony Corp.*, No. 18-cv-180, 2019 WL 3933670 at *19-20 (E.D. Tex. Aug. 20, 2019); *Vertical Tank, Inc. v. BakerCorp*, No. 18-cv-145, 2019 WL 2207668 at *11-12 (E.D. Cal. May 22, 2019).)  ClearCorrect argues only that declining

to apply prosecution disclaimer would be "in tension with" Federal Circuit case law, but that is obviously untrue. *See Galderma Labs. L.P., v. Amneal Pharmas. LLC*, 806 F. App'x 1007, 1010-11 (Fed. Cir. 2020) (finding disclaimer inapplicable to claim construction arguments that the Patent Office rejected in IPR).

*Finally*, ClearCorrect's accusations of "gamesmanship" are just that—accusations. Although Align did advance an alternative construction before the Patent Office, the Patent Office *rejected* that interpretation.

### B.    "optimal number of stages for the order of movement of the dental objects" ('444 patent, cls. 5, 19, 33)

Align does not "doubl[e] down" on its "errors" by relying on exemplary embodiments to explain the meaning of the phrase "optimal number of stages for the order of movement of the dental objects." Nor does Align improperly import dependent claim limitations into independent claims to construe that phrase. ClearCorrect's indefiniteness arguments to the contrary misinterpret the claims and specification.[1]

The specification explains that "optimal number of stages" is "the largest number of the minimum stages needed to place the patient's teeth in their final, desired position." Although ClearCorrect notes that the phrase "in another exemplary embodiment" precedes this language, '444 pat., 5:9-12, that does not render this embodiment irrelevant. This passage is the *only* place in which the specification states what an "optimal number of stages" "*is.*" The skilled artisan therefore would refer to that passage to understand the phrase's meaning. By doing so, the skilled artisan would conclude that "optimal number of stages" mean the "largest number of the minimum stages needed to place the patient's teeth in their final, desired position."

---

[1] ClearCorrect says Align did not "rebut the Examiner's detailed argument" on the meaning of "optimal." Reply at n. 3. Not so. It did so in its Responsive brief and does again here.

ClearCorrect's Chief Technology Officer's testimony confirms that understanding. That testimony is not limited to claim 6 of the '444 patent, as ClearCorrect contends. Its CTO's testimony was that "optimal number of stages" is "***necessarily***" the "largest of the minimum number of stages. Ex. 5 at 61-62 (emphasis added).[2] This is because "additional unneeded stages would not involve any tooth movements and ***would not make any sense***" and "using a smaller number of teeth would . . . result in an ***incomplete*** orthodontic treatment plan." *Id*. If the "optimal number of stages" is "necessarily" the largest of the minimum number of stages, then that is true in all instances where the term is used—not just claim 6.

ClearCorrect cannot avoid the specification's disclosures by characterizing them as "mere[]" "exemplary embodiment[s]."[3] Align is unaware of authority barring reliance on exemplary embodiments to rebut indefiniteness, and ClearCorrect points to none. If its real complaint is that the claim is broad enough to encompass methods not described in the specification, that potentially relates to written description or enablement—not indefiniteness.

ClearCorrect's contention that Align tries to "import the requirement that the computer select 'the largest of the minimum number of stages'" also is wrong. Claims 5, 19, and 33 each recite determining an "optimal number of stages for the order of movement of the dental

---

[2] Lettered exhibits refer to those attached to Jerry Salvatore's declaration (ECF No. 121-1). Numbered exhibits refer to those attached to Forrest McClellen's declaration (ECF No. 136-1).
[3] Dr. Kuo's statement that, "once a treatment plan has been created, the 'largest of the minimum number' of stages can then be objectively identified" does not "miss[] the whole point." In his declaration, Dr. Kuo explains that the factors used to develop a treatment plan are objective. Kuo Decl. ¶¶ 28-29. Once the plan has been created, the "largest of the minimum number" of stages can be selected. *Id., see also* ¶¶ 35-37. Because the factors used to develop a treatment plan are objective, and because the "largest of the minimum number" of stages in a treatment plan can be selected, it is irrelevant that some orthodontists may "give different answers about the optimal number of stages for moving teeth when faced with the same patients." For any patient, if a treatment plan has been created, and if the "largest of the minimum number" of stages has been selected for that patient, an "optimal number of stages" has been determined.

objects." As ClearCorrect admits, dependent claims 6, 20, and 34 each provide a "way" to "determine the optimal number of stages" that "involves," in every instance, "selecting the largest of the minimum number of stages." Reply at 5. That *every* dependent claim recites "selecting the largest of the minimum number of stages" as the final step in determining the "optimal number of stages" confirms that selecting this is always the final step in making that determination. In other words, the dependent claims confirm that "optimal number of stages" *is* the "largest of the minimum number of stages," much as the specification does.

