IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CLEARCORRECT OPERATING, LLC,<br>CLEARCORRECT HOLDINGS, INC., &<br>INSTITUT STRAUMANN AG,<br><br>    Defendants.<br><br>CLEARCORRECT OPERATING, LLC,<br>CLEARCORRECT HOLDINGS, INC., &<br>STRAUMANN USA, LLC,<br><br>    Counterclaim-Plaintiffs,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>    Counterclaim-Defendant. | Case No. 6:24-cv-00187-ADA-DTG |

**STIPULATED ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

2. **GENERAL PROVISIONS**

   a) **Cooperation.** Parties are expected to reach agreements cooperatively on how to conduct discovery under Federal Rules of Civil Procedure 26-36. In the event that the parties are unable to agree on the parameters and/or timing of discovery, the parties will follow the procedure for raising of discovery disputes outlined in the Court's January 23, 2024, Standing Order Governing Procedures (OGP) 4.4—Patent Cases.

   b) **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information[1] consistent with Federal Rule of Civil Procedure 26(b)(1). This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

   c) **Cost-shifting.** As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

3. **PRESERVATION OF DISCOVERABLE INFORMATION**

A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

   a) Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

course of business to back up and archive data; provided, however, that the parties shall preserve the nonduplicative discoverable information currently in their possession, custody or control.

      b)      The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B). ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced:

           i.      backup systems and/or tapes used for disaster recovery; and

           ii.      systems no longer in use that cannot be accessed.

      c)      Among the sources of data the parties agree are not reasonably accessible, the parties agree there is no obligation to preserve, search, or collect the following:

           i.      Voice messages;

           ii.      Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

           iii.      automatically saved versions of documents and emails;

           iv.      video and audio recordings, absent a specific request;

           v.      deleted, slack, fragmented, or other data accessible only by forensics;

           vi.      random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

           vii.      on-line access data such as temporary internet files, history, cache, cookies, and the like;

    viii.  dynamic fields of databases or log files that are not retained in the usual course of business, absent a specific request;

    ix.  data in metadata fields that are frequently updated automatically, such as last opened dates; and

    x.  systems, server, and network logs.

**4.**  **DEDUPLICATION**

  a)  In connection with the custodial searches contemplated in Stipulated Order, each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Quicktime Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

  b)  A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI. Removal of duplicate documents shall only be done on exact duplicate documents (based on MD5 or SHA-1 hash values at the document level) across all custodians. All custodians for deduplicated documents still must be identified. A party may

also de-duplicate email threads and attachments as follows: In an email thread, only the most evolved responsive email in a thread will be produced for that branch of the e-mail thread, unless production of the entirety of an earlier email thread is necessary to identify all recipients. Where an earlier-in-thread email has a responsive attachment not contained within the most evolved responsive email, the most evolved earlier-in-thread email containing the attachment will also be produced along with its attachment. An attachment is a file associated with an email for retention and storage as a single message unit.

   c)  No provision of this Order affects the inspection or production of source code which will be collected and made available consistent with the Protective Order governing this case.

**5.  CUSTODIAL SEARCHES**

   a)  Each party shall be entitled to receive email and non-email ESI discovery from up to 23 custodians, except that ClearCorrect will receive discovery from up to 18 custodians to account for Align's reproduction of materials from *3Shape Trios A/S v. Align Technology, Inc.*, Case No. 1:18-cv-1332 (D. Del.), *Simon & Simon, Pc v. Align Technology, Inc.*, Case No. 3:20-cv-3754 (N.D. Cal.), and *Snow v. Align Technology, Inc.*, Case No. 3:21-cv-3269 (N.D. Cal.) (collectively, the "Prior Antitrust Actions") as agreed by the parties on December 4, 2024. ClearCorrect further agrees that to the extent it requests that searches from the Prior Antitrust Actions be updated to the present or that additional search strings be run against custodians whose data was also reproduced from the Prior Antitrust Actions in this litigation, such updating or additional searching will count as a full custodian for purposes of calculating ClearCorrect's total amount of requested custodians.

