# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., | Case No. 6:24-cv-00187-ADA-DTG |
| Plaintiff, | PATENT CASE |
| v. | **JURY TRIAL DEMANDED** |
| CLEARCORRECT OPERATING, LLC, CLEARCORRECT HOLDINGS, INC., & INSTITUT STRAUMANN AG, | |
| Defendants. | |
| CLEARCORRECT OPERATING, LLC, CLEARCORRECT HOLDINGS, INC., & STRAUMANN USA, LLC, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| ALIGN TECHNOLOGY, INC., | |
| Counterclaim-Defendant. | |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT ALIGN TECHNOLOGY, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS REGARDING ALIGN'S MOTION TO DISMISS CLEARCORRECT'S COUNTERCLAIMS**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ....................................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................. 2

STANDARD OF REVIEW ....................................................................................... 2

ARGUMENT ............................................................................................................. 2

    I       The R&R Incorrectly Applied the Law Regarding the Continuing
           Violation Exception to the Statute of Limitations. ................................. 2

    II     The R&R Erroneously Concluded ClearCorrect Need Not Allege Any
           Independently Actionable Conduct ....................................................... 5

         a)    The R&R Did Not Address Align's Arguments that ClearCorrect
               Failed to Plead a Tying Claim. ............................................... 7

         b)    The R&R Applied the Wrong Legal Test for a Refusal to Deal. ............... 8

         c)    The R&R Erroneously Deferred Analysis of Alleged Exclusive
               Dealing Based on Conclusory Allegations of Substantial
               Foreclosure. ............................................................................ 9

    III    The R&R Incorrectly Held That Straumann Adequately Alleged Antitrust
           Injury. ................................................................................................ 11

    IV    The R&R Incorrectly Held ClearCorrect Pled a Breach of Contract Claim. ........ 13

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3Shape Trios A/S v. Align Tech., Inc.*,
No. 18-1332-LPS (D. Del. Oct. 28, 2019), ECF. No. 63 ......................................................1

*Allen v. Dairy Farmers of Am., Inc.*,
748 F. Supp. 2d 323 (D. Vt. 2010)...........................................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................7

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985)............................................................................................................8, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................7

*Bob Maxfield, Inc. v. Am. Motors Corp.*,
637 F.2d 1033 (5th Cir. 1981) ................................................................................................9

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*,
49 F.4th 520 (5th Cir. 2022) ...........................................................................................10, 11

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ................................................................................................3

*Dreamstime.com, LLC v. Google LLC*,
54 F.4th 1130 (9th Cir. 2022) .................................................................................................5

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*,
472 F.3d 23 (2d Cir. 2006).......................................................................................................9

*Emrit v. Nat'l Acad. of Recording Arts & Scis.*,
No. 14-cv-392-SS, 2015 WL 518774 (W.D. Tex. Feb. 5, 2015)...........................................14

*Fresenius Kabi USA, LLC v. Par Sterile Prods., LLC*,
841 F. App'x 399 (3d Cir. 2021) ...........................................................................................12

*FTC v. Qualcomm, Inc.*,
969 F.3d 974 (9th Cir. 2020) ..................................................................................................8

*Go Green Botanicals, Inc. v. Tri-State Ins. Co. of Minn.*,
No. 22-cv-373-ESC, 2022 WL 3216142 (W.D. Tex. Aug. 9, 2022).....................................13

*Gurrola v. Walgreen Co.*,
  No. EP-17-CV-00078-DCG, 2017 WL 6764324 (W.D. Tex. Nov. 15, 2017),
  *aff'd*, 791 F. App'x 503 (5th Cir. 2020) .................................................................. 11

*In re Humira (Adalimumab) Antitrust Litig.*,
  465 F. Supp. 3d (N.D. Ill. 2020), *aff'd sub nom. Mayor & City Council of
  Baltimore v. AbbVie Inc.*, 42 F.4th 709 (7th Cir. 2022) ..................................... 7, 12

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984), *abrogated on other grounds by Ill. Tool Works Inc. v.
  Indep. Ink, Inc.*, 547 U.S. 28 (2006) ................................................................... 7

*New York v. Facebook, Inc.*,
  549 F. Supp. 3d 6 (D.D.C. 2021), *aff'd sub nom. New York v. Meta Platforms,
  Inc.*, 66 F.4th 288 (D.C. Cir. 2023) ...................................................................... 6

*Novell, Inc. v. Microsoft Corp.*,
  731 F.3d 1064 (10th Cir. 2013) ............................................................................ 8

