IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CLEARCORRECT OPERATING, LLC,<br>CLEARCORRECT HOLDINGS, INC.,<br>INSTITUT STRAUMANN AG,<br>& STRAUMANN USA, LLC<br><br>        Defendants.<br><br>CLEARCORRECT OPERATING, LLC,<br>CLEARCORRECT HOLDINGS, INC., &<br>STRAUMANN USA, LLC,<br><br>        Counterclaim-Plaintiffs,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>        Counterclaim-Defendant. | Case No. 6:24-cv-00187-ADA-DTG |

## ORDER ON DISCOVERY DISPUTES

Before the Court are several discovery dispute charts submitted by the Parties, attached hereto as Exhibits 1 through 5. The Court has reviewed the dispute charts, along with the accompanying materials submitted with the charts. The Court has determined that a hearing is not necessary and issues the following rulings:

1. As for the December 18, 2025 Discovery Dispute Chart (Exhibit 1), it is **ORDERED** that ClearCorrect must review all briefing, supporting exhibits, responses to discovery

requests, declarations, testimony, expert reports, and other documents that it served or filed in *SoftSmile, Inc. v. Institut Straumann AG et al.*, No. 22-cv-01189 (D. Del.) for responsiveness to Align's discovery requests and produce all responsive documents by **April 4, 2025**.

2. As for the February 11, 2025 Discovery Dispute Chart (Exhibit 2), Align is **ORDERED** to submit the unredacted documents, along with the supporting documents mentioned in the Chart, to Chambers for an *in camera* review on, or before, **March 26, 2025**. Align shall email the documents to the Court's email address for the law clerks.

3. As for the February 13, 2025 Dispute Chart (Exhibit 3), both Parties are **ORDERED** to supplement their interrogatory responses by identifying specific responsive documents under Fed. R. Civ. P. 33(d) by **March 28, 2025**; otherwise, the request is **DENIED**.

4. As for the February 18, 2025 Dispute Chart (Exhibit 4), both Parties are **ORDERED** to supplement their interrogatory responses by identifying specific responsive documents under Fed. R. Civ. P. 33(d) by **March 28, 2025**; otherwise, the request is **DENIED**.

5. As for the February 25, 2025 Discovery Chart (Exhibit 5), both Parties are **ORDERED** to supplement their interrogatory responses by identifying specific responsive documents under Fed. R. Civ. P. 33(d) by **March 28, 2025**; otherwise, the request is **DENIED**.

**SIGNED** this 23rd day of March, 2025.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE

**EXHIBIT 1**

| Issue | Requesting Party's Position (Align) | Responding Party's Position (ClearCorrect) |
|---|---|---|
| **Align RFP 23:**<br><br>All briefing, supporting exhibits, responses to discovery requests, declarations, testimony, expert reports, and other documents that You produced, served, or filed in *SoftSmile, Inc. v. Institut Straumann AG et al.*, No. 22-cv-01189 (D. Del.), *Zircore, LLC v. Institut Straumann AG et al.*, No. 15-cv-01557 (E.D. Tex.), *Bay Materials, LLC v. 3M Company*, No. 21-cv-01610 (D. Del.) and any related mediation, arbitration, or inter partes review proceedings that refer or relate to Align, the Accused Products, the Align Products, or the Asserted Patents. | ClearCorrect continues to withhold critical discovery from the *SoftSmile* actions. The Court ordered the parties to confer regarding whether ClearCorrect must produce *SoftSmile* briefing, supporting exhibits, responses to discovery requests, declarations, testimony, and expert reports ("disputed materials"). ECF No. 128 at 1-2. At that conference, Align proposed that ClearCorrect treat the disputed materials the same as the other *SoftSmile* documents: review and produce if responsive. Yet despite demanding similar documents from Align, ClearCorrect refuses to even *review* the disputed materials on the basis of relevance, burden, and an "arbitration privilege."<br><br>Consistent with the Court's prior ruling, Align requests the Court overrule ClearCorrect's objections and order ClearCorrect to produce responsive disputed materials.<br><br>Relevance. Align previously summarized the *SoftSmile* actions. ECF No. 128 at 3-4. In brief, they involve a trade secret dispute over ClearCorrect's accused software and implicate former Align employees, including software-engineer Artem Borovinskikh and named-inventor Ian Kitching.<br><br>The disputed materials go to at least infringement, willfulness, non-obviousness, and damages. Declarations, any other testimony, and expert reports likely will recite | ClearCorrect reviewed its entire production in *SoftSmile* and re-produced all documents the Court ordered when it adopted ClearCorrect's compromise. Dkt. 128. Align now demands that ClearCorrect review and produce highly confidential briefing, expert reports, and any "other documents" from an arbitration involving different parties and claims—indeed, not involving ***any*** patent allegations and covering competitively sensitive materials having nothing to do with the asserted patent claims.<br><br>This Court routinely rejects such fishing expeditions and should do so here. *ParkerVision v. Realtek*, 6:22-cv-01162-ADA, Dkt. 123 (denying "request for invalidity/validity experts reports, expert deposition transcripts, and non-public briefing" from prior proceeding).<br><br>Privilege. Because the materials Align seeks fall squarely within the arbitration privilege, Align must show a "compelling need" for them. *Donelon v. Herbert Clough*, 2006 WL 8436296, *6 (MDLa). This protection exists to "promot[e] federal policy and encourag[e] ADR." *Id.*, *3-4. Align cannot identify any information within the sought-after materials that is "necessary" to its claims and that it cannot otherwise obtain (or has not otherwise obtained through |

