PUBLIC VERSION

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC.,<br><br>       Plaintiff,<br><br>  v.<br><br>CLEARCORRECT OPERATING, LLC,<br>CLEARCORRECT HOLDINGS, INC.,<br>INSTITUT STRAUMANN AG, &<br>STRAUMANN USA, LLC,<br><br>       Defendants. | Case No. 6:24-cv-00187-ADA-DTG<br><br>PATENT CASE<br><br>**JURY TRIAL DEMANDED** |
| CLEARCORRECT OPERATING, LLC,<br>CLEARCORRECT HOLDINGS, INC., &<br>STRAUMANN USA, LLC,<br><br>       Counterclaim-Plaintiffs,<br><br>  v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>       Counterclaim-Defendant. | |

## PLAINTIFF ALIGN TECHNOLOGY'S MOTION TO DISMISS DEFENDANTS' FIRST AMENDED COUNTERCLAIMS UNDER FRCP 12(B)(6)

## TABLE OF CONTENTS

**Page(s)**

FACTUAL BACKGROUND ................................................................................................... 2

    I.    ALIGN INVESTS IN AND PROTECTS ITS INNOVATIONS WITH
        PATENTS ................................................................................................... 2

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

    I.    STRAUMANN'S NEW ALLEGATIONS FAIL TO STATE A CLAIM ........... 7

        A.    Straumann failed to plead fraudulent procurement ..................................... 7

        B.    Straumann failed to plead any cognizable antitrust injury ......................... 9

    II.    STRAUMANN'S ANTITRUST CLAIMS ARE TIME-BARRED ................... 10

    III.    STRAUMANN FAILS TO ALLEGE FACTS SHOWING THAT IT
        SUFFERED ANTITRUST INJURY ...................................................... 11

    IV.    STRAUMANN MUST ALLEGE FACTS TO SHOW COGNIZABLE
        EXCLUSIONARY CONDUCT, BUT FAILS TO DO SO ............................... 12

        A.    Straumann has not plausibly alleged illegal tying. ................................... 13

        B.    Straumann has not alleged an unlawful refusal to deal ............................ 15

        C.    Straumann fails to allege actionable exclusive dealing. .......................... 16

        D.    Align's enforcement of its patents and trademarks is
            Constitutionally protected and lawful. ...................................................... 17

        E.    Straumann's conduct allegations fail even if viewed together. ............... 18

    V.    ████████████████████████████████████████
        ██    ██████████████████████████████████
        ██    ██████████████████████████████████

    VI.    CONCLUSION ................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3Shape TRIOS A/S v. Align Tech., Inc.*,
  No. 18-1332-LPS, ECF No. 59 (D. Del. Aug. 15, 2019)...............................................4, 11, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................6

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*
  472 U.S. 585 (1985)........................................................................................................15, 16

*Axis, S.p.A. v. Micafil*,
  870 F.2d 1105 (6th Cir. 1989) ...........................................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................................6

*BRFHH Shreveport v. Willis-Knighton Med. Ctr.*,
  563 F. Supp. 3d 578 (W.D. La. 2021), *aff'd*, 49 F.4th 520 (5th Cir. 2022)...........................12

*Brunswick Corp. v. Pueblo Bowl-O-Mat*,
  429 U.S. 477 (1977)...........................................................................................................10

*C&C Rd. Constr. v. SAAB Site Contractors*,
  574 S.W.3d 576 (Tex. App. 2019).......................................................................................19

*Certain Color Intraoral Scanners and Related Hardware and Software*,
  Inv. No. 337-TA-1091, Doc. No. 658875 (U.S.I.T.C. Oct. 15, 2018)...................................16

*Chandler v. Phoenix Servs.*,
  45 F.4th 807 (5th Cir. 2022) ..............................................................................................10

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) .............................................................................................18

*Columbia Physical Therapy v. Benton Franklin Orthopedic Assocs.*,
  168 Wash. 2d 421 (Washington) ...........................................................................................4

*E.R.R. Presidents Conf. v. Noerr Motor Freight*,
  365 U.S. 127 (1961)...........................................................................................................17

*Eisai v. Sanofi Aventis*,
  821 F.3d 394 (3d Cir. 2016)...............................................................................................17

*Elite Sub-Zero Repair v. Great Plains Appliance Parts*,
   No. 1:23-CV-118-DAE, 2023 WL 11916709 (W.D. Tex. Oct. 31, 2023) ............................10

*Emrit v. N.A.R.A.S.*,
   No. A-14-cv-392-SS, 2015 WL 518774 (W.D. Tex. Feb. 5, 2015) ........................................20

*Felder's Collision Parts v. All Star Advert. Agency*,
   777 F.3d 756 (5th Cir. 2015) .................................................................................................14

*Fresenius Kabi USA v. Par Sterile Prods.*,
   841 F. App'x 399 (3d Cir. 2021) ...........................................................................................12

*FTC v. Qualcomm*,
   969 F.3d 974 (9th Cir. 2020) .................................................................................................16

*Gurrola v. Walgreen Co.*,
   EP-17-CV-00078-DCG, 2017 WL 6764324 (W.D. Tex. Nov. 15, 2017) ...............................17

*In re Humira (Adalimumab) Antitrust Litig.*,
   465 F. Supp. 3d 811 (N.D. Ill. 2020), *aff'd sub nom. Mayor & City Council of
   Baltimore v. AbbVie*, 42 F.4th 709 (7th Cir. 2022)................................................................12

*IBM v. LZLabs GmbH*,
   No. 6:22-CV-00299-DAE, 2023 WL 11916812 (W.D. Tex. Mar. 24, 2023) ........................13

*Jebaco v. Harrah's Operating Co.*,
   587 F.3d 314 (5th Cir. 2009) .................................................................................................11

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984), abrogated on other grounds by *Illinois Tool Works v.
   Indep. Ink,* 547 U.S. 28 (2006).............................................................................................14