*Network Sys. Tech., LLC v. Texas Instrs., Inc.*, 22-cv-482, Dkt. 150 (E.D. Tex. Jan. 3, 2024), does not help ClearCorrect. ClearCorrect ignores that *Network System* plaintiff relied on a dictionary definition of "optimum" as "most favorable or desirable." It also circularly argued that "optimal amount of data to be buffered" means "the amount of data that is optimal under certain conditions." Ex. V. at 53-54. Finally, the *Network System* patent did not define the claim term at issue. None of those things apply here.

Judge Schroeder's observation that the intrinsic evidence did not teach "how to weigh[]" the "communication or connection properties" and "utilize them together" to arrive at an "optimal amount of data to be buffered" does not bring *Network System* closer to the facts here. Judge Schroeder's opinion involved a different patent and a different type of disclosure. Here, the '444 patent identifies factors for determining the optimal number of stages, methods for determining the optimal number of stages, and provides exemplary treatment plans with "the optimum number of stages needed." '444 pat., 5:41-67; 14:40-15:3, Figs. 3-9, 11. As Dr. Kuo explains, the factors described in the specification are objective inputs into a treatment plan and are based on objective clinical practice norms. *See* Kuo Decl. ¶¶ 28-29, 35-36. The number of stages needed for each tooth can be determined based on these factors, and the largest number of

the minimum number of stages then can be identified.  *See id.*  No more is required.  *See Sonix Tech Co., Ltd. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1378 (Fed. Cir. 2017); *InfoGation Corp v. ZTE Corp.*, No. 16-cv-01901, 2017 WL 1821402 at *12 (S.D. Cal. May 5, 2017).

### C.     Pattern Terms

ClearCorrect does not meaningfully contest that the ordinary meaning of "V-shaped," "A-shaped," "M-shaped" and "mid-line shift," respectively, refers to treatment patterns that are "V-shaped," "A-shaped," and "M-shaped," and that shift along the "mid-line."  Instead, ClearCorrect argues that Align acted as its own lexicographer.  But ClearCorrect has not met its burden to show Align did so, or that Align defined the terms as ClearCorrect advances.  To the contrary, ClearCorrect's proposed constructions select portions of exemplary embodiments and exclude others.

### 1.     ClearCorrect Has Not Shown The Inventors Acted As Lexicographers

ClearCorrect's proposed constructions are based on cherry-picked "exemplary embodiments."  To justify its positions, ClearCorrect argues that (1) the specification's "exemplary embodiment" lead-in language is referring to an embodiment of the *invention* rather than an embodiment of a *pattern*; and (2) the quotation marks used throughout the specification render those sections definitional.  Both are false.

**First,** as Align explained, each "definition" that ClearCorrect recites is preceded by the phrase "***in accordance with one exemplary embodiment.***"  Opp. at 13, 15-17 (emphasis added).  Per ClearCorrect, this simply "indicates that each defined pattern . . . is itself one embodiment of the overall purported invention."  Reply at 6-7.  Not so.

The specification is clear that there are multiple embodiments of each pattern term.  For example, it describes the "A-shaped pattern" in multiple passages and figures.  In each, it

repeatedly emphasizes that the described embodiments are exemplary. *See, e.g.,*'444 pat., 7:47-61 (two references to an "***exemplary embodiment***"); *id.*, 8:26-35 ("FIG. 4 is a diagram of one ***exemplary embodiment*** of an 'A-shaped' pattern . . . ."); *id.,* 12:66-13:15 (explaining that Fig. 8 "illustrates an ***example*** of . . . an 'A-shaped' pattern [800/900] similar to the example of FIG. 4"); *id.,* 13:35-45 (same for Fig. 9) (all emphases added); *see also id.*, Figs. 4, 8, 9. The same is true for the other pattern terms. The specification thus does not define these terms as ClearCorrect contends.

***Second***, the quotation marks around the pattern terms emphasize their descriptions, not define them. As ClearCorrect admits, virtually every use of the pattern terms in the specification is accompanied with quotation marks. This is not consistent with each of those uses being definitional. ClearCorrect does not distinguish Align's cited case holding that quotation marks, without more, do not indicate lexicography. *See, e.g., Karmagreen, LLC v. MRSS Inc.*, No. 21-cv-674, 2021 WL 8268144, at *3 (N.D. Ga. Dec. 8, 2021).