   b)  The parties shall exchange lists of proposed custodians, search terms, and time frames. Each Requesting party shall initially provide a proposed list of requested custodians

by January 8, 2025. The proposed list shall include no more than 35 names. Within 5 business days of receiving the requesting parties' initial list of custodians, the producing party will promptly provide the following information for each request's custodians: (1) the dates of that custodian's employment with the producing party, including whether the custodian is still employed, (2) the titles or positions held by the custodian and their relevant group/department, and (3) whether and what size (i.e. megabytes) and what type (email, instant messaging, other custodial sources including OneDrive) of ESI exists for the requests custodian. Within 5 business days of receiving information from the producing party, the parties will exchange selection lists of the first (up to) 18 custodians to be searched. The parties may reserve the selection of additional custodians pursuant to Section 5(e) below. Within 5 business days of reaching an agreement on both parties' custodian lists, the parties shall exchange proposed search terms or search strings for each custodian. The receiving party shall propose the requested search terms or search strings. Within 5 business days of receiving the search term lists, the parties shall meet and confer to reach agreement on custodians, search terms, and time frames to be used. If the parties cannot reach agreement regarding custodians, search terms, and time frames to be used, they may seek relief from the Court.

    c)  The parties shall agree upon the types of ESI that will be searched for particular custodians, including email, instant messaging and chat application data, and OneDrive or other local or cloud based personal electronic files, and shall endeavor to tailor requests for ESI beyond email ESI to particular custodians where such requests are appropriate.

    d)  The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.

Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production.

  e) Each requesting party may add additional custodians per side until their total allotted custodian count is reached provided subsequent requests are requested in no more than one round of requests and no later than March 1, 2025. The parties shall engage in the same process for identifying and providing basic ESI information for requested custodians as described in Section 5(b). If a party requests additional custodians later than 2 months before the deadline for substantial completion of document production, the receiving party shall have 60 days to substantially complete production of the ESI from the additional custodians. The parties may jointly agree to modify this limit or procedure without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

  f) Each requesting party shall limit its initial search term requests to 15 search terms or search strings per custodian for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

  g) In the spirit of cooperation and to further the goal of proportionality, the parties agree to exchange one, or within reason, more hit reports to facilitate the meet and confer process with respect to custodians and search terms. Notwithstanding prior agreement on the search terms to be used for electronic searches, should a search produce an unreasonably large number of non-responsive or irrelevant results, the parties shall (at the producing party's request)

meet and confer to discuss application of further narrowing criteria (e.g., if a single search was for "card" and ninety percent of the resulting email came from the irrelevant term "credit card," a negative limitation to ignore documents only returned as a result of "credit card" may be applied to remove these false hits). Likewise, should a search produce an unreasonably small number of hits, the parties shall (at the receiving party's request) meet and confer to discuss revising the criteria used in that search.

h) A "hit" on a search term does not mean that a document is within the scope of discovery, relevant, proportional, not protected by attorney client or work product privilege, responsive, or otherwise appropriate for production. No privilege is therefore waived by production of a hit report because a hit report is not an offer to produce any document.

i) Therefore, the parties will not at this time place any limit on the number of hits a particular term returns, but will instead agree to continue to negotiate in good faith to ensure no term or set of terms results in a disproportionate burden being placed on any party.

6. **USE OF TECHNOLOGY ASSISTED REVIEW**

a) If a Party elects to use Technology Assisted Review ("TAR"), Continuous Active Learning ("CAL"), or similar alternative technology in any part of its document review and production, that Party will disclose that election and the proposed methodology to be applied to the opposing Parties reasonably advance of any deadline for reaching agreement on search methodologies and the Parties will meet and confer in good faith to discuss parameters for the use of that technology and methodology in those instances.

b) The parties agree that for any documents or document categories unable to be reviewed using TAR or CAL, the parties will conduct manual review of those documents using the custodians and search terms already agreed-upon and/or will meet and confer to discuss the appropriate methodology for review of those documents.

c) The parties understand that manual review of documents for responsiveness, third-party confidentiality, and/or privilege may be applied to documents before production.

**7. PRODUCTION FORMATS**

a) The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

b) PowerPoint files will be produced in TIFF and native format. Excel files will be produced in native format. Documents produced natively shall be represented in the set of imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced. The parties will meet and confer to discuss requests for the production of additional files in native format, on a case-by-case basis. If the parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court.

c) Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table. These reports or data tables will be produced in a static format. The parties agree to identify the specific databases, by name, that contain the relevant and responsive information that parties produce.

d) The parties agree to respond to reasonable and specific requests for the production of higher resolution or color images. Nothing in this Stipulated Order shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope,

provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

      **8.**      **DOCUMENTS PROTECTED FROM DISCOVERY**

           a)      Activities undertaken in compliance with the duty to preserve information are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

           b)      For experts retained in anticipation of or in connection with this litigation, documents or communications constituting drafts of expert reports and declarations, and documents or communications constituting notes created by or for an expert in connection with preparation of his or her expert report or declaration, shall not be discoverable and need not be preserved unless the expert relies upon such drafts and/or notes.