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009) ................................................................................... 5, 6, 9

*PNY Techs., Inc. v. SanDisk Corp.*, No. 11–cv–04689–WHO, 2014 WL 1677521,
  at *5-6 (N.D. Cal. Apr. 25, 2014) ....................................................................... 10

*Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
  517 F.2d 117 (5th Cir. 1975) ........................................................................... 3, 4

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*, No. SACV 12–2102–JST (ANx),
  2013 WL 3936394, at *4 (C.D. Cal. July 30, 2013) ............................................. 10

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  614 F.3d 57 (3d Cir. 2010) ................................................................................. 9

*Rx.com, Inc. v. Medco Health Sols., Inc.*,
  No. 5:04-CV-227-DF, 2008 WL 11449354 (E.D. Tex. Mar. 11, 2008), *aff'd
  sub nom. Rx.com v. Medco Health Sols., Inc.*, 322 F. App'x 394 (5th Cir.
  2009) .............................................................................................................. 4

*Shamrock Mktg., Inc. v. Bridgestone Bandag, LLC*,
  775 F. Supp. 2d 972 (W.D. Ky. 2011) .................................................................. 8

*Simon & Simon, PC v. Align Tech., Inc.*,
  533 F. Supp. 3d 904 (N.D. Cal. 2021) ......................................................... 1, 7, 10

*Simon & Simon v. Align Tech., Inc. and Snow et al. v. Align Tech., Inc.*,
  Nos. 20-cv-03754-VC & 21-cv-03269-VC, 2024 WL 710623 (N.D. Cal. Feb.
  21, 2024) ....................................................................................................... 1, 6, 10

*Tampa Elec. Co. v. Nashville Coal Co.*,
365 U.S. 320 (1961) ................................................................................................10, 11

*United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*,
892 F. Supp. 890 (W.D. Tex. 1995), *aff'd*, 89 F.3d 233 (5th Cir. 1996) ..................................3

*Valassis Commc'ns, Inc. v. News Corp.*,
No. 17-cv-7378 (PKC), 2019 WL 802093 (S.D.N.Y. Feb. 21, 2019) ......................................6

*Virgin Atl. Airways Ltd. v. Brit. Airways PLC*,
257 F.3d 256 (2d Cir. 2001) ......................................................................................9

*Yeti Coolers, LLC v. RTIC Coolers, LLC*,
No. 1:15-CV-00597-RP, 2016 WL 5956081 (W.D. Tex. Aug. 1, 2016) ..............................11

**Statutes**

28 U.S.C. § 636(b)(1) ............................................................................................1, 2

Sherman Act ........................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 72 ...............................................................................................1, 2

Fed. R. Civ. P. 12(b)(6) .........................................................................................13

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
Principles & Their Application*, § 320 (Sept. 2024 update) ................................................3, 4

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1), Plaintiff/Counterclaim-Defendant, Align Technology, Inc. ("Align") files these objections to the Magistrate Judge's February 7, 2025 Report and Recommendation (ECF No. 154) (hereinafter, the "R&R"). Align respectfully requests that the Court sustain its objections and dismiss Defendants/Counterclaim-Plaintiffs ClearCorrect Operating, LLC, ClearCorrect Holdings, Inc., and Straumann USA, LLC's (collectively "ClearCorrect") Counterclaims.

ClearCorrect's antitrust counterclaims merely repackage stale and fruitless allegations that have already been litigated and adjudicated in Align's favor after years of voluminous, complex discovery. *See Simon & Simon, PC v. Align Tech., Inc.* and *Snow et al. v. Align Tech., Inc.*, Nos. 20-cv-03754-VC & 21-cv-03269-VC, 2024 WL 710623 (N.D. Cal. Feb. 21, 2024) (granting summary judgment to Align). On a complete record, the court in the Northern District of California found no cognizable exclusionary conduct, rejecting a refusal-to-deal claim based on the termination of Invisalign interoperability with a scanner competitor and allegations of exclusive dealing relating to loyalty and discount programs as well as agreements with dental service organizations ("DSOs"). *Id.* ClearCorrect's allegations also mirror claims made publicly *over five years ago* in October 2019, and such allegations are stale on their face. *See* Am. Compl., ¶¶ 10-16, *3Shape Trios A/S v. Align Tech., Inc.,* No. 18-1332-LPS (D. Del. Oct. 28, 2019), ECF. No. 63. Confronted with its serial patent infringement, ClearCorrect recycles rejected and stale claims and refiles them as counterclaims here.