| | |
|---|---|
| facts regarding the accused software's development, operation, and value.  Briefing, exhibits, and discovery responses also should reveal ClearCorrect's contentions and other information regarding those topics.  Any discussion of competition with Align also would go to ClearCorrect's antitrust counterclaims.<br><br>The few documents ClearCorrect produced from the *SoftSmile* actions to date confirm relevance. ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* CC_ALGN_00061238▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (emphasis added).  Other documents show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ CC_ALGN00062734, ▮▮ ▮▮▮▮▮▮▮▮ CC_ALGN_00063597 ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮  The story of ClearCorrect's relationship with SoftSmile—and thus of the *SoftSmile* actions—is of developing the accused software to compete with Align.<br><br>Undue Burden.  Any burden on ClearCorrect is self-imposed.  SoftSmile remains willing to produce in response to Align's subpoena, but ClearCorrect continues to object.  *E.g.*, ECF No. 78 at 3.  The Court can streamline this dispute by denying ClearCorrect's baseless motions opposing Align's subpoena. | ClearCorrect's existing production).  *Id.*, *6.<br><br>Further, contrary to Align's allegations, (1) ClearCorrect did not "waive[]" the privilege.  ClearCorrect objected to all requests that sought information "protected from discovery," and ClearCorrect asserted the arbitration privilege in correspondence and in briefing in response to Align's subpoena to SoftSmile.  *E.g.*, Dkt. 78, 7-8.  And (2) the arbitration agreement does not "expressly permit production."  Rather, the agreement provides that documents may be produced to comply with a "court order," but there is no order, and no order should issue because Align fails to show "compelling need."  *Donelon*, *4 n.5.<br><br>Irrelevance.  Align does not and cannot claim any of the arbitration materials it seeks in this motion are relevant to the claims in this case.  Instead, it offers only baseless speculation that the requested materials "*likely* will recite *facts* regarding the accused software's development, operation, and value."<br><br>First, ClearCorrect has already agreed—in response to Align's 110 RFPs ***in this case***—to produce relevant documents.  Any additional production of *SoftSmile* arbitration submissions is, thus, unnecessary.<br><br>Second, the three documents Align cites to justify its |

| | |
|---|---|
| Any burden is proportional. The disputed materials are significant and few. ClearCorrect represents they include "approximately 50 briefs, more than 100 written discovery responses, approximately two dozen expert reports, and approximately 15-20 written witness statements." Reviewing that volume of materials for responsiveness is not burdensome.<br><br>Arbitration Privilege. ClearCorrect waived this objection by not making it in its discovery response. If considered, the Court should reject it. "Discoverable information may not be shielded from disclosure merely by agreeing to maintain its confidentiality." *Cooley v. Curves Int'l, Inc.*, No. 08-MC-108, 2008 WL 11333881, at 4 (W.D. Tex. May 19, 2008). Underscoring the objection's lack of merit, SoftSmile did not raise it and the arbitration agreement expressly permits production. ECF No. 78-4, § 17.1. Even if a "compelling need" were required, Align has one: ClearCorrect is withholding key documents and has denied Align any other avenue to obtain them.<br><br>**Relief:** Order that "ClearCorrect must review all briefing, supporting exhibits, responses to discovery requests, declarations, testimony, expert reports, and other documents that it served or filed in *SoftSmile, Inc. v. Institut Straumann AG et al.*, No. 22-cv-01189 (D. Del.) for responsiveness to Align's discovery requests and produce all responsive documents by January 10, 2025." | continued demands do not demonstrate how the arbitration *submissions*—addressing non-patent disputes—would be relevant. Instead, the cited documents reflect the unremarkable fact that ClearCorrect performs competitive analyses and critiques on its own products. Many of the products referred to in these documents are not even the software products or features accused in this case.<br><br>Undue Burden. Align's fishing expedition would impose a significant burden, requiring review of thousands of pages—across approximately 50 briefs, more than 100 discovery responses, approximately two dozen expert reports, and approximately 15-20 witness statements—to determine if there is *any* relevant materials, not to mention the burden of navigating third-party confidentiality.<br><br>Finally, the Court should reject Align's attempted end-run around this Court's discovery limits by seeking production of competitively sensitive and irrelevant documents from SoftSmile directly. *See ParkerVision*, supra; *Z Best v. Sherwin-Williams*, 2017 WL 3730515, *2 (CDCA) (subpoena seeking party documents "improper"); Dkt. 78, 6-7.<br><br>**Relief:** Order that "Align's request is **denied**." |