*Kovaly v. Wal-Mart Stores Tex.*,
   157 F. Supp. 3d 666 (S.D. Tex. 2016) .....................................................................................4

*Kroger v. Sanofi-Aventis*,
   701 F. Supp. 2d 938 (S.D. Ohio 2010) ..................................................................................12

*Medtronic AVE v. Cordis Corp.*,
   No. 2-03-CV-212 (TJW), 2004 WL 7322043 (E.D. Tex. Mar. 18, 2004)..............................13

*Misty Snow et al. v. Align Tech., Inc.*,
   3:21-cv-03269-VC, ECF No. 1 (N.D. Cal. filed May 3, 2021). ..........................................2, 4

*New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Health.
   Servs.*,
   994 F.3d 1166 (10th Cir. 2021) .............................................................................................13

*Nobelpharma AB v. Implant Innovations*,
    141 F.3d 1059 (Fed. Cir. 1998)...............................................................................7, 8, 9

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ..................................................................................11

*Novell v. Microsoft*,
    731 F.3d 1064 (10th Cir. 2013) ..............................................................................16

*Pac. Bell Tel., Co. v. linkLine Commc'ns*,
    555 U.S. 438 (2009)...........................................................................................15, 18

*Response of Carolina v. Leasco Response*,
    537 F.2d 1307 (5th Cir. 1976), *abrogated on other grounds by Cont'l T. V. v.
    GTE Sylvania*, 433 U.S. 36 (1977) ........................................................................14

*Salaiz v. Pelican Investment Holdings Grp.*,
    EP-22-CV-00029-FM, 2022 WL 17811482 (W.D. Tex. Nov. 10, 2022)...............15

*Simon & Simon PC v. Align Tech.*,
    19-506-LPS, ECF No. 1 (D. Del. filed Mar. 14, 2019) .......................................1, 4

*Simon & Simon, PC v. Align Tech.*,
    533 F. Supp. 3d 904 (N.D. Cal. 2021) .....................................................................5

*Sutton Place 1 Townhouse v. AmGuard Ins. Co.*,
    668 F. Supp. 3d 684 (W.D. Tex. 2023).....................................................................10

*Swindol v. Aurora Flight Scis. Corp.*,
    805 F.3d 516 (5th Cir. 2015) ..................................................................................19

*Tampa Elec. v. Nashville Coal*,
    365 U.S. 320 (1961)..................................................................................................17

*Therasense v. Becton Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) (en banc)................................................................9

*Tomorrow Telecom v. Silvas*,
    No. 07-20-00100-cv, 2021 WL 2461129 (Tex. App. June 16, 2021).....................20

*Transweb v. 3M Innovative Props. Co.*,
    812 F.3d 1295 (Fed. Cir. 2016)................................................................................7

*Velvet Snout v. Sharp*,
    441 S.W. 3d 448 (Tex. App. 2014)...........................................................................18

*Verastique v. City of Dallas, Tex.*,
    106 F.4th 427 (5th Cir. 2024) ..................................................................................4

*Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004)............................................................................12, 15, 16

*Virgin Atl. Airways v. British Airways*,
   257 F.3d 256 (2d Cir. 2001)......................................................................17

*Walker Process Equip. v. Food Mach. & Chem.*,
   382 U.S. 172 (1965)..............................................................................1, 7, 10

*In re Wellbutrin XL Antitrust Litig.*,
   868 F.3d 132 (3d Cir. 2017)......................................................................12

*Woody v. J. Black's*,
   No. 03-15-00293-cv, 2016 WL 3677241 (Tex. App. July 7, 2016) ........................20

*Zircore v. Institut Straumann AG*,
   No. 15-cv-1557, ECF No. 139 (E.D. Tex. Sept. 5, 2016)................................10, 20

**Statutes**

15 U.S.C. § 15(b) ......................................................................................10

Cal. Bus. & Prof. Code § 2400 ....................................................................4

Sherman Act..........................................................................................7, 10

Tex. Bus. & Com. Code § 15.25 ..................................................................10

Tex. Occ. Code Ann. § 164.052(a)(17) ........................................................4

Texas Antitrust Act ..................................................................................10

Wis. Stat. Ann. § 180.1903 ........................................................................4

**Other Authorities**

37 C.J.S. *Fraud* § 18 (1943) .......................................................................9

Fed. R. Civ. P. 9(b) ................................................................................7, 8

Fed. R. Civ. P. 9(b)'s ................................................................................1

Rule 12(b)(6)..........................................................................................6, 10

Counterclaim Plaintiffs ClearCorrect Operating, LLC, ClearCorrect Holdings, Inc., and Straumann USA, LLC's (together, "Straumann") amended counterclaims do not rescue their untimely, insufficient claims.[1] Instead, Straumann reruns its retread of the failed *Simon & Simon* class action but now adds meritless allegations of fraudulent procurement of patents before the PTO to attempt a comeback. This late-breaking addition, well into discovery, further reinforces the argument (Part III below) that Straumann's antitrust counterclaims depend on its ability to prevail in the patent litigation and thereby show it is a lawful competitor in aligners, which it cannot do. But that is only the first of several flaws with the counterclaims.

*First*, Straumann's newly raised allegations that Counterclaim Defendant Align Technology, Inc. ("Align") procured its materials patents by fraud on the USPTO omit key details and fail to state a claim under Fed. R. Civ. P. 9(b)'s heightened pleading standard and *Walker Process Equip. v. Food Mach. & Chem.*, 382 U.S. 172 (1965).

*Second*, Straumann's claims were filed beyond the four-year statute of limitations. Apart from the new fraud allegations, all the conduct about which Straumann complains was alleged by scanner competitor 3Shape in a Delaware court in October 2019—nearly five years ago. Straumann fails to plead an exception to the statute of limitations, so the claims are time-barred.