### 2. ClearCorrect Excludes Preferred Embodiments

ClearCorrect's proposed definitions also improperly exclude preferred embodiments.

#### a) "V-shaped pattern" ('444 patent, cls. 8, 22, 36; '456, cl. 3)

ClearCorrect does not contest that a "V-shaped pattern" is a pattern shaped like a "V." Its construction also does not encompass Figure 5's embodiment of a "V-shaped pattern."

In response, ClearCorrect argues that its proposed construction does not exclude Figure 5 because it refers to moving "teeth." That does not avoid its failure to capture Figure 5.



FIG. 5

In Figure 5, teeth 2(7), 1(8), 1(9), and 2(10) all move *simultaneously* in the last stage. But the end of ClearCorrect's construction specifies that the "***next anterior-positioned tooth***" (that is, the tooth closer to the front of the mouth) is "not scheduled to begin moving until at least approximately the ***half-way stage of its respective posterior positioned tooth***" (that is, the tooth closer to the back of the mouth).

### b) "A-shaped pattern" ('444 patent, cls. 9, 23, 37; '456, cl. 3)

ClearCorrect also does not contest that an "A-shaped pattern" is a pattern shaped like an "A." And ClearCorrect does not contest its proposed definition excludes Figures 8 and 9's embodiments. Instead, it argues that those figures are not "exemplary embodiments" of an A-shaped pattern. The specification flatly contradicts ClearCorrect position, explaining that Figures 8 and 9 ""illustrate[] ***an example of*** the incisors of an ***'A-shaped' pattern*** [800/900] similar to the example of FIG. 4." '444 pat. 12:66-67; 13:35-36 (emphasis added). Although Figures 8 and 9's treatment plans also incorporate staggering or round-tripping, they are still "A-shaped" treatment patterns. Claims 1 and 9, which recite that a treatment plan can incorporate staggering and/or roundtripping *and* take an "A-shaped" pattern, confirm this.

### c) "M-shaped pattern" ('444 patent, cls. 10, 24, 38; '456, cl. 3)

ClearCorrect does not contest that an "M shaped pattern" is a pattern shaped like an "M."

Similar to the V-shaped pattern, ClearCorrect's proposed construction excludes Figure 7 because it requires both "the adjacent anterior teeth and/or adjacent posterior teeth" to "sequentially mov[e]." In Figure 7, teeth (27), 1(8), 1(9), and 2(10) do not move "sequentially."



FIG. 7

### d) "mid-line shift pattern" ('444 patent, cls. 11, 25, 39; '456 patent, cl. 3)

ClearCorrect also does not contest that a "midline shift pattern" is a pattern where a "mid-line shift" occurs. Figures 6A and 6B provide two exemplary embodiments of a mid-line shift. Even if ClearCorrect's definition permitted multiple teeth next to each other to move simultaneously (which is unclear from its language), ClearCorrect has provided no reason to veer from the plain meaning of "mid-line shift" pattern. ClearCorrect's construction introduces complexity without adding any clarity.

### 3. ClearCorrect's Other Arguments Fail

ClearCorrect's other arguments also fail. **First**, Align's agreement to the construction of a *different* term has no bearing on the correct constructions of the pattern terms here.

**Second**, Align agrees that "a claim term's meaning 'is the meaning that the term would have to a [POSITA] in question at the time of the invention.'" Reply at 7. But that does not make the "widespread use among orthodontists (or not)" of the pattern terms relevant. *Id.*

What matters is what the skilled artisan would have understood the pattern term to mean in 2006, at the time of the invention. As Dr. Kuo explains, the skilled artisan would have

understood that the pattern terms to have their plain and ordinary meaning, *i.e.*, such that "V-shaped," "A-shaped," "M-shaped" and "mid-line shift" refer to treatment patterns that are "V-shaped," "A-shaped," "M-shaped," or shift along the "mid-line." Kuo Decl. ¶¶ 42-57.