           c)      Work product materials, including communications, generated in connection with testifying and non-testifying experts as well as consultants who are retained in anticipation of or in connection with the above-captioned litigation, shall not be discoverable absent an order by the Court. Conversations or communications between counsel and any testifying expert or consultant retained in anticipation of or in connection with the above-captioned litigation shall not be discoverable absent an order by the Court, except to the extent facts, data, or assumptions from such conversations or communications are relied upon by the expert informing their opinion offered in this action and, even then, only the underlying facts, data, or assumptions are discoverable and not any accompanying mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative.

           d)      Nothing in this Stipulated Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-

product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

9. **PRIVILEGE LOG**

a) The parties shall confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

b) With respect to information generated after the filing of the complaint, the parties are not required to include any such information in privilege logs.

10. **MODIFICATION**

The obligations imposed by this Stipulated Order may be modified by written agreement the parties or by the Court for good cause shown.

**IT IS SO AGREED**, through Counsel of Record.

Dated: January 2, 2025          */s/ Rich S.J. Hung*

Counsel for Plaintiff and Counterclaim-Defendant Align Technology, Inc.

Dated: January 2, 2025          */s/ Mark A. Ford*

Counsel for Defendants and Counterclaim-Plaintiffs ClearCorrect Operating, LLC, ClearCorrect Holdings, Inc., Straumann USA, LLC, and Institut Straumann AG

**IT IS ORDERED** that the foregoing Stipulated Order Regarding Discovery of Electronically Stored Information is approved.

**SIGNED** this 6th day of January, 2025.

_____
DEREK T. GILLILAND
United States Magistrate Judge

# APPENDIX 1

# PRODUCTION FORMAT AND METADATA

1. **Production Components.** Productions shall include single page TIFFs, Text Files, and ASCII delimited metadata file (.txt, .dat, or .csv), and an image load file that can be loaded into commercially acceptable production software (*e.g.*, Concordance).

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. With the exception of the CUSTODIAN field, the parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document. The metadata file shall be delimited according to the following characters:

   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174) or \r\n (ASCII Code 013)
   - Multi-value delimiter - ; (ASCII Code 059)

| Field Name | Field Description |
| --- | --- |
| AUTHOR | Author from the properties of the document |
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | Unique number identifying the first page or first document of a document Attachment(s) |
| ENDATTACH | Unique number identifying the last page or last document of a document Attachment(s) |
| ATTACHCOUNT | Number of attachment(s) |

| FAMILYRANGE | Beginning Bates number through unique number identifying the last page or last document of a document Attachment(s) |
|---|---|
| PAGECOUNT | Number of pages comprising the document. |
| PRODVOLUME | Identifies production media deliverable |
| CUSTODIAN | Name of the custodian(s) of the file(s) produced (last name, first name) |
| ALLCUSTODIANS | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent (format: HH:MM:SS) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| EMAIL SUBJECT | The subject line of an email. |
| FILENAME | Filename of an electronic document (Edoc or attachment) |

| FILEEXT | The native file's extension, e.g. docx, pdf. |
|---|---|
| DATEMOD | Date an electronic document was last modified or created (format: MM/DD/YYYY) (Edoc or attachment) |
| TIMEMOD | Time an electronic document was last modified or created (format: HH:MM:SS) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| TIMECREATED | Time the document was created (format: HH:MM:SS) (Edoc or attachment) |
| NATIVELINK | Path and filename to produced native file if applicable |
| TEXTLINK | File path to Extracted Text is preferred or OCR for scanned, hard copy documents. Documents with redactions may have OCR instead of redacted text. |
| MD5HASH | A 32 character hash value consisting of the characters A-F and 0-9. |
| CONFIDENTIALITY | Indicates if document has been designated as "CONFIDENTIAL," "ATTORNEYS' EYES ONLY," "OUTSIDE COUNSEL'S EYES ONLY," or "OUTSIDE COUNSEL RESTRICTED – SOURCE CODE" under the Protective Order. |

| FILEPATH | Original file system path. |
|---|---|

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents. A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall meet and confer to resolve the issue.

5. **Text Files**. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents, and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

6. **Image Load Files / Data Load Files**. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

7. **Bates Numbering**. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

8. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

9. **Redaction Of Information**. If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

10. **Native Files.** Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g., comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in either their native format or MS Excel. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

12. **Production Media.** Documents shall be encrypted and produced on external hard drives, readily accessible computer(s), other electronic media, or produced by email via secure file transfer protocols ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"). If produced in a physical format, each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; and (3) the Bates Number range of the materials contained on the Production Media.