## SUMMARY OF ARGUMENT

This Court should not adopt several of the R&R's findings and recommendations because it (1) applies the wrong law regarding a continuing violation exception to the statute of limitations; (2) erroneously amalgamates ClearCorrect's allegations and considering them as a whole without applying the respective legal tests to independently lawful alleged conduct; (3) fails to address Align's arguments that ClearCorrect failed to state a tying claim as matter of law; (4) applies an incorrect formulation of the legal test for a refusal to deal; (5) defers analysis of alleged exclusive deals until summary judgment based on ClearCorrect's conclusory allegations of substantial foreclosure; (6) declines to decide the question of antitrust injury at the pleading stage; (7) declines to interpret the Agreement, despite the absence of disputed factual issues; and (8) incorrectly allows "reputational harm" to serve as the basis for contractual damages.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 72 provides that the Court determines "de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Per 28 U.S.C. § 636(b)(1), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations" of the R&R.

## ARGUMENT

**I      The R&R Incorrectly Applied the Law Regarding the Continuing Violation Exception to the Statute of Limitations.**

The R&R incorrectly applied the law regarding the "continuing violation" exception to the statute of limitations, erroneously concluding that because ClearCorrect simply "alleged ongoing conduct, they have alleged antitrust violations that occurred within the limitations period and are not time-barred." R&R at 3. Contrary to the R&R, it is not enough to allege "continuing conduct" on its own — at a minimum, ClearCorrect was required to allege "an injurious act ***separate from***

***the prior alleged misconduct***" that occurred in the limitations period. *United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*, 892 F. Supp. 890, 912 (W.D. Tex. 1995), *aff'd*, 89 F.3d 233 (5th Cir. 1996) (emphasis added). ClearCorrect fails to allege a separate act occurring within the limitations period, and the R&R does not address this requirement. This constitutes legal error, and the Court should decline to adopt the R&R's findings on the limitations issue.

The R&R misplaces reliance on *Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 126-27 (5th Cir. 1975) to conclude "with continuing conduct each time an improper act occurs a cause of action accrues." R&R at 3. However, *Poster Exch., Inc.* articulated such a standard expressly "[i]n the context of a continuing conspiracy," a particular type of claim where each overt act in furtherance of the alleged conspiracy restarts the limitations period. 517 F.2d at 127. But ClearCorrect has not alleged any conspiracy here, and this authority is inapposite. *See* ECF No. 124 at 2. Outside the conspiracy context, "acts that simply reflect or implement a prior refusal to deal or acts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1052 (8th Cir. 2000) (citation omitted). Even if the continuing conspiracy authority were applicable here, a claim "must be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action." *Poster Exch., Inc.*, 517 F.2d at 128. Under Fifth Circuit law, "continuing conduct within the limitations period which merely furthers the initial antitrust violation does not prevent the running of the statute of limitations."[1] *United Farmers Agents Ass'n, Inc.*, 892 F. Supp. at 912 (citing *Al George, Inc. v.*

---

[1] The leading antitrust treatise provides further guidance "[i]n considering whether ongoing actions are 'independent' or merely 'reaffirmations,'" noting that "more recent decisions have paid increased attention to what the plaintiff knew or should have known when the initial act constituting the violation occurred." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles & Their Application*, § 320 (Sept. 2024 update). An analysis of recent decisions revealed "the most reliable way to predict outcomes is to separate situations where

*Envirotech Corp.*, 939 F.2d 1271, 1275 (5th Cir. 1991)); *see also Rx.com, Inc. v. Medco Health Sols., Inc.*, No. 5:04-CV-227-DF, 2008 WL 11449354, at *7-8 (E.D. Tex. Mar. 11, 2008) (statute of limitations not tolled by repeatedly declining to fill prescriptions pursuant to defendant's previous refusal to admit plaintiff to its subscription fulfillment network), *aff'd sub nom. Rx.com v. Medco Health Sols., Inc*., 322 F. App'x 394 (5th Cir. 2009). Accordingly, the court must determine "whether there was, during the period sued upon, a mere absence of dealing, or whether there was some specific act or word" of refusal. *Poster Exch., Inc.*, 517 F.2d at 132 (remanding case to the district court to make this "necessary" determination). Here, ClearCorrect points only to an alleged 2023 renewal of Align's agreement with Heartland Dental, LLC – but that agreement did not require doctors to exclusively use or prescribe Align's products. *See* ECF No. 124 at 3. Moreover, a renewal is nothing more than a continuation of earlier acts, which is insufficient to restart the statute of limitations. *See e.g.*, *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 350 (D. Vt. 2010) (collecting cases and explaining the weight of authority holds that "renewal of an existing agreement falls squarely within the 'reaffirmation' exception to the continuing violation doctrine"). The R&R did not make the critical determination regarding whether ClearCorrect alleged a specific, independent act occurring during the limitations period—as distinguished from the mere consequences or implementation of some pre-limitations action—and