# EXHIBIT 2

| Issue | Requesting Party's Position (ClearCorrect) | Responding Party's Position (Align) |
|---|---|---|
| Whether Align should be Ordered to produce complete, unredacted versions of the clawed-back documents previously produced by Align at Bates Nos. ALIGNAT-PURCH00434426, and ALIGNAT-PURCH00870618. | Align "clawed back" and reproduced in redacted form two emails between non-lawyer Align employees, claiming attorney-client privilege. Align did so after Align produced the same documents unredacted in *two prior cases 2+ years ago*; after Align produced them *again* here; and after ClearCorrect quoted from them in mediation briefing. Align plainly wishes to shield damaging facts from discovery, but no part of the emails is privileged, and any privilege claim was waived long ago.<br><br>*First*, neither email is privileged. In the Fifth Circuit, the "privilege is to be construed narrowly," and Align "has the burden of showing each element of the privilege." *U.S. v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997). Both emails were sent by non-lawyers to non-lawyers *only*; no attorney is copied or referenced. ALIGNAT-PURCH00434426; ALIGNAT-PURCH00870618. There is no indication that the conveyed information came from (or was intended for) counsel, or that participants considered the communications privileged (*e.g.*, there is no "privileged" marking). *Schilling v. Mid-Am.*, 2016 WL 3211992, *4 (WDTX 2016) (no privilege where "emails are not marked 'privileged' or 'confidential'"). Rather, both are communications among businesspeople for business purposes (assessing competition); it appears the statements reflect the judgments of non-lawyers. *In re Google*, 2012 WL 371913, *2-*4 (Fed. Cir. 2012) (non-lawyer email, *cc'ing counsel*, not privileged as email contents showed discussion was for business purposes). | Consistent with Section J(51) of the Stipulated Protective Order, Align promptly issued a clawback notice upon learning about the inadvertent disclosure of two documents reflecting legal analysis/advice from Align's in-house IP counsel. The two documents were among over 400,000 documents produced in the *Simon & Simon* and *Snow* litigations (and reproduced to ClearCorrect). The date of production is irrelevant: the relevant time is "the period after the producing party realizes that privileged information has been disclosed[.]" *Myers v. City of Highland Vill., Texas*, 212 F.R.D. 324, 327 (E.D. Tex. 2003). These documents did not surface in the prior cases – not as deposition exhibits, nor in any briefing. Align first discovered the inadvertent disclosure in this case and acted expeditiously to remedy it.<br><br>No party has yet served any privilege log. At the parties' meet-and-confer, Align requested authority to support ClearCorrect's demand for names of the particular in-house counsel who provided the legal analysis in 2019. ClearCorrect did not have authority and stated it would not provide any.<br><br>Nonetheless, Align confirms that in this instance, the privilege originates from Align's in-house IP counsel, including Mukund Sharma and Arthur Hsieh, who presented to Align's R&D team and company leaders, including Joe Hogan, regarding Align's patent coverage. (Align can provide supporting |

And even had Align shown—it has not—that the non-lawyers communicated with counsel before sending their emails, non-lawyer "communication is not privileged simply because it is 'relate[d] to' the matter for which advice was previously given." *Nat'l Sec. v. C.I.A.*, 960 F.Supp.2d 101, 194 (D.D.C. 2013). There is no indication that, as is required "to be privileged, the later communication [was] made for the primary purpose of seeking legal advice," or that counsel directed the communications. *Id.*; *Quintel v. Huawei*, 2017 WL 11631811, *6 (EDTX 2017).

*Second*, Align falls far short of meeting its burden. Align has not provided even a privilege log—much less evidence—to try to justify its claim. Align has said only that the redacted portions "relayed" legal analysis/advice by Align's in-house IP counsel, but during the parties' meet-and-confer, could not even specify *who* allegedly provided that "analysis"/"advice," *when*, *to whom*, or *for what purpose*. That is insufficient. *See Dolby Labs. v. Adobe*, 402 F.Supp.3d 855, 866 (NDCA 2019) ("vague declaration that states only that the document 'reflects' an attorney's advice is insufficient"). Nor has Align established that the executives who received the emails "had any need for the [alleged] disclosure, much less a legal one." *Quintel*, 2017 WL 11631811, *6.