*Third*, Straumann make aligners by infringing Align's patents. Straumann is not a lawful market participant and thus, as numerous decisions have held, cannot plausibly allege antitrust injury—an element of its antitrust counterclaims. This, too, is alone fatal.

*Fourth,* Straumann's antitrust counterclaims likewise fail to allege the required

---

[1] Because Straumann's amended counterclaims moot Align's still-pending objections to the Magistrate Judge's R&R, Align respectfully raises with this motion the same deficiencies with Straumann's repeated claims to preserve for the District Court Judge's consideration, as well as, in the first section, addressing Straumann's new allegations.

"exclusionary conduct." It is not enough to allege monopoly power and industry success. But Straumann's allegations are the same, previously litigated, losing theories that failed the various doctrinal tests in their original form, and they fail in their new disguises.

████████████████████████████████████████████

## **FACTUAL BACKGROUND**

## I.    **ALIGN INVESTS IN AND PROTECTS ITS INNOVATIONS WITH PATENTS**

The vast majority of orthodontic treatments use braces and methods developed generations ago. Align has sought to disrupt that, harnessing the power of computer-aided design and 3D printing to create clear plastic trays to treat malocclusion, introducing Invisalign to the U.S. in 1999. (First Amended Counterclaim ("ACC") ¶ 45, ECF No. 232.) Align was issued hundreds of patents on its aligner technology—including the patents asserted in this case.

Align previously enforced its patents against ClearCorrect. *See Align Tech. v. ClearCorrect*, 4:11-cv-00695, ECF No. 1 (S.D. Tex. filed Feb. 28, 2011) (finding ClearCorrect infringed patent).[2] The U.S. International Trade Commission ("ITC") also ruled in Align's favor on infringement.[3] ClearCorrect agreed to a █████████████████ with Align to end the litigation. (First Amended Complaint ("FAC") ¶ 2, ECF No. 214.) Straumann's infringement continues today. Straumann admits using the three-layer FLX plastic in its aligners (First Amended Answer, ¶ 4, ECF No. 232), and it alleges that the FLX plastic lets it "compete against Invisalign®" (ACC ¶ 153.) Yet FLX-aligners practice Align's patents. (FAC, Counts 4-7.) So do the treatment planning software and scanner. (FAC, Counts 8-11.)

Confronted about its patent infringement by Align's complaint here, Straumann filed antitrust counterclaims mirroring allegations made by other plaintiffs nearly five years ago in

---

[2] RJN Ex. 2.
[3] RJN Ex. 3.

October 2019. These claims are based on Align's 2011 acquisition of Cadent Holdings ("Cadent"), a leading provider of 3D digital scanning solutions for orthodontics and dentistry, which led to Align's introduction of an intraoral scanner called the iTero HD ("iTero"). One way dentists use iTero is to scan patients' teeth and send to Align to create custom Invisalign aligners, but dentists also use iTero to send scans for purchasing clear aligners from competing aligner companies. Notably, multiple competing clear aligner companies, including Straumann, **specifically teach doctors to use iTero to send cases to non-Invisalign** aligners.[4] Other companies also provide their own intraoral scanner products, including the TRIOS scanner made by 3Shape, a manufacturer of 3D scanning and CAD/CAM software solutions.[5]

In April 2016, Align and 3Shape announced an agreement whereby TRIOS could be used to submit scans for Invisalign—"interoperability." (ACC ¶ 70.) But in November 2017, Align initiated patent litigation against 3Shape in the ITC and District of Delaware asserting 26 patents against 3Shape.[6] After filing these patent claims, Align determined that continuing interoperability with 3Shape could fatally compromise Align's patent claims against 3Shape. On December 20, 2017, Align publicly announced that due to 3Shape's infringing conduct and the resulting litigation, Align terminated interoperability with 3Shape in the U.S. (ACC ¶ 74 n. 35.) 3Shape sued Align for antitrust violations, publicly alleging **in October 2019**, as **Straumann parrots here nearly five years later**, that Align (1) integrated its iTero scanner in a digital workflow together with the Invisalign system; (2) terminated Invisalign interoperability with 3Shape; (3) entered exclusive contracts with group purchasing entities called dental service organizations ("DSOs"), including Heartland; and (4) bundled iTero and Invisalign together with package discounts (the "Fusion

---

[4] RJN Ex. 4; *id.,* Ex. 5.
[5] RJN Ex. 9.
[6] RJN Ex. 6.

program").[7]

The DSO allegation concerned a July 2018 multi-year agreement with Heartland Dental, LLC ("Heartland") to allow Heartland doctors to use the iTero within their individual practices. (ACC ¶¶ 86-88.) The agreement contains no requirement that Heartland doctors exclusively use iTero or prescribe Invisalign. *See* Murray Decl. Ex. 1.[8] In fact, ***numerous state laws, including those of Texas, prohibit corporate entities from practicing medicine***.[9] The discount allegation concerns a discount program called "Fusion," which allows doctors to split payment for a full-priced iTero into three annual payments, reducing the second and third payments if the doctor meets certain goals for Invisalign case prescriptions. (ACC ¶¶ 110-112.) Other companies selling aligners and scanners offer similar bundles.[10]

In March 2019, a dentist copied 3Shape's antitrust claims.[11] A group of Invisalign patients later followed with their own suit (together with the dentistry case, the "California Cases").[12] In February 2022, Align and 3Shape settled their claims, with 3Shape agreeing to pay Align substantial consideration. 3Shape also agreed there would be no U.S. interoperability with Invisalign but interoperability would continue abroad. In February 2024, the court granted

---

[7] *See* Amended Compl. ¶¶10-16, *3Shape Trios A/S v. Align Tech.*, No. 18-1332-LPS (D. Del. filed Oct. 28, 2019) ECF. No. 63.