### D. Means-Plus-Function Terms

#### 1. The Form of Align's Constructions Is Proper

ClearCorrect's primary argument for ten disputed means-plus-function terms is that Align's constructions do not always quote the specification verbatim. Reply at 10. ClearCorrect's complaint is baseless; there is nothing wrong with paraphrasing. After all, the Federal Circuit requires only that the disclosure be "sufficiently definite to a skilled artisan," not that the construction of a means-plus-function term quote the specification *in haec verba*. *See Sisvel Int'l S.A. v. Sierra Wireless, Inc.*, 82 F.4th 1355, 1368 (Fed. Cir. 2023). As the Federal Circuit has observed, the specification's disclosure of a scientific article's title can adequately disclose an algorithm—even if the specification does not refer to the algorithm itself. *See Atmel Corp. v. Information Storage Devices*, 198 F.3d 1374, 1382 (Fed. Cir. 1999).

For two terms, ClearCorrect also attacks Align's constructions because they refer to a computer program for performing the recited function as the corresponding structure. Reply, 10-12. Align addresses those attacks and ClearCorrect's criticism of the Court's *Virtru Corp. v. Microsoft Corp.* decision, No. 23-cv-872, 2023 WL 11799421 (W.D. Tex. Jan. 22, 2023), below.

#### 2. The '444 Patent's Specification Discloses Adequate Structure for Each Challenged Means-Plus-Function Limitation

ClearCorrect starts by mischaracterizing Align's position, arguing that "Align often does not even dispute that the specification does not disclose ***any*** algorithm." Reply at 11. Not so. For seven terms, Align pointed to algorithms in the specification. Opp. at 21-26, 27-32. For two, Align explained that the specification discloses the required algorithms, even if not

verbatim. *Id.* at 26-27. Only for one term did Align argued that no algorithm is required because a general-purpose computer suffices. *Id.* at 19-20.

ClearCorrect also implies that Align is conflating Section 112, ¶ 6 with enablement. Reply at 11-12. Align is not. A claim is indefinite only if, "read in light of the specification delineating the patent, and the prosecution history, [it] fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosign Instrs., Inc.*, 572 U.S. 898, 901 (2014). To satisfy Section 112, ¶ 6, a disclosed algorithm thus need only be "sufficiently definite to a skilled artisan." *Sisvel*, 82 F.4th at 1368. Consistent with these principles, Align has explained the terms' definiteness from the perspective of the skilled artisan. Opp. at 24-34. Viewed through that framework, each disputed term is definite.

> a)  **"means for receiving an electronic representation of each dental object of the plurality of dental objects in relation to one another" ('444 patent cls. 15-28)**

ClearCorrect has failed to refute that a general-purpose computer is adequate structure for this "receiving" limitation. *In re Katz Interactive Call Processing Pat. Litig.* held that no algorithm is required where a function, like receiving data, "can be achieved by a general purpose computer without special programming." 639 F.3d 1303, 1316 (Fed. Cir. 2011). A general-purpose computer can "receiv[e] an electronic representation of each dental object of the plurality of dental objections in relation to one another," *i.e.*, a digital model of a patient's teeth, and thus it adequately corresponds to the claimed function. Singh Decl., ¶¶ 33-37.

Struggling to distinguish *Katz*, ClearCorrect argues that the '444 patent's computer is different because it is "configured to receive an electronic representation." Reply at 12. That is a distinction without a difference. The '444 patent discloses a general-purpose computer. '444 pat., 4:58-5:10. And computers, by default, are configured to receive data. *See* Singh Decl., ¶

34. Whether the computer receives data via a USB port or otherwise also is beside the point. As ClearCorrect's own case explains, patentees "need not disclose details of structures well known in the art." *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013).

ClearCorrect's attempt to analogize this limitation to another aspect of *Katz*—its holding that a general-purpose computer was inadequate structure for a data processing function—similarly fails. Reply at 12. Here, the claimed function here is "receiving," not "processing."[4]

> **b)** **"means for determining an order of movement for each respective dental object such that the dental objects avoid colliding with each other on their respective routes from said initial position to said desired final position" ('444 patent cls. 15-28)**

ClearCorrect does not rebut that Figure 2B discloses a corresponding algorithm for this limitation. *Compare* Opp. at 21-22 *with* Reply at 13-14. Instead, constructing a strawman, ClearCorrect argues that Figure 2B's step of "TOOTH STAGGERING, ROUND-TRIPPING, AND/OR SLOWING MOVEMENT" alone is inadequate structure. But that is not Align's position; Align's construction includes *other* **steps** of Figure 2B.