---

an injured plaintiff had actual knowledge of a violating act and had suffered sufficient injury (statute not tolled) from those where the plaintiff had no knowledge or its knowledge was incomplete or imperfect (statute tolled)." *Id.* While courts are "quick to extend the statute" in conspiracy cases involving price fixing or cartels (where acts are often concealed), "courts show much more reluctance[] . . . in the typical refusal to deal, tying, or exclusive dealing case, [when] the injured party and likely plaintiff has virtually immediate knowledge of the unlawful act." *Id.* In this case, ClearCorrect does not contest that it had knowledge of Align's decision to end interoperability with scanner competitor 3Shape since 2017 (CC ¶ 70), or Align's partnership with Heartland Dental since it was publicly announced in 2018 (CC ¶ 81) — yet ClearCorrect did not file suit during the four years thereafter. The statute of limitations is not tolled under such circumstances, and ClearCorrect's claims are properly dismissed as time-barred.

thus the Court should decline to adopt its recommendation on limitations issues.

## II    The R&R Erroneously Concluded ClearCorrect Need Not Allege Any Independently Actionable Conduct.

The R&R's finding that all of ClearCorrect's allegations of exclusionary conduct could be considered as a whole, without determining whether any of the alleged conduct is independently actionable—*see* R&R at 5 ("evaluating [Straumann's] allegations requires considering all of the facts together"; finding that "Defendants' detailed factual pleadings, when considered as a whole" meet the pleading standard), 6 ("Defendants have alleged that the totality of this conduct" is actionable)—is contrary to established antitrust law, and to the Supreme Court's decision in *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). *linkLine* precludes antitrust liability based on individually lawful conduct. ECF No. 96 at 15. Emphasizing the importance of "clear rules in antitrust law," the Supreme Court rejected the recognition of claims based on an "amalgamation" of multiple "meritless claim[s]" that would require courts "to act as central planners, identifying the proper price, quantity, and other terms of dealing." *linkLine*, 555 U.S. at 450, 452 (citation omitted). If "each individual action alleged by [plaintiff] does not rise to anticompetitive conduct in the relevant market, their collective sum likewise does not." *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1142 (9th Cir. 2022) (finding "there can be no synergistic result from a number of acts none of which show causal antitrust injury to the plaintiff" to be dispositive). In order to proceed under a theory that the "combined effect" of alleged conduct is anticompetitive, an antitrust plaintiff must plead at least one instance of unlawful anticompetitive conduct under the developed legal rules governing such claims. *See* ECF No. 124 at 9 (citing *3Shape TRIOS A/S v. Align Tech., Inc.*, No. 18-1332-LPS, ECF No. 59 at 20-23 (D. Del. Aug. 15, 2019) *adopted by* ECF No. 62 (D. Del. Sept. 26, 2019)). The R&R's finding that "evaluating [ClearCorrect's] allegations requires considering all of the facts together"—

without regard to whether the alleged anticompetitive conduct was independently actionable—is equivalent to holding that 0+0=1 and is therefore erroneous. R&R at 5; *cf. linkLine*, 555 U.S. at 457 ("Two wrong claims do not make one that is right.").

The "amalgamation" of the very same allegations at issue here has already been rejected by two separate judges. *See* ECF No. 96 at 15-16. Most recently, Judge Chhabria granted summary judgment in favor of Align on essentially the same allegations at issue here, holding (in part) that "[a]lthough the remainder of Align's allegedly anticompetitive actions [(*e.g.*, improper bundling and exclusive dealing)] might have combined with the [plaintiffs' non-viable] refusal-to-deal claim to form the basis of a larger antitrust claim, *they cannot stand on their own*." *Simon & Simon,* 2024 WL 710623, at *2 (emphasis added).