*Third*, Align cannot show "that it did not waive the privilege by originally producing the documents." *Huawei v. T-Mobile*, 2017 WL 7052467, *1 (EDTX 2017) (citing FRE 502). After all, Align produced unredacted versions of these emails *years ago in two other cases*. *Id.*, *1-*2; *Conceptus v. Hologic*, 2010 WL 3911943, *1-*2 (NDCA 2010) (waiver where letter

documents for *in camera* review, if necessary.) The redacted portions of these emails relayed legal analysis/advice to corporate executives to enable informed decisions within their roles. Attorney-client privilege protects communications between non-legal employees relaying legal advice provided by corporate counsel. *See e.g.*, *TIGI Linea Corp. v. Pro. Prods. Grp., LLC*, 2020 WL 7773581, at *6 (E.D. Tex. Dec. 30, 2020); *Wolff v. Biosense Webster, Inc.*, 2018 WL 3795302, at *3 (W.D. Tex. Aug. 8, 2018). ClearCorrect's cited cases do not involve communications of this same type.

To determine whether waiver occurred through inadvertent disclosure, courts consider: "(1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Myers*, 212 F.R.D. at 327 (citing *Alldread v. City of Grenada*, 988 F.2d 1425, 1433 (5th Cir. 1993)). These factors favor Align. Align took reasonable precautions to prevent disclosure, implementing a screen of privilege terms and attorney names before production. As these documents did not expressly name or copy lawyers, it is understandable how they slipped through. Second, Align promptly issued a clawback notice one week after learning about the disclosure. Third, the massive scope of discovery favors Align – when producing 400,000+ documents "it is possible that a mistake will be made." *Id.* at 327. Fourth, the extent of disclosure was minimal – a few lines out of many thousands of documents. Fifth,

| | | |
|---|---|---|
| | inadvertently produced in first case, and same letter produced in subsequent case by new counsel).<br><br>**Relief:** Order that "Align must produce complete, unredacted versions of the documents previously produced by Align at Bates Nos. ALIGNAT-PURCH00434426, and ALIGNAT-PURCH00870618 within two business days of this Order." | fairness favors Align, as ClearCorrect's position would gut the Protective Order's inadvertent disclosure provision. *See Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 141 (E.D. Tex. 2003) (party receiving inadvertent disclosure has no "fairness" interest in keeping it).<br><br>**Relief:** Deny ClearCorrect's request in its entirety. |

**EXHIBIT 3**

| Discovery at Issue | Requesting Party's Position (Align) | Responding Party's Position (ClearCorrect) |
|---|---|---|
| Whether ClearCorrect should be Ordered to amend their responses to Align's Interrogatories Nos. 16 and 17 requesting information on ClearCorrect's discount programs.<br><br>For completeness, Align has included a copy of Align's complete Responses and Objections to ClearCorrect's First Set of Interrogatories, attached as Exhibit A and labeled "Attorneys' Eyes Only." *See* Ex. A. Align has further included a copy of ClearCorrect's complete Responses and Objections to Align's Second Set of Interrogatories, attached as Exhibit B and labeled "Outside Counsel Eyes Only." See Ex. B. | ClearCorrect's responses to Align's Interrogatories Nos. 16 and 17 are deficient. These Interrogatories seek information that is relevant and proportional to the needs of the antitrust portion of this case. Because ClearCorrect's Counterclaims are based on allegations that Align's promotional programs further a monopolistic scheme and foreclose competition, detailed information about ClearCorrect's own discounting and bunding practices, including whether ClearCorrect offers competitive discounts and programs or even the same discounts and programs that it challenges in this case, are relevant to testing those theories of exclusion and the claimed antitrust injury. (Counterclaims ¶¶ 102-118). Align is allowed to vigorously compete for business with discounts. If Align is matching discounts and programs offered by ClearCorrect, this is pro-consumer and pro-competitive. Similarly, if ClearCorrect can compete and match Align's discounts, this is also relevant to determine if consumers have been harmed. Yet, ClearCorrect *fails to provide any of the requested information*.<br><br>ClearCorrect's responses do not identify a single discount program that it offers for aligners or scanners. Instead, ClearCorrect merely parrots conclusory allegations from its Counterclaims and vaguely commits to providing a narrower set of information than requested at some unspecified time.<br><br>Align met and conferred with ClearCorrect on January 29, 2025, but ClearCorrect declined to provide fulsome amended interrogatory responses. ClearCorrect insisted it did not need to do so because it considered | In defiance of this Court's rules, Align filed this dispute without ***even responding*** to ClearCorrect's invitation to negotiate a reciprocal compromise of similar requests. That failure to complete a meet-and-confer process is alone sufficient grounds to deny this request.<br><br>The parties each served requests seeking information about the other's promotional programs and terms. Align did not deny that it largely "copy-and-pasted" outdated responses from prior litigations, without providing the requested information covering the damages period ***for this case***, let alone the detail ClearCorrect requested (certainly not the requested detail about terms and the identity and number of doctors). For its part, despite the burden of Align's broader requests (seeking *every* discount offered) and the limited relevance of ***ClearCorrect's*** discounts, ClearCorrect agreed to collect information regarding its discount programs and supplement pursuant to Rule 33(d) before the March 17 substantial completion date. Given the scope of the requests, narrative responses would be unduly burdensome (and of limited value) here.<br><br>Align misrepresents entirely the meet-and-confer process that followed. When the parties discussed ClearCorrect's responses to these interrogatories, Align complained that ClearCorrect's responses lacked certain detail. ClearCorrect denied that its responses were deficient, and raised Align's own answers to ClearCorrect's Interrogatories 1, 6, and 7, which similarly lacked details |