[8] The Counterclaims allege the Heartland contract gives rise to liability. (*See* CC ¶¶ 81, 126-127.) As such, it is incorporated by reference and is appropriately considered at the dismissal stage. *Verastique v. City of Dallas, Tex.*, 106 F.4th 427, 437 (5th Cir. 2024).

[9] *See, e.g.*, Tex. Occ. Code Ann. § 164.052(a)(17) (Texas); Cal. Bus. & Prof. Code § 2400 (California); *Columbia Physical Therapy v. Benton Franklin Orthopedic Assocs.*, 168 Wash. 2d 421, 430 (Washington); Col. Rev. Stat. 12-240-138(6)(a) (Colorado); Wis. Stat. Ann. § 180.1903 (Wisconsin). "Federal courts are required to take judicial notice of the content of state law." *Kovaly v. Wal-Mart Stores Tex.*, 157 F. Supp. 3d 666, 674 (S.D. Tex. 2016).

[10] *See* RJN Ex. 7-8.

[11] *See Simon & Simon PC v. Align Tech.*, 19-506-LPS, ECF No. 1 (D. Del. filed Mar. 14, 2019).

[12] *See Misty Snow et al. v. Align Tech*, 21-cv-03269-VC, ECF No. 1 (N.D. Cal. filed May 3, 2021).

summary judgment to Align in the California Cases.[13] On a voluminous record, the court found no cognizable exclusionary conduct. *Id.* at 2; *Simon & Simon, PC v. Align Tech.*, 533 F. Supp. 3d 904, 918 (N.D. Cal. 2021).

Straumann repackaged these stale, rejected allegations and refiled them as its counterclaims here. (ECF No. 49.) Align moved to dismiss those Counterclaims (ECF No. 96), and the Magistrate Judge recommended denying that motion. (ECF No. 154.) Align timely filed objections to the Magistrate's R&R, which remained pending when Straumann filed its amended counterclaims. (ECF No. 159.) The amended counterclaims largely regurgitate the original claims but now include additional allegations of purported fraud on the USPTO.

Pertinent to its new counterclaims, Straumann alleges that in the early 2000s, Align's Invisalign product was made using a single-layer material supplied by Bay Materials. (ACC ¶ 166.) In 2005, Align (including inventor Chunhua Li) began working with other suppliers to develop a new multi-layer material to improve over the single-layer EX-30. (ACC ¶ 169.) In 2012, Align filed Patent Application 13/470,681 for SmartTrack (ST30), a new multi-layer material with a structure composed of one "hard" synthetic material inside two "soft" materials ("soft-hard-soft") (ACC ¶ 175.) By November 2016 Li, submitted a declaration in response to a USPTO rejection of the '681 application. (ACC ¶ 176.) While Application '681 was still pending, Align also filed Patent Application No. 15/476,655 (Application '655) as a continuation of the '681 application. (ACC ¶ 186.) A few months later, in May 2017, Align's '681 application was granted as Patent No. 9,655,691. (ACC ¶ 178.)

In November 2018, Bay Materials announced its next generation aligner material, Zendura FLX, which utilized a "hard-soft-hard" composition. (ACC ¶ 179.) Per Straumann, Align

---

[13] RJN Ex. 1 at 1.

executives were concerned about competition with this new material. (ACC ¶ 182.) In September 2019, Align "amended the proposed claims of the '655 application so that they purportedly no longer expressly required a soft-hard-soft configuration" by "deleting the requirement that the 'hard polymer layer of polymeric material' be 'disposed ***between*** a first soft polymer layer and a second soft polymer layer.'" (ACC ¶ 189.) Align also submitted a declaration, in which "Li ***added*** statements alleging, for the first time, that a material with 'a single hard polymer layer and a single soft polymer layer according to the current claims'—e.g., a material with one hard layer and one soft layer—would also exhibit the same purported benefits as the soft-hard-soft SmartTrack material." (ACC ¶ 189.) In April 2021, the '655 application was granted as Patent No. 10,973,613. (ACC ¶ 194.)

This recitation of the USPTO proceedings, however, is grossly incomplete. In December 2019, the Examiner rejected Align's modified application.[14] Align amended twice more before its claims were allowed in February 2021—for a three-layer material and the "soft" to be a thermoplastic polyurethane (TPU).[15]

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, claims must include "enough facts to state a claim to relief that is plausible on its face," which requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must create "more than a sheer possibility that a defendant has acted unlawfully." *Id*

---

[14] Murray Decl., Ex. 2.
[15] *Id*., Ex. 3.

## ARGUMENT

### I.    STRAUMANN'S NEW ALLEGATIONS FAIL TO STATE A CLAIM

Straumann cites allegations of purported fraud as justifying both a *Walker Process* monopolization claim (ACC ¶¶ 293(c) & 304(c)), but these allegations fail. "[T]o prevail on a *Walker Process* claim, the antitrust-plaintiff must show two things: first, that the antitrust-defendant obtained the patent by knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the fraudulent procurement; and second, all the other elements necessary to establish a Sherman Act monopolization claim." *Transweb v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016).

#### A.    Straumann failed to plead fraudulent procurement.

Straumann fails to plead sufficient facts to satisfy the fraud elements. A party "alleging fraud or mistake ... must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To that end, *Walker Process*'s fraud element requires of:

> (1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.

*Nobelpharma AB v. Implant Innovations*, 141 F.3d 1059, 1069–70 (Fed. Cir. 1998). Straumann's allegations fall short.