ClearCorrect cannot distinguish Align's authorities confirming the adequacy of its corresponding structure. Although ClearCorrect argues that *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir. 2011), involved a "step-by-step process," the same is true of Figure 2B here. The figure refers to: (1) "DETERMIN[ING] A PATTERN," (2) "TOOTH STAGGERING, ROUND-TRIPPING, AND/OR SLOWING MOVEMENT," AND (3)

---

[4] As Align has explained, ClearCorrect has waived its "in relation to" argument, which ClearCorrect made only in its expert's report. Although ClearCorrect disputes waiver, it concedes that "the paragraph [to which] Align responds" appears only in that report. (Reply at 13 n.9.) Regardless, the phrase "in relation to" does not affect the claim's definiteness, as it has nothing to do with the computer's configuration. The phrase simply clarifies that the received data is a digital model of a patient's teeth, as they relate to one another.

"DETERMIN[ING] [THE] MOST EFFICIENT PATH." And for all ClearCorrect's complaints about Figure 2B's second step, it is indistinguishable from the disjunctive step in *Typhoon Touch*'s algorithm. 659 F.3d at 1385 ("displaying the fact of the match, otherwise alerting the user, or displaying information stored in memory fields associated with that library").

Nor does *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC* 732 F.3d 1376 (Fed. Cir. 2013)), help ClearCorrect. There, the **patentee** contended that there was no "single, definite algorithm." 732 F.3d at 1381. Align makes no similar concession.

Finally, in a footnote, ClearCorrect argues that Figure 2B's "determining the most efficient path" step does not provide adequate detail for how to determine the path. Reply at 14 n.11. This is another strawman; Federal Circuit authority does not require a "highly detailed description of the algorithm to be used to achieve the claimed functions." *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1338 (Fed. Cir. 2008).

c) **"means for determining a route each respective dental object will move to achieve its respective final position" ('444 patent cls. 16-18)**

ClearCorrect does not dispute that Align's construction identifies a corresponding algorithm. Reply at 14-15. It only disputes whether the specification discloses the algorithm's steps in enough detail. *Id.* As noted, however, the Federal Circuit does not require a "highly detailed description of [an] algorithm," *Aristrocrat,* 521 F.3d at 1338, but only a disclosure "sufficiently definite to [the] skilled artisan," *Sisvel*, 82 F.4th at 1368. That the skilled artisan can accomplish the first "segmenting" step of Align's construction in multiple ways does not make its construction indefinite, but broad. Reply at 15 n.12 (citing Ex. Y).

*BlackBoard, Inc. v. Desire2Learn, Inc.*, does not help ClearCorrect. *BlackBoard* held that a system that "provide[d] multiple levels of access restrictions" was inadequate structure for

a "means for assigning a level of access" because it "describe[d] an outcome, not a means for achieving [it]." 574 F.3d 1371, 1384 (Fed. Cir. 2009). By contrast, the three steps that Align identifies—segmenting, calculating transformations, and then calculating intermediate positions—describe *how* to determine a route. Singh Decl., ¶¶ 46-49. *Ergo Licensing, LLC v. CareFusion 303 Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012), which held that the disclosure of *some* algorithm was necessary for definiteness, is inapposite for the same reason.

As noted, Align has not conflated Section 112, ¶ 6 with enablement, as ClearCorrect alleges. Align instead analyzed definiteness from the perspective of the skilled artisan, as is required. Opp. at 24 (citing Singh Decl., ¶ 50); *supra* § I.D.2.

> ### d) "means for determining (a), (b), and (c) in relation to each of the other dental objects" ('444 patent cls. 17-18)

ClearCorrect still offers no separate argument for this limitation. Reply at 15. As the preceding terms are not indefinite, this limitation also is not.

> ### e) "means for determining a rate at which each respective dental object will move along its respective route" ('444 patent cls. 16-18)

ClearCorrect's main argument here is that the skilled artisan's knowledge cannot fill gaps in the specification's disclosures. Reply at 10-12, 16. In doing so, ClearCorrect effectively challenges this Court's *Virtru* decision. There, the Court explained that "Federal Circuit caselaw does not require that the patent describe an algorithm if the selection of the algorithm or group of algorithms needed to perform the function in question would be readily apparent to a person of skill in the art." *Virtru Corp. v. Microsoft Corp.*, No. 23-cv-872, 2023 WL 11799421, at *4 (W.D. Tex. Jan. 22, 2023) (internal citations omitted). Although acknowledging that the specification must "*disclose[]* an algorithm," this Court also explained that the specification need not "*describe* an algorithm" if its selection would have been "readily apparent" to the skilled

14

artisan. *Id.* at *3-4 (emphases added).