So too here. ClearCorrect has not adequately alleged an unlawful refusal to deal (*see infra* Section II(b)), and a refusal to deal that is not independently unlawful can never be aggregated into an amalgamated claim. *See linkLine*, 555 U.S. at 452 (rejecting attempted "amalgamation of a meritless claim"—a wholesale refusal to deal theory); *see also New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 47 (D.D.C. 2021) (collecting cases and noting that refusals to deal "do not fit" the monopoly broth paradigm), *aff'd sub nom. New York v. Meta Platforms, Inc.,* 66 F.4th 288 (D.C. Cir. 2023). Because ClearCorrect's tying claim is really a refusal to deal claim, it similarly cannot be amalgamated into a claim. But even if the Court were to look at ClearCorrect's tying claim as distinct from its refusal to deal claim, the Complaint lacks any allegations that customers were compelled (or effectively compelled) to purchase an iTero, *see* ECF No. 124 at 5, and so the tying claim cannot be aggregated. Finally, because the short-term loyalty and volume discounts that underpin ClearCorrect's exclusive dealing claim (*see* CC ¶¶ 103-129) are lawful, they also cannot be aggregated. *See Valassis Commc'ns, Inc. v. News Corp.*, No. 17-cv-7378 (PKC), 2019 WL

802093, at \*9 (S.D.N.Y. Feb. 21, 2019); *Simon & Simon, PC v. Align Tech., Inc.*, 533 F. Supp. 3d 904, 913 (N.D. Cal. 2021) ("[A] system for providing short-term volume discounts [is] too innocuous to add anything to the plaintiffs' section 2 claim.").

Without actionable anticompetitive conduct, dismissal is proper because the law prohibits aggregating meritless claims into a "broth." The R&R therefore erred in considering all of ClearCorrect's allegations as a whole, rather than first evaluating whether ClearCorrect pled independently actionable anticompetitive conduct (and, as discussed further below, it did not). *See* R&R at 5; *see also In re Humira (Adalimumab) Antitrust Litig.,* 465 F. Supp. 3d at 827 (N.D. Ill. 2020) ("The complaint brings together a disparate set of aggressive but mostly protected actions to allege a scheme to harm competition and maintain high prices. The allegations—even when considered broadly and together for their potential to restrain trade—fall short of alleging the kind of competitive harm remedied by antitrust law."), *aff'd sub nom. Mayor & City Council of Baltimore v. AbbVie Inc.*, 42 F.4th 709 (7th Cir. 2022).

### a) The R&R Did Not Address Align's Arguments that ClearCorrect Failed to Plead a Tying Claim.

The R&R did not address Align's arguments that ClearCorrect failed to state a tying claim as a matter of law. *See* ECF No. 96 at 9-12; ECF No. 124 at 4-6. Specifically, ClearCorrect failed to plausibly allege a required element of a tying claim: force or coercion. *See Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984), *abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006). The counterclaims contain only conclusory allegations that doctors are "forced" to purchase an iTero, but these naked assertions are not entitled to be assumed true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("naked assertion of conspiracy" fails to establish "plausibility of 'entitle[ment] to relief[]'"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009). ClearCorrect does not allege that Align ever conditioned the sale of Invisalign on the

purchase of an iTero or vice versa; rather, ClearCorrect concedes doctors may use PVS to order Invisalign without an iTero scanner and that iTero users can export scans to order competing aligners. *See* CC ¶¶ 86-87, 174; ECF No. 115 at 16-17. ClearCorrect asks the court to ***infer*** a tying arrangement without the required showing of coercion. *See* ECF No. 115 at 16-17. But even ClearCorrect's own cited authority provides that "[c]ourts should only in the rarest of circumstances and under the most coercive of conditions infer a tying arrangement." *Shamrock Mktg., Inc. v. Bridgestone Bandag, LLC*, 775 F. Supp. 2d 972, 981 (W.D. Ky. 2011). ClearCorrect's allegations do not establish that coercive conditions are present here and are therefore insufficient to state a cause of action. Because the R&R does not make any findings with respect to Align's arguments that ClearCorrect failed to sufficiently plead the elements of a tying claim, the Court should not adopt the R&R's conclusion that ClearCorrect's pleadings "as a whole" meet the pleading standard.