| | |
|---|---|
| Align's responses to similar interrogatories deficient. Incorrect. Align provided significant detail about its discount programs in response to ClearCorrect's parallel interrogatory, including names and dates of promotions, discussions and quotations of program terms, and specific identification of documents where further information could be found. *See* Ex. A at 8-14 (response to Interrogatory No. 1). Moreover, ClearCorrect may not refuse to comply with Align's discovery requests "simply because [ClearCorrect erroneously] believes that [Align has] not fully complied with [their] discovery requests to them." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018); *Anderson v. United Parcel Serv., Inc.*, No. 09-2526, 2010 WL 4822564, at *5 (D. Kan. Nov. 22, 2010) ("A party is not excused from answering an interrogatory because it believes the propounding party has failed to be forthcoming with its own discovery responses."). ClearCorrect's proposed narrowing of the scope of its Interrogatory response obligations to merely identifying at some uncertain point "documents sufficient to identify the discount programs ClearCorrect has offered" and the "basic terms of those programs" is similarly inadequate. Effectively, ClearCorrect proposes to omit critically relevant information, including (i) all terms and amounts of the discount, (ii) which purchasers are/were eligible for the discount, (iii) the Dates when the discount program was available, (iv) all Doctors who participated in the discount program, (v) the total number of participants in each discount program, and (vi) any non-Doctors that participated in the discount program. ClearCorrect is "not allowed to unilaterally narrow its discovery obligations[,]" as it proposes. *Stichting Mayflower Mountain Fonds v. City of Park City Utah*, No. 2:04-CV-925, 2007 | requested, including *e.g.* doctor names for each program. ClearCorrect proposed the parties discuss a reciprocal exchange of detail regarding the relevant programs and contracts. Because Align was not prepared to discuss its own responses, ClearCorrect proposed the parties reconvene to discuss a proportional, reciprocal exchange. ***Without any further discussion***, Align sent this dispute chart.<br><br>Reciprocity is more than fair. Align is accused of monopolization by tying Invisalign to the iTero (which in turn imposes technical impediments to the use of competing aligners) and forcing restrictions on doctors' ability to recommend and promote alternatives. As Align admits internally, ▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ Ex. B at 24. Align reinforces this lock-in by imposing loyalty-based pricing and case commitments, both to compel doctors to ▬▬▬▬ ▬▬▬▬▬ on Invisalign. *Id.* at 35-36<br><br>The fact that ClearCorrect ***tries with very limited success*** to break through this barricade by discounting is no defense to Align's monopolization; rather, it is some of the strongest evidence of lock-in. Further, the detail Align refuses to provide (e.g., the number and identity of affected doctors) is relevant to show Align's foreclosure; that same detail with respect to ClearCorrect's discounts is far less material. Nevertheless, ClearCorrect ***is more than willing to agree to a reasonable reciprocal exchange,*** and is diligently collecting that discovery.<br><br>Finally, as a past antitrust defendant, there is no question that Align can quickly repurpose old responses and old document productions. But when |

| | | |
|---|---|---|
| | WL 3025282, at *3 (D. Utah Oct. 15, 2007).<br><br>**Requested Relief:**<br><br>Order that "ClearCorrect must, by February 28, 2025, amend its responses to Align's Second Set of Interrogatories to fully respond to Align's Interrogatories Nos. 16 and 17. To the extent ClearCorrect intends to rely on Fed. R. Civ. P. 33(d) in doing so, ClearCorrect must produce responsive documents in advance and specify the records that must be reviewed, in sufficient detail to enable Align to locate and identify information responsive to Align's Interrogatories Nos. 16 and 17, including identifying such information by relevant bates number." | it comes to providing the more recent discovery most relevant here, it is lagging behind ClearCorrect. ClearCorrect submits that the parties should focus their efforts on finding compromise and completing the collection and production of information by March 17 (only about two weeks later than the date Align requests the Court order).<br><br>**Requested Relief**:<br><br>Order that "Align's requested relief is denied."<br><br>In the event that the Court is considering Align's request, order that "the Parties are ordered to meet and confer with respect to Align's Interrogatories No. 16 and 17 and ClearCorrect's Interrogatory Nos. 1, 6, and 7 by February 21, 2025, and to explore in good faith the contours of a proportional, reciprocal exchange of information." |