First, taking the allegations as true, Straumann failed to plausibly allege that the complained-of statements are even false. According to Straumann, "statements in the '613 Li Declaration regarding the alleged 'benefits' of materials combining at least one 'hard' and one 'soft' polymer layer according to the amended claims of the '655 application were … false or misleading," because:

> Li knew that the results of Align's actual testing showed that properties of two-
> and three-layer materials having a "hard" and a "soft" layer varied dramatically,
> with many such multilayer materials having worse properties than EX30. *See
> supra* at ¶¶ 169-174. Indeed, based on what ClearCorrect can discern, it seems
> that Align tested around 70 multilayer materials, rejecting many for having
> inadequate elongation, thermoformability, durability, and/or stress relaxation—
> the very "benefits" Li described to the Patent Office in the '613 Li Declaration—
> and it "rejected" all multilayer materials other than those with the "soft-hard-soft"
> configuration that became Align's SmartTrack.

(ACC ¶ 191.) But Straumann's tortured interpretation does not describe any false statement. Indeed, Li did not represent that all multi-layered structures tested performed better than the single-layered EX-30, nor does the fact that Align ultimately selected one of the many combinations it considered for its earlier patent application mean that everything else tested was worse than EX-30. Indeed, Li plainly stated in the declaration that: "we evaluated numerous multilayer material combinations and determined that merely combining the materials into multiple layers was insufficient to improve performance relative to the EX 30 material," and "many multilayer materials tested proved inferior to the EX30." (ACC, Ex. 2, ¶ 9.) Straumann's construction does not stand to scrutiny. Accordingly, the falsity element is not satisfied.

Second, the amended counterclaims make no allegations that would plausibly support a finding that Li's declaration was made with "intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent." *Nobelpharma AB*, 141 F.3d at 1069–70. Instead, Straumann relies on conclusory allegations that the statements were made "with the specific intent to deceive the Examiner." (ACC ¶¶ 193, 203, & 204.) Beyond the allegation that Li was "involved" in Align's testing, Straumann makes no allegation to Li's involvement in the patent procurement process, much less any indication of her state of mind in executing the declaration. That is wholly insufficient for Rule 9(b).

Third, the allegations also fail the standard for inducement. "The fact misrepresented must be 'the efficient, inducing, and proximate cause, or the determining ground' of the action taken in reliance thereon." *Nobelpharma AB*, 141 F.3d at 1070 (quoting 37 C.J.S. *Fraud* § 18 (1943)). Straumann alleges that "[a]lthough the Examiner initially rejected Align's amended claims, he ultimately allowed them, stating explicitly that he '*found persuasive*' the '613 Li Declaration and, in particular, its 'unexpectedly positive results' argument." (ACC ¶ 194.) Based only on this assertion, Straumann offers the conclusory allegation that "but for the false or misleading statements in the '613 Li Declaration described above, and the intentional failure to disclose the data reflecting Align's actual testing results, claims of the '613 patent would not have issued." *Id.* But that ignores that the Examiner twice rejected the claims and the 2019 Li declaration before ultimately allowing the patent in 2021. Further, the Examiner's primary basis for allowing the patent was the conclusion that the twice-amended claims sufficiently differentiated from the prior art.[16] And Li's declaration was only found persuasive in the context of the claims for a three-layer material with "hard" copolyester and "soft" TPU.[17] Accordingly, Straumann's allegations are wholly insufficient to conclude Li's statements were "the efficient, inducing, and proximate cause, or the determining ground" for granting the patent.[18]

**B. Straumann failed to plead any cognizable antitrust injury.**

The amended counterclaims fail here too. Even presuming that patent fraud had been established, it remains "necessary to appraise the exclusionary power" of the patent and the holder's "ability," through enforcing the patent, "to lessen or destroy competition" within "the

---

[16] Murray Decl., Ex. 3 at 6 ¶ 5.

[17] *Compare id. with* Murray Decl., Ex. 2 at 3 ¶ 5 ("the declaration is … insufficient to overcome rejection").

[18] These allegations are also insufficient to establish materiality and intent to deceive. *Therasense v. Becton Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). Therefore, ClearCorrect's defense of inequitable conduct fails.

relevant market for the product involved." *Walker Process*, 382 U.S. at 177. The amended counterclaims focus on allegations of predicted harms to *Straumann* from an order enjoining its infringement of Align's materials patents. (ACC ¶¶ 210-216.) Nowhere does Straumann allege that Align's enforcement of its materials patents through this suit would harm the relevant market as a whole, beyond a few conclusory sentences. (ACC ¶ 250.) That failure is fatal, as "[t]he antitrust laws … were enacted for the protection of competition not competitors," *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 488 (1977).

## II. STRAUMANN'S ANTITRUST CLAIMS ARE TIME-BARRED

Setting the meritless fraud-based claim aside, Straumann is still too late to assert its antitrust claims. Sherman Act claims are limited to four years from the cause of action's accrual, *see* 15 U.S.C. § 15(b), which begins "when a defendant commits an act that injures a plaintiff's business." *Chandler v. Phoenix Servs.*, 45 F.4th 807, 815 (5th Cir. 2022). Straumann's Texas antitrust claims have the same limitations period and accrual rules as its Sherman Act claims. *Compare* 15 U.S.C. § 15(b) *with* Tex. Bus. & Com. Code § 15.25.[19] Where the statute of limitations problem is evident in the pleadings, including materials subject to judicial notice, dismissal under Rule 12(b)(6) is appropriate. *See Sutton Place 1 Townhouse v. AmGuard Ins. Co.*, 668 F. Supp. 3d 684, 689 (W.D. Tex. 2023).

Straumann alleges Align adopted a policy in 2017 to no longer accept scans from scanner competitors, allegedly to protect its market position before certain patents expired. (ACC ¶¶ 72-74.) As part of that, Align terminated 3Shape-Invisalign interoperability. (ACC ¶ 72.) But Align announced this termination on December 20, 2017, nearly seven years ago. (*Id*.). Straumann

---

[19] "[T]he analysis of claims under the Texas Antitrust Act and the Sherman Act are substantially identical." *Elite Sub-Zero Repair v. Great Plains Appliance Parts*, No. 1:23-CV-118-DAE, 2023 WL 11916709, at *7 (W.D. Tex. Oct. 31, 2023).

concedes that "*[s]ince Align announced that it would no longer accept scans from the TRIOS 3®*, and continuing to this day, doctors in the United States with any modern scanner beside the iTero®, regardless of the quality, cannot place orders for Invisalign® using a digital scan." (ACC ¶ 76.) Straumann thus targets a six-year-old business policy choice. That is stale on its face.