Contrary to ClearCorrect, *Virtru* neither conflicts with "binding precedent" nor conflates Section 112, § 6 with enablement. The Court's explanations in *Virtru* track the Federal Circuit's reminder, just last year, that the disclosed algorithm need only be "sufficiently definite to a skilled artisan." *Sisvel*, 82 F.4th at 1368.

Under this Court's *Vitru* decision, the disputed limitation is definite. As Align has explained, "the specification's disclosures, combined with the skilled artisan's knowledge, adequately convey[] what was necessary to practice this claim limitation." Opp. at 27. The specification repeatedly expresses rate as distance divided by stages ("mm/stage") and even gives an example in which rate depends on the number of stages. '444 pat., 6:60-61, 7:15-16. The specification thus discloses an algorithm, even if does not recite one, because the algorithm itself would have been readily apparent to the skilled artisan. *Virtru,* 2023 WL 11799421, at *4.

*RideApp Inc. v. Lyft, Inc.,* an unpublished Federal Circuit decision, does not help ClearCorrect. In *RideApp,* the Federal Circuit considered the phrase "means of detecting the proximity of [a] passenger." 845 F. App'x 959, 961 (Fed. Cir. 2021). The court held that the phrase was indefinite because a skilled artisan could have used any of multiple algorithms. *See id.* at 963 ("proximity" between a passenger and an incoming car could be determined by calculating "straight-line distance" or by "considering the layout of the underlying street system."). Here, by contrast, the underlying algorithm is readily apparent.

ClearCorrect is wrong that "Align's identified purported structure . . . is not clearly linked or associated with the claimed function." Reply at 16. Align's construction cites to column 4, line 58 to column 5, line 10. That passage, in turn, explains that "computer-readable program code means [are] embodied in the storage medium." This includes any corresponding algorithm,

including the claimed algorithm.

Finally, ClearCorrect criticizes Align's construction as "attempt[ing] to broadly claim *all* means of performing the function." Reply at 10-11. Not so. Align's construction covers only computer programs that determine rate per a distance divided by stage algorithm, as that is what the skilled artisan would have understood. Singh Decl. ¶ 57.

**f)** **"means for determining a total distance each respective dental object will move" ('444 patent cl. 20)**

ClearCorrect's arguments for this term track those for the preceding one and fail for the same reasons. Its only unique argument for this term is that the skilled artisan could calculate the "distance a tooth moves" as a straight line from initial to final position or according to "the distance the tooth actually followed." Reply at 16. This unsupported attorney argument does not disprove what algorithm would have been "readily apparent" to the skilled artisan. As Dr. Singh explains, the skilled artisan would have understood the claimed "total distance" to mean the sum of "the distance travelled by each tooth at each stage." Singh Decl. ¶ 63. ClearCorrect does not rebut this testimony.

**g)** **"means for adjusting at least one of the route and the rate of at least one dental object to avoid collision with at least one other dental object" ('444 patent cl. 18)**

ClearCorrect misunderstands Align's construction, contending that it encompasses staggering, round-tripping, and slowing in any order. Reply at 17. It does not. The algorithm "first attempts staggering . . . *followed* by slowing-down . . . *then followed* by round-tripping as a last resort." '444 patent, 12:57-62.

ClearCorrect also argues that the algorithm does not identify *when* to apply each method. Reply at 17. This is a red herring. Software that performs collision avoidance by staggering, slowing, and then round-tripping practices this claim. The case law requires no more. *See*

16

*Aristocrat*, 521 F.3d at 1338 (no requirement for "highly detailed description of the algorithm to be used to achieve the claimed functions"). Regardless, the algorithm *does* indicate when to advance from one method to the next. It explains that one should change methods if the prior method fails to avoid collisions. *E.g.*, '444 pat., 12:57-62 ("round-tripping as a last resort").

Finally, ClearCorrect's *SuperGuide* argument still fails. Even if *SuperGuide* applied, ClearCorrect does not dispute that round-tripping adjusts both route and rate. Align's construction therefore is consistent with *SuperGuide*. But *SuperGuide* does not apply. Here, "route" and "rate" are not categories from which selections may be made. It would make no sense to say that software adjusts one of a tooth's *routes* (plural), as ClearCorrect proposes.