### b)     The R&R Applied the Wrong Legal Test for a Refusal to Deal.

The R&R erroneously applies the legal tests for tying and refusal to deal, concluding that ClearCorrect satisfied the pleading requirements under *Aspen Skiing* by alleging "termination [of] an allegedly profitable course of conduct to impose an allegedly improper policy of tying access to Plaintiff's aligners to Plaintiff's iTero scanner." R&R at 6. But *Aspen Skiing* requires that an actionable refusal to deal involve conduct with no "efficiency justification whatever for its pattern of conduct." *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 608 (1985); *see also Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013) ("conduct must be irrational but for its anticompetitive effect"); *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 993-94 (9th Cir. 2020) ("the only conceivable rationale or purpose is to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition") (internal quotation marks omitted) (citations omitted). The R&R did not address Align's argument that ClearCorrect

failed to plausibly allege that the 3Shape termination was irrational but for its anticompetitive effect. *See* ECF No. 96 at 12-13. Rather, the R&R's conflation of the pleading requirements under *Aspen Skiing* and improper application of the legal test only underscores that ClearCorrect's tying claim is actually a refusal to deal claim in disguise. According to ClearCorrect, the only way to "untie" Invisalign and iTero would be to force Align to deal with competitors and start allowing their scanners to submit Invisalign orders. ECF No. 124 at 4-5. Common sense thus makes clear that this is a refusal to deal claim. ClearCorrect's attempts to disguise it are to avoid binding Supreme Court doctrine. "[B]usinesses are free to choose the parties with whom they will deal," and Align has no duty to aid its scanner competitors by facilitating their access to Invisalign. *See linkLine*, 555 U.S. at 448. ClearCorrect's refusal to deal allegations therefore must be dismissed.

### c) The R&R Erroneously Deferred Analysis of Alleged Exclusive Dealing Based on Conclusory Allegations of Substantial Foreclosure.

The R&R improperly accepted ClearCorrect's conclusory allegations of substantial foreclosure and deferred analysis on "whether the alleged loyalty scheme is proper or not" until summary judgment. R&R at 6. However, exclusivity agreements are generally permissible and are "presumptively legal." *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 30 (2d Cir. 2006)); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010). Loyalty programs and volume discount incentives "promote[] competition on the merits" and benefit consumers. *Virgin Atl. Airways Ltd. v. Brit. Airways PLC*, 257 F.3d 256, 265 (2d Cir. 2001). Federal antitrust law protect competition, not competitors; the "mere existence of an exclusive dealing clause in a contract does not establish an antitrust violation." *See Bob Maxfield, Inc. v. Am. Motors Corp.*, 637 F.2d 1033, 1036 (5th Cir. 1981). ClearCorrect did not allege enough factual detail to show that any of the alleged exclusive agreements are not procompetitive, *i.e.*, encouraged under antitrust law. *See* ECF No. 96 at 14-15; ECF No. 124 at 7-9. The R&R relies

only on allegations of "multiyear contracts," such as "three-year discount programs." R&R at 6. But contracts lasting just a few years are generally viewed as short-term in the antitrust context. In *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, a district court granted a motion to dismiss Sherman Act claims based on exclusive dealing where "[plaintiff] had alleged only the existence of the exclusivity agreements and [defendant]'s market power." No. SACV 12–2102–JST (ANx), 2013 WL 3936394, at *4 (C.D. Cal. July 30, 2013). As part of its analysis, that court noted the short duration (2-5 years) and easy terminability (10 days – 1 year notice) of the contracts, noting such agreements "can promote competition." *Id.* at *2, *4. Similarly, in *PNY Techs., Inc. v. SanDisk Corp.*, the court granted a motion to dismiss after weighing the relatively short duration of the contracts, noting courts have characterized a contract term of three years as "relatively short." No. 11–cv–04689–WHO, 2014 WL 1677521, at *5-6 (N.D. Cal. Apr. 25, 2014). In the prior California cases, the Court evaluated Align's same discount programs and its DSO contracts on a complete factual record and found "they cannot stand on their own" as a basis for antitrust liability. ECF No. 96 at 5; *Simon & Simon, PC*, 2024 WL 710623, at *2. Even at the motion to dismiss phase, the court recognized "the exclusive dealing allegations cannot be understood as a section 2 violation on their own" and could not survive without a legally sufficient refusal-to-deal claim. *Simon & Simon, PC v. Align Tech., Inc.*, 533 F. Supp. 3d 904, 918 (N.D. Cal. 2021).