**EXHIBIT 4**

| **Discovery at Issue** | **Requesting Party's Position (Align)** | **Responding Party's Position (ClearCorrect)** |
|---|---|---|
| Whether ClearCorrect should be Ordered to provide complete responses to Interrogatory Nos. 16, 17, 18, 26, 32, 34 and 36.<br><br>Align has included a copy of ClearCorrect's complete Responses and Objections to Align's Second Set of Interrogatories, attached as Exhibit 1 and labeled "Outside Counsel Eyes Only." *See* Ex. 1. | Rather than produce responsive information, ClearCorrect instead characterizes each Interrogatory as overbroad and unproportional, blanket-cites Rule 33(d) without identifying ***any*** responsive documents, and offers to supplement at an unspecified time. But more than two months have passed since Align served these Interrogatories, and the substantial completion deadline is approaching. ClearCorrect must provide fulsome responses by February 28 so Align has time to: (1) follow up on insufficient responses; and/or (2) serve follow-up discovery on ClearCorrect or third parties.<br><br>Align's requests are not "abusively overbroad" or unproportional. ClearCorrect alleges that Align's discount programs and partnerships with scanner companies further its alleged monopoly by excluding ClearCorrect. Counterclaims ¶¶ 70-78, 102-118. Whether ClearCorrect offers similar discounts or is profitably matching Align's discounts is a critical issue to any trier of fact as to whether Align's programs are actually exclusionary. Information regarding ClearCorrect's sales staff, structure, performance, autonomy, and authority is further relevant and proportional because ClearCorrect alleges that Align's sales practices further its alleged monopoly, and information responsive to these requests may illustrate that ClearCorrect's alleged inability to compete derives from its own pitfalls. Each Interrogatory bears directly on ClearCorrect's alleged inability to compete.<br><br>ClearCorrect improperly delays its response obligations. "When employing Rule 33(d), a responding party must specifically identify the documents that contain the answers." *Shintech Inc. v.* | ClearCorrect's Responses to Align's Second Set of Interrogatories span 55 pages, with fulsome narrative responses, including describing extensive evidence bearing out Align's unlawful monopolization. *See* Ex. 1 at 16-46.<br><br>This dispute focuses on just seven interrogatories, each abusively overbroad, and largely seeking discovery more appropriate for ESI searches. As one example, Align demands that ClearCorrect name every sales executive and manager over the past decade, their dates of employment, why each left, details of each of their annual performance against metrics, and even their individual bonuses. (ROG 32). Each request seeks a similar catalogue of inordinate detail. ClearCorrect served objections and offered narrowed, proportional responses. To the extent Align now seeks "full and complete responses," it is improperly asking the Court to overrule dozens of objections, none of which Align even identifies much less responds to here. That Align is accused of monopolization does not entitle it to fishing expeditions, demanding immediate responses to sweeping requests without regard for proportionality.<br><br>To the extent Align focuses on the invocation of Rule 33(d) in these responses *as narrowed by ClearCorrect's objections*, the issue has always been not ***whether*** ClearCorrect will identify documents in a supplemental response, but ***when***. Because most of these are sweeping document requests parading as interrogatories, *e.g.*, ROG 16 ("Identify every discount program you have offered for Aligner Products…"), ClearCorrect is diligently collecting the relevant documents and intends to produce them before the substantial document production completion date of March 17, as it has already assured Align. |

| | |
|---|---|
| *Olin Corp.*, No. 3:23-CV-00112, 2023 WL 6807006, at *6 (S.D. Tex. Oct. 16, 2023). "[I]n addition to providing the documents, the party must specify the particular records that must be reviewed with respect to each interrogatory." *Freilich v. Green Energy Res., Inc.*, No. 5:12-CV-577-DAE, 2015 WL 11613287, at *5 (W.D. Tex. Mar. 27, 2015). ClearCorrect has essentially not responded at all, which is an abuse of the discovery process. ClearCorrect represented it could not identify documents under Rule 33 because it ***had not produced them***. That is a problem of ClearCorrect's own creation and underscores its abuse of Rule 33(d) and its extended delay in production.<br><br>ClearCorrect's lack of productions to date (despite Align producing over ***425,000*** documents thus far) is staggering. It is also irrelevant that Align produced documents from prior litigation. Align produced documents responsive to ClearCorrect's discovery requests, and ClearCorrect cannot say the same.<br><br>ClearCorrect's failure to timely identify responsive records is an effort to run out the clock leaving Align no time to actually follow up on discovery. The Court should not permit ClearCorrect to continue its delay until March 17, allowing ClearCorrect to dump voluminous discovery on Align with insufficient time to identify whether ClearCorrect's productions are sufficient prior to the substantial completion deadline.<br><br>Nor has ClearCorrect mooted the dispute over Interrogatories 26, 32, and 34. The ***single spreadsheet*** ClearCorrect directed Align to in response to these requests (despite failing to cite it when invoking Rule 33(d)) identifies various sales staff by name and position, but otherwise fails to include information responsive to the other portions of the Interrogatories. ClearCorrect must produce fulsome | Committing to identify documents under Rule 33(d) and later so supplementing is common and acceptable. *Spectrum Creations*, 2006 WL 8434013 at *1 (W.D. Tex. May 9, 2006) ("… [I]n its subsequent supplements, CKI provides specific Bates-stamp numbers of documents … this Court finds these supplemental answers are acceptable answers to Spectrum's interrogatories."). Align appears to believe that by framing requests as interrogatories it can accelerate ClearCorrect's deadline to produce, while Align produces ***no new antitrust discovery***.<br><br>Align identifies no harm or prejudice with respect to the timeline ClearCorrect proposes. ClearCorrect has *already* produced documents and provided Bates numbers for Interrogatories 26, 32, 34, mooting Align's disputes on those requests. Fact discovery closes on July 29. No deposition notices have been served. Both parties are engaged in rolling productions.<br><br>Finally, Align's outrage is manufactured: ***both parties*** have responded, by citation to Rule 33(d), previewing that they *will produce* documents. *See e.g.*, Align Resp. to CC ROG 6 ("Align will supplement this response to identify specific Bates numbers of relevant files following their production,") 14, 15, 16, 17 ("Align… will produce…"). Other than its ***re***production of documents from prior litigation***, Align has not produced a single document in response to any antitrust request***. Align's 33(d) responses cite *only* to documents produced in the prior cases (some of which it has inexplicably still not reproduced), and as a result they do not provide any information after 2022 (the discovery cutoff there). Thus, any order setting a date for supplementation should apply to Align as well.<br><br>**Requested Relief:** |