Straumann's exclusive dealing allegations fare no better. Agreements with large DSOs such as Heartland also date back nearly six years. These purported violations were known to the public and Straumann did nothing. Indeed, the press release announcing the Heartland deployment of iTero scanners dates to July 25, 2018. (ACC ¶ 86.) The Advantage and Fusion programs, DSO agreements, and termination of 3Shape-Invisalign interoperability were all alleged by 3Shape in its October 2019 Delaware amended complaint putting Straumann on clear notice, at the latest, in October 2019.[20] Straumann alleges nothing to avoid the four-year statute of limitations.

## III.    STRAUMANN FAILS TO ALLEGE FACTS SHOWING THAT IT SUFFERED ANTITRUST INJURY

Unless Straumann pleads facts to show that it is a lawful competitor in aligners, it fails to state a claim as to Counts One through Four. Straumann must also plausibly allege a causal connection between a competition-reducing aspect of the Align behavior alleged and Straumann's purported injury, part of "antitrust injury." *Jebaco v. Harrah's Operating Co.*, 587 F.3d 314, 318–19 (5th Cir. 2009). As already stated, "antitrust laws were enacted for 'the protection of *competition* not *competitors.*'" *Norris v. Hearst Tr.*, 500 F.3d 454, 465 (5th Cir. 2007) (emphasis in original). Accordingly, "[e]ven a plaintiff injured in his business or property must, in order to sue for damages, show 'antitrust injury,' that is, 'injury of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Id.* "[A]n inquiry into

---

[20] *See* Amended Compl., ¶¶ 10-16, *3Shape Trios A/S v. Align Tech*, No. 18-1332-LPS (D. Del. filed Oct. 28, 2019) ECF No. 63.

antitrust injury always asks whether there is a causal connection between the alleged injury of the plaintiff and the anticipated anticompetitive effect of the specific practice that allegedly violates antitrust law." *BRFHH Shreveport v. Willis-Knighton Med. Ctr.*, 563 F. Supp. 3d 578, 589 (W.D. La. 2021), *aff'd*, 49 F.4th 520 (5th Cir. 2022). Complaints that fail to plausibly plead antitrust injury are rightly dismissed.  *See, e.g.*, *id.*

Straumann is not a lawful competitor in aligners, so it has no antitrust injury. Its infringement of Align's dooms its claims. As the Third Circuit has explained, "[t]hat a regulatory or legislative bar can break the chain of causation in an antitrust case is beyond fair dispute." *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 165 (3d Cir. 2017).[21] Straumann offers its ClearCorrect aligners in the U.S. by infringing Align's valid patents. (*See* ECF 214, Am. Compl. ¶¶ 68-251.) Straumann even concedes that Align's patents created barriers to offering aligners, (ACC ¶ 237 ("intellectual property costs")). Align obtaining and enforcing patents to protect its innovations is pro-competitive. This alone dooms Straumann's antitrust claims. *See In re Wellbutrin*, 868 F.3d at 165.

## IV.    STRAUMANN MUST ALLEGE FACTS TO SHOW COGNIZABLE EXCLUSIONARY CONDUCT, BUT FAILS TO DO SO

Straumann must allege cognizable exclusionary conduct with well-pled facts. *See Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). "In the Fifth Circuit, proving anticompetitive conduct generally requires 'some sign that the monopolist engaged in

---

[21] Numerous precedents agree. *See, e.g.*, *Fresenius Kabi USA v. Par Sterile Prods.*, 841 F. App'x 399, 403 (3d Cir. 2021) ("when a product infringes a valid patent, that patent blocks the plaintiff's entry into the market and precludes a claim that the defendant's allegedly anticompetitive conduct caused the plaintiff's injury."); *Axis, S.p.A. v. Micafil*, 870 F.2d 1105, 1111 (6th Cir. 1989) (same); *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 846 (N.D. Ill. 2020), *aff'd sub nom. Mayor & City Council of Baltimore v. AbbVie*, 42 F.4th 709 (7th Cir. 2022) (earlier entry date in the but-for world was implausible due to "impassable" IP portfolio); *Kroger v. Sanofi-Aventis*, 701 F. Supp. 2d 938, 952–59 (S.D. Ohio 2010) (no antitrust injury alleged where entrant was enjoined in patent infringement suit).

behavior that—examined without reference to its effect on competitors—is economically irrational.'" *IBM v. LZLabs GmbH*, No. 6:22-CV-00299-DAE, 2023 WL 11916812, at *7 (W.D. Tex. Mar. 24, 2023). Over time, "courts have been able to adapt the general inquiry of what is anticompetitive conduct into particular circumstances, which has allowed the creation of specific rules for common forms of alleged misconduct." *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Health. Servs.*, 994 F.3d 1166, 1173 (10th Cir. 2021). Straumann's allegations meet none of the applicable tests.

### A.    Straumann has not plausibly alleged illegal tying.

At the core of Straumann's antitrust claims is the previously rejected refusal-to-deal theory disguised as illegal tying. (ACC ¶¶ 9, 61, 65, 83, 239, 293(a), 304(a).) Tying within antitrust law is selling a product "only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from another supplier." *Medtronic AVE v. Cordis Corp.*, No. 2-03-CV-212 (TJW), 2004 WL 7322043, at *3 (E.D. Tex. Mar. 18, 2004). No allegations suggest that Align *ever* conditioned the sale of Align products on purchase of an iTero scanner, or vice versa. Nowhere does Straumann allege that a dentist desiring to purchase an iTero digital scanner must also purchase cases of Invisalign.