### h) "means for determining an optimal number of stages for the order of movement of the dental objects" ('444 patent cls. 19-20)

Although ClearCorrect argues that the patent does not disclose how to select the "minimum number of stages," Reply at 17-18, the "minimum number of stages" is just an input into the algorithm for determining the "optimal number of stages." The law does not require detail about every aspect of an algorithm. *See Sisvel*, 82 F.4th at 1368; *Aristocrat,* 521 F.3d at 1338. As noted, Align does not conflate Section 112, ¶ 6 with enablement by framing its construction from the perspective of the skilled artisan. *Supra* § I.D.2.

ClearCorrect also is wrong that Align's construction "read[s] claim 20 into claim 19." Reply at 18. Align referred to claim 20 only because ClearCorrect cried ambiguity, alleging that one would not know how to determine the optimal number of stages. *Compare* Opp. at 30 with Br. at 33. But Claim 19 is broader than claim 20 and does not require the latter's steps.

### i) "means for ordering the movement of the dental objects in a V-shaped pattern" ('444 patent cl. 22)

Contrary to ClearCorrect, Figure 5 does not "merely show[] what a V-shaped pattern

looks like." Reply at 18. Figure. 5 defines when to move a patient's teeth to achieve a V-shape

by indicating when to start and stop moving each tooth. Opp. at 30-31. Pivoting, ClearCorrect

newly argues that the specification does not say "how the software is programmed" to achieve

that shape. Its own caselaw, however, confirms that such detail is not required. *See Aristocrat*,

521 F.3d at 1338 (patentee is "not required to produce a listing of source code").

### j) "means for round tripping at least one dental object" ('444 patent cl. 27)

Consistent with Align's construction, the patent defines roundtripping as a three-step

algorithm. '444 pat., 12:51-55. Although ClearCorrect complains that the specification does not

say when or to what extent to roundtrip, that level of detail is not required. *See Sisvel*, 82 F.4th

at 1368. Also faulty is ClearCorrect's argument that Align claims "all possible means of

achieving" roundtripping. Reply at 18. Align claims only one. *See* Ex. C at 16.

## II. THE SCANNER PATENT

### A. "replace [replacing] at least a portion of the [removed] surface portion of the model [. . .] using the received second scan data [at least a portion of the second scan data]" ('936 patent cls. 1-20)

ClearCorrect's construction is inconsistent with black-letter patent law. Opp. at 35-36.

Dependent claims 4, 6, and 7 require that claim 1's instructions to "replace" comprise

instructions to "register," "stich," and "discard" data. '936 pat., cls. 4, 6, 7. Narrowing

"replace" to the "registration" or "discard" sub-steps would violate the maxim that using

"different terms in . . . claims connotes different meanings." *See CAE Screenplates Inc. v. Heinrich

Fiedler GmbH & Co.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

ClearCorrect does not address these dependent claims at all, but focuses only on the

specification. Per ClearCorrect, the specification discloses no replacement methods besides

"removing" and "registering." Reply at 19. That is false. Claim 6, which "[is] a part of" the

specification, *Markman v. Westview Instr.*, 52 F.3d 967, 979-81 (Fed. Cir. 1995) (*en banc*), indicates that replacing can include "stitching." The specification further discloses a stitching sub-step in "Embodiment A." '936 pat., 15:21-27.

ClearCorrect insists that the compromise construction from *3Shape* must govern. But ClearCorrect still does not explain why Align—much less the Court—is bound by a non-final, compromise construction never memorialized in a *Markman* order. ClearCorrect's complaint that Align lacks authority for reconsidering a construction fails twice over. First, the Court never actually entered the prior construction, such that there is nothing to "reconsider." Second, Align did identify authority allowing courts to reconsider their constructions—ClearCorrect's own. Opp. at 37 (referring to *TQP Dev., LLC v. Intuit Inc.*, No. 12-cv-180, 2014 WL 2810016, at *6 (E.D. Tex. June 20, 2014), which explained that courts may "refine earlier claim constructions").

That just leaves ClearCorrect's complaints about the meet-and-confer process. On October 3, 2024, ClearCorrect demanded a claim construction chart from the prior *3Shape* litigation. Although Align did not possess it, Align eventually obtained the chart from its counsel in the *3Shape* case and produced it on October 24, 2024. Ex. N. Five days later, ClearCorrect changed its proposed construction from this Court's prior, tentative construction. Ex. L, term H.1. The actual sequence of events hurts, not helps, ClearCorrect.