An exclusive arrangement that forecloses competition in some relatively inconsequential portion of the market is not actionable; an exclusive dealing contract runs awry of antitrust law only when it substantially forecloses a large share of the relevant market. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) (exclusive dealing is only actionable if "the contract will foreclose competition in a substantial share of the line of commerce affected"); *BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 530 (5th Cir. 2022) ("substantial

foreclosure is a prerequisite for every exclusive-dealing Section 2 claim"). In this case, ClearCorrect failed to show, as it was required to do, that long-term exclusive agreements are so widespread as to keep rivals below the scale needed to compete. *See Gurrola v. Walgreen Co.*, No. EP-17-CV-00078-DCG, 2017 WL 6764324, at *4 & n.2 (W.D. Tex. Nov. 15, 2017), *aff'd*, 791 F. App'x 503 (5th Cir. 2020); *Tampa Elec. Co.*, 365 U.S. at 328. ClearCorrect instead offered only a conclusory allegation of 60% foreclosure without any factual support for how it arrived at that figure. *See BRFHH Shreveport, LLC*, 49 F.4th at 525 (Courts "don't accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'") (citation omitted).

Allegations that ClearCorrect lost sales or profits to competition from Align are "irrelevant for foreclosure purposes" in the absence of allegations that ClearCorrect has been shut out of competing in the market. *BRFHH Shreveport, LLC*, 49 F.4th at 530. ClearCorrect does not allege that it, nor any other competitors, have been unable to achieve growth or profitability, a fatal pleading deficiency coming from a competitor.[2] *See* ECF No. 124 at 9. In *Yeti Coolers, LLC v. RTIC Coolers, LLC*, No. 1:15-CV-00597-RP, 2016 WL 5956081, at *5 (W.D. Tex. Aug. 1, 2016), the court dismissed an antitrust counterclaim where a competitor failed to allege an exclusive dealing arrangement had or actually could prevent it from competing. The Court should therefore reject the R&R's recommended finding that ClearCorrect adequately plead substantial foreclosure.

**III    The R&R Incorrectly Held That Straumann Adequately Alleged Antitrust Injury.**

The R&R recommends that the portion of Align's Motion contending that ClearCorrect

---

[2] Straumann has publicly reported "double-digit growth in its ClearCorrect clinician brand," and told investors "the ClearCorrect business is well positioned for future growth." *See* Straumann Grp., 2023 Full-Year Results at 4, https://www.straumann.com/content/dam/media-center/group/en/documents/annual-report/2023/Full_Year_Results_2023_Straumann_Group_Media_Release.pdf; Straumann Grp., 2023 Annual Report at 25, https://www.straumann.com/content/dam/media-center/group/en/documents/annual-report/2023/Straumann_AR23.pdf. Such statements are fundamentally inconsistent with ClearCorrect's conclusory allegations of substantial foreclosure.

cannot assert an antitrust injury be denied, finding that "allegations of patent infringement are not a defense to an antitrust claim at the pleading stage." R&R at 4. But contrary to the R&R's finding, "[t]here is no hard-and-fast rule against deciding the question of antitrust injury at the pleading stage," and ClearCorrect has not adequately alleged antitrust injury. *See In re Humira,* 465 F. Supp. 3d at 846 (citing *McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.,* 937 F.3d 1056, 1061 (7th Cir. 2019) (upholding dismissal on antitrust injury grounds at the motion to dismiss stage); *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, 317 F.3d 703, 712–13 (7th Cir. 2003) (same)).

Antitrust injury "must flow directly from the anticompetitive aspect of the practice under scrutiny." *See In re Humira*, 465 F. Supp. 3d at 843 (citing *McGarry*, 937 F.3d at 1065). ClearCorrect has not met its burden to plausibly plead antitrust injury arising from something *other than* Align's patent right enforcement and lawful, vigorous competition through discounts and product innovation. *See* Dkt. 96 at 7-9, Dkt. 124 at 3-4. ClearCorrect merely alleges that it suffered "lost profits" as a result of: (1) Align exercising its right to enforce its patents, *see* CC ¶ 1; and (2) Align's lawful, vigorous competition, *see supra* Sections II(b)-(c). But such allegations are insufficient to allege antitrust injury at the pleading stage. *See In re Humira,* 465 F. Supp. 3d at 846 (plaintiffs "failed to plausibly allege that the but-for cause of Humira's monopoly prices was . . . AbbVie's unlawful assertion of its patent thicket[.]"). This is especially true where a plaintiff's patent infringement precludes its lawful market entry in the first instance. *See Fresenius Kabi USA, LLC v. Par Sterile Prods., LLC*, 841 F. App'x 399, 403 (3d Cir. 2021); *see also* Dkt. 96 at 8; Dkt. 124 at 4. Dismissal on antitrust injury grounds is therefore appropriate here.