| | | |
|---|---|---|
| | responses to these Interrogatories, and it must do so in sufficient time for Align to review.<br><br>**Requested Relief:**<br><br>Order that "ClearCorrect must, by February 28, 2025, amend its responses to Align's Second Set of Interrogatories to provide full and complete responses to Align's Interrogatories Nos. 16, 17, 18, 26, 32, 34, and 36. To the extent ClearCorrect intends to rely on Fed. R. Civ. P. 33(d) in doing so, ClearCorrect must produce responsive documents in advance and specify the records that must be reviewed, in sufficient detail to enable Align to locate and identify information responsive to Align's Interrogatories Nos. 16, 17, 18, 26, 32, 34, and 36, including identifying such information by relevant bates number." | Order that "Align's requested relief is denied in full."<br><br>In the alternative, if the Court is inclined to grant Align's request, order that "By March 17, 2025, ClearCorrect shall supplement its Rule 33(d) responses in Interrogatories 16-18, 26, 32, 34, and 36 to identify by Bates number documents containing the information previewed by its responses.  By March 17, 2025, Align shall supplement its Rule 33(d) responses to Interrogatories 6, 14, 15, 16, 17 to identify by Bates number documents containing the information previewed in the responses, and through the present." |

**EXHIBIT 5**

| Discovery at Issue | Requesting Party's Position (Align) | Responding Party's Position (ClearCorrect) |
|---|---|---|
| Whether ClearCorrect should be Ordered to amend its responses to Align's Interrogatories Nos. 19-25 requesting information relating to ClearCorrect's contentions.<br><br>For completeness, Align has included a copy of ClearCorrect's complete Responses and Objections to Align's Second Set of Interrogatories, attached as Exhibit 1 and labeled "Outside Counsel Eyes Only." See Ex. 1.<br><br>ClearCorrect has included a copy of Align's complete Responses and Objections to ClearCorrect's Second Set of Interrogatories, attached as Exhibit 2 and labeled "Outside Counsel Eyes Only." See Ex. 2. | ClearCorrect's responses to Interrogatories 19-25 are improper. These Interrogatories seek critical information underlying ClearCorrect's allegations. ClearCorrect bases its non-responses on two theories: (1) it need not respond fully to contention interrogatories; and (2) as an antitrust plaintiff, it can shift its discovery burden to Align. It is wrong on both counts.<br><br>Contention interrogatories are appropriate "because the interrogatories track the allegations in the complaint, upon which plaintiffs presumably have sufficient facts to plead." *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 235 (E.D.N.Y. 2007). ClearCorrect represented that its Counterclaims were not being presented for an improper purpose, and they had legal *and factual support*. Fed. R. Civ. P. 11(b). Align is entitled to discover what, if any, those bases were. *Innovative Commc'n Sys., Inc. v. Innovative Computing Sys., Inc.*, 2014 WL 3535716, at *2 (W.D. Tex. July 16, 2014).<br><br>ClearCorrect cannot baselessly assert claims, initiate a fishing expedition into its competitor's files, then claim it is premature to substantiate *its own* allegations *seven months* after filing them. *See e.g. Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 293 (N.D. Tex. 2017) ("[I]t is not appropriate to order the [contention] interrogatories need not be further answered until more discovery is complete."). ClearCorrect must respond to these interrogatories aside from its post-hoc justifications based on *Align's* discovery.<br><br>ClearCorrect cannot reasonably contend it sufficiently responded by identifying | ClearCorrect's contention interrogatory responses span over ***30 pages***, cite ***over 100 documents***, and incorporate the detailed factual allegations in the Counterclaims which themselves include over ***70 footnotes*** with source materials. Ex. 1, pp.16-46; ECF 49. They chronicle voluminous evidence of monopolistic intent and anticompetitive effects. ***Over a dozen*** relevant individuals are identified. This submission, suggesting that those responses are somehow lacking, is an unfortunate waste of judicial resources.<br><br>Align's assertion that ClearCorrect's responses rely exclusively on documents Align produced (as if that would even be improper given the contentions are about ***Align's conduct***) is false. Each incorporates the Counterclaims, which are heavily cited with extensive source material. Those citations quote admissions from Align executives (including using iTero to build a "competitive moat" around Invisalign), specify financial and other data from securities filings, quote prior case filings and press releases, and incorporate past testimony by affected doctors.<br><br>Initial discovery has borne out ClearCorrect's allegations ***completely*** (*see* Ex. 1), including:<br><br>(1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (pp.18-24);<br><br>(2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |

| | |
|---|---|
| documents Align produced *after* ClearCorrect filed its Counterclaims and incorporating conclusory allegations from therein. Documents ClearCorrect received *after* filing its Counterclaims could not have supplied any basis for the claims filed *before* receiving them. ClearCorrect's citation to and descriptions of post-hoc documents and information is irrelevant and nonresponsive. Furthermore, Interrogatories 19-25 seek more than documents; they also seek identification of facts and persons supporting specific allegations. ClearCorrect is not entitled to ignore these portions of the Interrogatories.<br><br>***Second***, it is not Align's burden—nor is it possible—to identify what ClearCorrect relied on in asserting its Counterclaims. "'You already know the answer' generally is not a proper objection or answer to a Rule 33 interrogatory." *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 438 (N.D. Tex. 2021). Rule 33 is misused by "simply referring [Align] (and this Court) to documents in [Align's] possession." *Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 770 (N.D. Ill. 2005).<br><br>ClearCorrect's responses to Interrogatories 24-25 are further deficient, as they do not seek expert opinions. They seek information substantiating ClearCorrect's injury and foreclosure allegations. ClearCorrect repeats conclusory allegations and hypothetical harm without identifying *any* number of actual damages. While ClearCorrect may later retain an expert on these matters, ClearCorrect cannot decline to provide any substantive response on actual damages. *Sundby v. Johnson*, 2022 WL 1121762, at *2 (S.D. Fla. Apr. 14, 2022) ("Even where it is premature for a party to provide expert opinions on the subject of damages, the party is required to | (p.18);<br><br>(3) ███████████ (p.19);<br><br>(4) ███████████ (pp.25-27);<br><br>(5) ███████████ (pp.31-32); and<br><br>(6) ███████████ (p.35).<br><br>At this stage of the case, these responses are ***far more*** than required. When it comes to interrogatories that seek information regarding the "proponents' own conduct," courts allow parties to defer responses until substantial discovery is complete. *Werner Enters., Inc. v. Picus S.A. De C.V.*, 2016 WL 11736166, *2 (S.D. Tex. Apr. 29, 2016). And in stark contrast to what ClearCorrect has done here, the defendant in *Samsung* provided no substantive response at all. *See* No. 3:15-cv-04108, Dkt. 126-2, at 8-12.<br><br>As to requests effectively seeking expert calculations about damages and foreclosure, a party may "defer answering" until expert disclosures. *StratosAudio v. Volvo Cars,* 2022 WL 1261651, *3 (W.D. Tex. Apr. 28, 2022); *M3Girl Designs v. Blue Brownies*, 2011 WL 13128965, *4 (N.D. Tex. Aug. 31, 2011) (deferring calculation of damages until expert discovery). Nevertheless, ClearCorrect detailed its damages theory and |

| | | |
|---|---|---|
| | provide a substantive response regarding the amount of damages based on the information it has to date."); Fed. R. Civ. P. 26(a)(1)(A)(iii).<br><br>**Requested Relief:**<br><br>Order that "ClearCorrect must, by March 7, 2025, amend its responses to Align's Second Set of Interrogatories to fully respond to Align's Interrogatories Nos. 19-25. To the extent ClearCorrect intends to rely on Fed. R. Civ. P. 33(d) in doing so, ClearCorrect must produce responsive documents in advance and specify the records that must be reviewed, in sufficient detail to enable Align to locate and identify information responsive to Align's Interrogatories Nos. 19-25, including identifying such information by relevant bates number." | methodology, and explained the basis of its foreclosure estimate (Ex. 1 pp.40-46).  Align's demand that ClearCorrect provide damages *calculations* now is inconsistent with its own *three sentence* response about its patent damages.  (Ex. 2 pp.23-25).  And to the extent Align complains that ClearCorrect has not *named every doctor* Align locked-in, that detail is in Align's possession and—ironically—*it is currently refusing to provide it*.<br><br>**Requested Relief:**<br><br>Order that "Align's requested relief is denied." |