Rather, Straumann pled the opposite—that customers can and do purchase just one or the other. Straumann concedes that iTero is used for scanning for restorative dentistry, (ACC ¶¶ 49, 240 n.101.) Despite Align offering iTero since 2011, (ACC ¶ 67), **PVS submissions for Invisalign comprised the majority of Invisalign submissions on a quarterly basis until late 2016.**[22] Thus, it was the principal means of ordering Invisalign until very recently in the product lifecycle. Straumann also acknowledges that PVS molds can and are still used for submitting Invisalign

---

[22] *See* RJN Ex. 10 at 12 (showing North American Invisalign cases submitted digitally for 48.8% of cases in Q3 2016 and 51.3% of cases in Q4 2016).

cases. (*See* ACC ¶ 52.) The availability of PVS for submitting Invisalign demonstrates the absence of a tie between Invisalign and iTero. One does not need an iTero to order Invisalign, therefore there is no actual tie nor is it "functionally impossible."  (ACC ¶ 252.)

The alleged inconvenience to export files from iTero scans for use with competing aligners (ACC ¶ 93) or using PVS to order Invisalign cases (ACC ¶ 52) do not amount to "coercion" or "exploitation" required for a tying claim. *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984), abrogated on other grounds by *Illinois Tool Works v. Indep. Ink,* 547 U.S. 28, 31 (2006). Rather, Straumann conflates the benefits of Align's digital workflow, the popularity of Invisalign, and voluntary discounts with coercion. (*See* ACC ¶¶ 49, 240 n.101 (scans sent for creating restorations); ACC ¶ 50 (mapping teeth position and modeling potential improvement); ACC ¶ 52 (efficiency, precision, and reduced labor for dentist and their staff).) None of that is coercion within antitrust law. *See Felder's Collision Parts v. All Star Advert. Agency*, 777 F.3d 756, 760–61 (5th Cir. 2015). And Straumann concedes another key point: ***patients decide*** whether to purchase a particular brand of aligner treatment or not. No dentist purchases Invisalign (or any other aligner), to hold in inventory—they are custom-made for a patient. (ACC ¶¶ 43, 229.) The decision to purchase treatment is still up to the patient. Straumann provides no explanation of how its purported "coercion" at the dentist level interacts with the patient decision.

Straumann likewise fails to plausibly allege a "tech tie" between iTero scanners and Invisalign. Straumann makes only conclusory references to "tech tying." (*See* ACC ¶¶ 9, 61, 65, 83, 239.) This is insufficient. Straumann would have to plausibly allege that its digital workflow, increasing simplicity and convenience, does not follow from its design. *See Resp. of Carolina v. Leasco Response*, 537 F.2d 1307, 1330 (5th Cir. 1976), *abrogated on other grounds by Cont'l T. V. v. GTE Sylvania*, 433 U.S. 36 (1977). But Straumann has conceded the benefits, as shown above.

14

Straumann purports to allege that the digital workflow—the simplicity of sending scans from the iTero scanner to configure Invisalign—locks dentists into purchasing only Invisalign. (ACC ¶ 91.) But Straumann also alleges that Align charges dentists to export scans, such as if they seek to use them for treating a patient with a competing aligner. (ACC ¶ 13.) Align can only charge a fee for exporting such scans if it happens. It would make no sense for there to be a fee assigned for a feature that is never utilized. (*Cf.* ACC ¶ 102.) Such allegations are then properly disregarded. "A court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Salaiz v. Pelican Investment Holdings Grp.*, EP-22-CV-00029-FM, 2022 WL 17811482, at *2 (W.D. Tex. Nov. 10, 2022).

## B.     Straumann has not alleged an unlawful refusal to deal.

Straumann retells the story of Align ending the contractual and technical interoperability between competing scanner 3Shape TRIOS and Invisalign in the United States. Straumann also alleges a vague "policy" of not extending Invisalign interoperability with other competing scanners. Neither episode is exclusionary conduct within antitrust law.

"As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel., Co. v. linkLine Commc'ns*, 555 U.S. 438, 448 (2009). The very narrow exception is the case of *Aspen Skiing Co. v. Aspen Highlands Skiing Corp*. 472 U.S. 585 (1985), further narrowed by *Trinko*, 540 U.S. at 409. In *Trinko*, the Court held that an actionable refusal to deal involves the "unilateral termination of a voluntary (*and thus presumably profitable*), course of dealing [that] suggested a willingness to forsake short-term profits to achieve an anticompetitive end," and the refusal to sell a product sold to others in a retail market. *Id.* (emphasis in original). In *Aspen Skiing*, the defendant offered no "efficiency justification whatever for its pattern of conduct." 472 U.S. at 608. Thus, for liability, courts require that "the only conceivable rationale or purpose is to sacrifice short-term benefits in

order to obtain higher profits in the long run from the exclusion of competition." *FTC v. Qualcomm*, 969 F.3d 974, 993–94 (9th Cir. 2020) (internal quotation marks and citations omitted); *Novell v. Microsoft*, 731 F.3d 1064, 1075 (10th Cir. 2013).

Straumann's allegations fail this demanding test. The Align press release, ***to which Straumann points***, describes that Align had asserted 26 patents against 3Shape in four patent infringement suits and two Section 337 complaints with the U.S. International Trade Commission. (ACC ¶ 74 n.35.) As the press release states, Align terminated 3Shape-Invisalign interoperability to protect the validity of its patent claims against 3Shape and, by extension, its patents. 3Shape itself validated Align's rationale when 3Shape argued to the ITC that Align had ceded equitable defenses to 3Shape by delaying terminating interoperability between filing the patent infringement suits and stopping all Invisalign case submissions from TRIOS scanners.[23] Against this evidence, Straumann fails to plausibly allege that the 3Shape termination was irrational but for its anticompetitive effect. *See Novell*, 731 F.3d at 1075. Thus, even viewing the evidence in the light most favorable to Straumann, the court rejected a refusal-to-deal claim. *Id.* at 1.