### B. "second scan data of the patient's teeth" ('936 patent cls. 17-20)

ClearCorrect has not shown disclaimer. ClearCorrect misreads Align's Preliminary Patent Owner Response ("POPR") from the prior IPR proceedings. Ex. O. The section on which ClearCorrect relies was directed to claims 1 and 9, which referred to a "physically changed portion." *Id.* at 6. That is why it referenced—using quotation marks—"the claims' description of the second scan data as including a 'physically changed portion.'" *Id.* at 7. Confirming this, the cited POPR section concludes with a reference only to claims 1 and 9. *Id.*

("Grounds 1 and 2 … argu[e] that the wording of **independent claims 1 and 9** contains no temporal aspect") (emphasis added).

Claim 17, by contrast, undisputedly does **not** refer to a "physically changed portion." And the POPR portions that specifically dealt with claim 17 undisputedly did **not** rely on the "physically changed portion" limitation to distinguish the prior art. *Compare* Opp. at 38-39 *with* Reply at 20. Align's POPR statements thus were not a "clear and unmistakable" disclaimer for claim 17. *Thorner v. Sony Computer Enter. Am. LLC,* 669 F.3d 1362, 1366 (Fed. Cir. 2012).

Nor does the Patent Office's Notice of Allowance show disclaimer. As ClearCorrect's own authority explains, "an applicant's silence regarding statements made by the examiner during prosecution, without more, *cannot* amount to … disavowal." *Salazar v. Procter & Gamble Co.,* 414 F.3d 1342, 1345 (Fed. Cir. 2005). This is because, "[a]fter all, the applicant has disavowed nothing." *Id.* Moreover, as Align previously explained, an Examiner need not even give a reason for allowance. *See* 37 C.F.R. § 1.104(e).

ClearCorrect's authorities miss the mark. Reply at 20-21. The issue is not whether IPR statements can give rise to disclaimer as a general matter. The issue is whether disclaimer, in fact, occurred via claim narrowing. Here, Align did not "clearly and unmistakably" distinguish claim 17 from the prior art based on its inclusion of a "physically changed portion" limitation— particularly as that phrase appears nowhere in the claim.

## III.    THE COURT SHOULD DISREGARD CLEARCORRECT'S "APPENDIX A"

The Court limited ClearCorrect to 18 terms. ECF No. 120. Despite providing an appendix with further constructions, and despite cross-referencing its briefed arguments, ClearCorrect now says that it never intended to argue more. Reply at 21; Br. at App'x A ("ClearCorrect's indefiniteness arguments . . . also apply to this term"). The Court should not consider these additional terms. Reply at 21.

Dated: December 23, 2024

MORRISON & FOERSTER LLP,

By:  */s/ Rich S.J. Hung*

Brian C. Nash (TX Bar No. 24051103)
Austin M. Schnell (TX Bar No. 24095985)
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
Tel: (512) 617-0650
Fax: (737) 910-0730
bnash@mofo.com
aschnell@mofo.com

Daralyn J. Durie (*pro hac vi*ce)
Rich S.J. Hung (*pro hac vi*ce)
Forrest M. McClellen (*pro hac vi*ce)
Ian Bennett (*pro hac vi*ce)
Jenny Xin (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market St.
San Francisco, CA 94105
Tel: (415) 268-7000
Fax: (415) 268-7522
ddurie@mofo.com
rhung@mofo.com
fmcclellen@mofo.com
ibennett@mofo.com
jxin@mofo.com

Bradley S. Lui (*pro hac vi*ce)
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
Tel: (202) 887-1500
Fax: (202) 887-0763
blui@mofo.com

Amanda A. Potter (*pro hac vice*)
Malavika M. Fitzgerald (*pro hac vi*ce)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 468-8000

Fax: (212) 468-7900
apotter@mofo.com
mfitzgerald@mofo.com

James M. Pearl (*pro hac vice*)
Emma Farrow (*pro hac vice*)
Taylor E. Farias (*pro hac vice*)
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, California 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899
jamespearl@paulhastings.com
emmafarrow@paulhastings.com
taylorfarias@paulhastings.com

Thomas A. Counts (*pro hac vice*)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
tomcounts@paulhastings.com

Michael F. Murray (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, DC 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
michaelmurray@paulhastings.com

Adam M. Reich (*pro hac vice*)
PAUL HASTINGS LLP
71 South Wacker Drive, 45th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
adamreich@paulhastings.com

*Attorneys for Plaintiff*
*ALIGN TECHNOLOGY, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2024, a true and correct copy of the foregoing document was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the Court' s local rules.

*/s/ Rich S.J. Hung*
Rich Hung