**IV     The R&R Incorrectly Held ClearCorrect Pled a Breach of Contract Claim.**

Judge Gilliland's R&R denying Align's motion to dismiss ClearCorrect's breach of contract claims[3] should be overruled for two reasons: (1) no factual issue bars the dismissal of ClearCorrect's breach claims; and (2) ClearCorrect failed to plead recoverable damages.

First, "[b]ecause contract construction is generally decided as a matter of law, interpretation of a contract is generally suitable for disposition on a motion to dismiss for failure to state a claim upon which relief can be granted." *Go Green Botanicals, Inc. v. Tri-State Ins. Co. of Minn.*, No. 22-cv-373-ESC, 2022 WL 3216142, at *2 (W.D. Tex. Aug. 9, 2022). The parties do not dispute the relevant facts underlying each of ClearCorrect's breach claims.

Absent any factual dispute, Judge Gilliland was free to interpret the Agreement and compare it to the alleged conduct. He did not. Instead, his R&R determined that Defendants' breach counterclaims meet the Rule 12(b)(6) standard because they "identif[ied] the contract at issue" and "stated the conduct they believe breached the agreement." ECF No. 154 at 7.

As the parties' dispute is legal and not factual, the Court may decide the issue now. Whether the Agreement ███████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ are straightforward matters of contract interpretation that favor Align. The parties also have engaged in mediation, █████████████████████████████████ *See* ECF No. 156. Align asks the Court to overrule the R&R and dismiss ClearCorrect's breach counterclaims.

Second, ClearCorrect failed to plead a recoverable category of damages that could sustain its breach counterclaims. The R&R deemed ClearCorrect's damages pleading sufficient based

---

[3] ClearCorrect's breach counterclaims are for ███████████████████████████████ ██████████████████████████████████ ECF No. 49, ¶¶ 274-293.

*only* on its assertion of purported "reputational harm." ECF No. 154 at 7. But "[d]amages to business reputation are not recoverable in a breach of contract claim." *Emrit v. Nat'l Acad. of Recording Arts & Scis.*, No. 14-cv-392-SS, 2015 WL 518774, at *3 (W.D. Tex. Feb. 5, 2015). As that reputational harm is insufficient to support ClearCorrect's breach claims, the Court should overrule the R&R on this independent basis as well.

## CONCLUSION

For the foregoing reasons, Align respectfully requests that the Court dismiss ClearCorrect's Counterclaims.

DATED: February 21, 2025                    *Respectfully submitted,*

By: */s/ James M. Pearl*
James M. Pearl

James M. Pearl (*pro hac vice*)
Emma Farrow (*pro hac vice*)
Taylor Farias (*pro hac vice*)
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, California 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899
jamespearl@paulhastings.com
emmafarrow@paulhastings.com
taylorfarias@paulhastings.com

Thomas A. Counts (*pro hac vice*)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
tomcounts@paulhastings.com

Michael F. Murray (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, DC 20036

Telephone: (202) 551-1700
Facsimile: (202) 551-1705
michaelmurray@paulhastings.com

Adam M. Reich (*pro hac vice*)
PAUL HASTINGS LLP
71 South Wacker Drive, 45th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
adamreich@paulhastings.com

Brian C. Nash (TX Bar No. 24051103)
Austin M. Schnell (TX Bar No. 24095985)
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, Texas 78701
Telephone: (512) 617-0650
Facsimile: (737) 910-0730
bnash@mofo.com
aschnell@mofo.com

Daralyn J. Durie (*pro hac vice*)
Rich S.J. Hung (*pro hac vice*)
Forrest McClellen (*pro hac vice*)
Ian Bennett (*pro hac vice*)
Jenny Xin (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market St.
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
ddurie@mofo.com
rhung@mofo.com
fmcclellen@mofo.com
ibennett@mofo.com
jxin@mofo.com

Bradley S. Lui (*pro hac vice*)
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
blui@mofo.com

Amanda A. Potter (*pro hac vice*)
Malavika M. Fitzgerald (*pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
apotter@mofo.com
mfitzgerald@mofo.com

*Attorneys for Plaintiff and Counterclaim Defendant Align Technology, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented

to electronic service are being served with a copy of this document via email on February 21, 2025.


_____*/s/ James M. Pearl*_____
James M. Pearl