Align declining to extend Invisalign interoperability to other competing scanners is not more actionable. Straumann concedes that other scanners were never interoperable with Invisalign, (ACC ¶ 75), or were not terminated from interoperability. (ACC ¶ 70.) Thus, there was no prior course of dealing, as is required to impose liability under *Aspen. See Trinko,* 540 U.S. at 409.

### C.    Straumann fails to allege actionable exclusive dealing.

Exclusive dealing in antitrust law is when a buyer agrees to purchase its requirements of a product exclusively from a particular seller and the plaintiff shows the competition foreclosed by the arrangement constitutes a substantial share of the relevant market, leaving opportunities for

---

[23] *Certain Color Intraoral Scanners and Related Hardware and Software*, Inv. No. 337-TA-1091, Doc. No. 658875 at 70 (U.S.I.T.C. Oct. 15, 2018).

others to enter or remain in that market significantly limited. *Gurrola v. Walgreen Co.*, EP-17-CV-00078-DCG, 2017 WL 6764324, at *4 & n.2 (W.D. Tex. Nov. 15, 2017). Straumann must show that long-term exclusive agreements are so widespread as to keep rivals below the scale needed to compete. *See id.*; *Tampa Elec. v. Nashville Coal*, 365 U.S. 320, 327 (1961). Straumann fails.

The agreements alleged are not exclusive. Dentists retain the authority to direct treatment for their patients. *See* Murray Decl. Ex. 1 at 1. This protects against intrusion by corporate entities, as prohibited by state corporate practice of medicine laws.[24] Rather, loyalty and volume discounts "promote[] competition on the merits" and benefit consumers. *Virgin Atl. Airways v. British Airways*, 257 F.3d 256, 265 (2d Cir. 2001). On a complete record, N.D. Cal. examined the contracts and wrote: "they cannot stand on their own." RJN. Ex. 1 at 5. Neither do the discrete terms and conditions (termed "anti-steering" provisions, ACC ¶ 19) create exclusivity. But even assuming the agreements were exclusive, Straumann fails to allege substantial foreclosure. Straumann points to at most nine agreements, (*see* ACC ¶ 137), versus **more than 200,000 dentists in the U.S.** in 2023.[25] Straumann "has operated in the dental industry for over 70 years and is a global leader." (ACC ¶ 150.) It is not plausible that a handful of contracts held Straumann below the scale needed to compete. *Eisai v. Sanofi Aventis*, 821 F.3d 394, 404 (3d Cir. 2016).

### D.    Align's enforcement of its patents and trademarks is Constitutionally protected and lawful.

Straumann complains about Align's enforcement of its patents and trademarks. (*See* ACC ¶¶ 11, 134 n.54.) This is not cognizable as exclusionary conduct without allegations that the suits are sham litigation. *See E.R.R. Presidents Conf. v. Noerr Motor Freight*, 365 U.S. 127 (1961).

---

[24] *See supra*, note 8 (citing various state laws).
[25] RJN Ex. 12.

**E.    Straumann's conduct allegations fail even if viewed together.**

Straumann alleges "inextricably intertwined conduct" and a "self-reinforcing cycle." (ACC ¶ 61.) But liability cannot be based on individually lawful, unilateral conduct—the Supreme Court has precluded an "an amalgamation" of multiple "meritless claim[s]" that would require courts "to act as central planners, identifying the proper price, quantity, and other terms of dealing." *linkLine,* 555 U.S. at 450, 452. This type of "amalgamation" of the same type of allegations against Align was rejected by two judges. RJN Ex. 1 at 2; *3Shape TRIOS A/S v. Align Tech.*, No. 18-1332-LPS, ECF No. 59 at 20–23 (D. Del. Aug. 15, 2019) *adopted by* ECF No. 62 (D. Del. Sept. 26, 2019).





19



## VI.    CONCLUSION

For the foregoing reasons, Align Straumann's amended counterclaims should be dismissed.

DATED: September 26, 2025                    *Respectfully submitted,*


By: */s/ Michael F. Murray*

Michael F. Murray (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, DC 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
michaelmurray@paulhastings.com

Emma Farrow (*pro hac vice*)
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, California 90067
Telephone: (310) 620-5700
Facsimile: 1(310) 620-5899
jamespearl@paulhastings.com
emmafarrow@paulhastings.com

Adam M. Reich (*pro hac vice*)
PAUL HASTINGS LLP
71 South Wacker Drive, 45th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
adamreich@paulhastings.com

Noah B. Pinegar (TX Bar No. 24074900)
Paul C. Gross (*pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
noahpinegar@paulhastings.com
paulgross@paulhastings.com

Brian C. Nash (TX Bar No. 24051103)
Austin M. Schnell (TX Bar No. 24095985)
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
Telephone: (512) 617-0650

Facsimile: (737) 910-0730
bnash@mofo.com
aschnell@mofo.com

Daralyn J. Durie (*pro hac vi*ce)
Rich S.J. Hung (*pro hac vi*ce)
Forrest McClellen (*pro hac vi*ce)
Ian Bennett (*pro hac vi*ce)
Jenny Xin (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market St.
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
ddurie@mofo.com
rhung@mofo.com
fmcclellen@mofo.com
ibennett@mofo.com
jxin@mofo.com

Bradley S. Lui (*pro hac vi*ce)
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
blui@mofo.com

Malavika M. Fitzgerald (*pro hac vi*ce)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
mfitzgerald@mofo.com

*Attorneys for Plaintiff and Counterclaim
Defendant Align Technology, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email on September 26, 2025.

_____/s/ Michael F. Murray_____
Michael F. Murray
